A. Michael Barker, Esquire
Attorney ID#009511976
Vanessa E. James, Esquire
Attorney ID#022442005
Barker, Gelfand, James & Sarvas
A PROFESSIONAL CORPORATION
Linwood Greene – Suite 12
210 New Road
Linwood, New Jersey 08221
(609) 601-8677
AMBarker@BarkerLawFirm.net
Our File Number: 47620-172
Attorney for Defendants, Bryan Orndorf; City of Millville; Chief of
Police Jody Farabella; Sgt. Lawrence Mulford; Sgt. Ross Hoffman; Sgt.
Harold Duffield, Jr.; Lt. Kevin McLaughlin; Sgt. Cindi Zadroga; Sgt.
John Redden, III; Lt. Carl Heger; Sgt. Daniel Ayars

| | |
|---|---|
| AUDRA CAPPS; AND DOUGLAS ROBERT GIBSON, JR.<br><br>        Plaintiff,<br>v.<br><br>JOSEPH DIXON; BRYAN ORNDORF; CITY OF MILLVILLE; CHIEF OF POLICE JODY FARABELLA; SGT. LAWRENCE MULFORD; SGT. ROSS HOFFMAN; SGT. HAROLD DUFFIELD, JR.; LT. KEVIN MCLAUGHLIN; SGT. CINDI ZADROGA; SGT. JOHN REDDEN, III; LT. CARL HEGER; SGT. DANIEL AYARS; JOHN/JANE DOE(S) I JOHN/JANE DOE(S) II, JOHN/JANE DOE(S) III; and JOHN/JANE DOE(S) IV,<br><br>        Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE<br><br>Docket Number: 1:19-cv-12002<br><br>Civil Action |

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT CITY OF MILLVILLE**

---

On the Brief:
A. Michael Barker, Esquire
Greg DiLorenzo, Esquire

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ............................................................................................1

II.   **LEGAL ARGUMENT** .......................................................................................5

      A. <u>**Motion to Dismiss Standard of Review**</u> .........................................5

      B. <u>**Count 2 – Plaintiffs' 42 U.S.C. §1983 "Monell" claim should
         be dismissed**</u> ...............................................................................7

         i.   <u>*Policy*</u> .............................................................................8

         ii.  <u>*Custom or Practice*</u> ...................................................9

      C. <u>**Counts 8, 9, 11, 12 – Plaintiffs' state tort claims should
         be dismissed**</u> ...............................................................................23

III.  **CONCLUSION** .............................................................................................27

**TABLE OF AUTHORITIES**

<u>Andrews v City of Phila.</u>, 895 F.2d 1469 (3d Cir. 1990) ...................................7

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) .............................................................5

<u>Barna v. City of Perth Amboy</u>, 42 F.3d 809 (3d Cir. 1994) .........................7

<u>Bd. Of County Com'rs of Bryan County, Okl. V. Brown</u>,
520 U.S. 397 (1997) ............................................................................................11,12

<u>Beck v. City of Pittsburgh</u>, 89 F.3d 966 (3d Cir. 1996) ...............................7

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) ...............................5,6

<u>City of Canton v. Harris</u>, 489 U.S. 378 (1989) ........................................ 8,9,10

<u>City of Oklahoma v. Tuttle</u>, 471 US 808 (1985) .........................................9,11

<u>Connick v. Thompson</u>, 563 U.S. 51 (2011) ....................................................12

<u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) .................................................12,20

<u>Fielder v. Stonack</u>, 141 N.J. 101 (1995) ......................................................26

Forero v. Atlantic City, 2014 U.S. Dist. LEXIS 43228, [WL]
(D.N.J. Mar. 19, 2014)........................................................................13,16

Grazier v. City of Phila., 328 F.3d 120 (3d Cir. 2003)........................10

Hansell v. City of Atlantic City, 152 F. Supp. 2d 589
(D.N.J. 2001)....................................................................................11

Marable v. W. Pottsgrove Twp., 176 F. App'x 275 (3d Cir. 2006)......10

Merman v. City of Camden, 824 F. Supp. 2d 581 (D.N.J. 2010)................12

Monell v. Dep't of Soc. Servs., 436 US 658 (1978)...............................5

Montgomery v DeSimone, 159 F.3d 120 (3d Cir. 1998)........................11

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).............................8,9

Rex v. Hutner, 26 N.J. 489 (1958)........................................................27

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006).....................................6

Simmons v. Philadelphia, 947 F.2d 1042 (3d Cir. 1991).....................10

Tichenor v. Santillo, 218 N.J. Super. 165 (App. Div. 1987)..................27

Ward v. Barnes, 545 F. Supp. 2d 400 (D.N.J. 2008)............................25

West v. Atkins, 487 U.S. 42 (1988)......................................................6,7,13

Zampetis v. City of Atl. City, Civil Action No. 15-1231
(NLH), 2015 U.S. Dist. LEXIS 169997
(D.N.J. Dec. 21, 2015)....................................................................11,12

Zampetis v. City of Atl. City, Civil Action No. 15-1231
(NLH), 2016 U.S. Dist. LEXIS 132929
(D.N.J. Sep. 27, 2016) ...................................................................12,20

## **STATUTES**

F.R.C.P. 12(b)(6)...............................................................................4

N.J.S.A. 59:1-2................................................................................23

N.J.S.A. 59:2-1(a) ..........................................................................................23

N.J.S.A. 59:2-1(b) ..........................................................................................23

N.J.S.A. 59:2-2(b) ......................................................................................23,24

N.J.S.A. 59:2-10 .........................................................................................24,25

N.J.S.A. 59:5-2 ..............................................................................................24

N.J.S.A. 59:5-2(b)(3) ......................................................................................23

N.J.S.A. 59:3-3 ..............................................................................................24

## I.   INTRODUCTION

Count 3 of Plaintiffs' Second Amended Complaint ("SAC") alleges a 42 U.S.C. §1983 "Monell" claim against the City of Millville based on alleged Fourth Amendment excessive use of force on the part of Millville Police Officers Joseph Dixon and Bryan Orndorf. Counts 8, 9, 11, and 12 allege state tort claims against the City of Millville. Count 8 alleges negligent supervision. Count 9 alleges negligent retention. Count 11 alleges loss of consortium. Count 12 alleges general vicarious liability.

According to the SAC at paras. 40-63, on February 25, 2018, Audra Capps (hereinafter "Plaintiff"), was pulled over for driving while intoxicated. Plaintiff does not challenge the motor vehicle stop, nor does Plaintiff challenge the probable cause for her arrest. Plaintiff does not contest her level of intoxication.

After failing the field sobriety test, Defendant Dixon attempted to place Plaintiff under arrest by handcuffing her behind her back. The SAC provides a website link to the dashcam video portraying the arrest; however, Plaintiff's characterization of the video by Plaintiff in the SAC is not accurate. Plaintiff admits that she resisted arrest but only states she "began to back up so as not to be handcuffed." (Para. 54). Plaintiff's description is disingenuous. The video shows, as Dixon is attempting to place the handcuffs on Plaintiff, Plaintiff initially steps away as Dixon maintains control of Plaintiff's right hand. As Plaintiff takes a

step away, Dixon attempts to grab her left arm; however, before Dixon can grab hold of the left arm, Plaintiff turns her body towards Dixon and reaches toward Dixon with her left arm as if to push herself away and get Dixon to release her right arm. At that time Dixon put his arm around Plaintiff and brought her to the ground.

Plaintiff alleges that Defendant Orndorf put his knee on her back as Dixon finished placing the handcuffs on her. Although the video evidence is slightly obstructed, it is clear, based on what can be observed, that it would not have been possible for Orndorf to have been kneeling on Plaintiff's back. The SAC does not allege any other force was used on the admittedly resisting and intoxicated Plaintiff.

The SAC goes on to allege, in detail, the New Jersey Attorney General's Use of Force Guidelines and that Defendant Dixon had a large number of use of force incidents during his career. Summarily, Plaintiff alleges during this arrest the police officers did not use force in accord with the Attorney General's Guidelines. Plaintiff further alleges the Supervisory Defendants knew of Defendant Dixon's use of force history and acquiesced in his history of using force. The SAC states, as fact, that Dixon had a history of excessive use of force; however, those are only conclusory statements. Plaintiff does not allege any specific incident wherein Dixon was ever found to have used force that was

excessive at any time prior to February 25, 2018. Plaintiff may be confusing the concept of excessive use of force with someone that uses force more frequently than some unstated norm. The former is a civil rights violation, the latter is not.

Although the SAC is very detailed, it does not plead sufficient facts to establish a plausible claim that the City of Millville was deliberately indifferent to a custom, pattern, or practice of **excessive use of force** by Dixon or Orndorf; and, in fact, many of the factual allegations plead show quite the opposite of deliberate indifference. Although the SAC alleges Dixon had a large number of "use of force" incidents, the SAC does not allege that prior to the arrest of Plaintiff there was a history of Dixon using force that was found to be excessive. Using force at a seemingly disproportionate rate does not equate to force that is excessive.

On its surface, the SAC makes it look as though Defendant Millville had a rogue police officer in its employ for approximately six years and purposefully ignored it. A careful reading of the SAC, however, paints a much different picture. The fact is, prior to the arrest of Plaintiff, the SAC shows Dixon as a proactive police officer who used physical force frequently, but that does not equate to excessive use of force. The SAC admits Defendant Millville took note of Dixon's practices on multiple occasions and acted on them. Apparently, Plaintiffs are of the

3

opinion that the actions Millville took were not enough and that Dixon should have been fired; but, alleging Millville did not do enough is not deliberate indifference. The standard for review is whether there was deliberate indifference to a pattern of ***excessive*** use of force. To establish that, Plaintiffs first need to establish there was a pattern of excessive use of force. The SAC does not plead a single fact which would establish a pattern of excessive use of force. The SAC only alleges facts of Dixon resorting to force more quickly than some unspecified norm, which is not excessive use of force. Moreover, the SAC shows Millville was not deliberately indifferent to Dixon's use of force practices.

Last, Plaintiffs' state tort claims against the City of Millville are barred by the immunity provisions of the New Jersey Tort Claims Act.

Accordingly, pursuant to <u>F.R.C.P.</u> 12(b)(6), all claims against the City of Millville should be dismissed with prejudice since this is Plaintiff's third "bite at the apple" after extensive pre-motion briefings and conferences on the subject.

## II. LEGAL ARGUMENT

### A. <u>Motion to Dismiss Standard of Review</u>

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in

the complaint are true, (even if doubtful in fact).” <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>*,* 550 U.S. 544, 555, (2007) (internal citations

omitted). Furthermore:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion
> to dismiss does not need detailed factual allegations,
> … a plaintiff's obligation to provide the 'grounds' of
> his 'entitle[ment] to relief' requires more than labels
> and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do.

<u>Id.</u> (internal citations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading

must contain a “short and plain statement of the claim showing

that the pleader is entitled to relief.” <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 663 (2009). As the Court held in <u>Bell Atlantic Corp., et</u>

<u>al. v. Twombly et. al.,</u> 550 U.S. 544 (2007), the pleading standard

Rule 8 demands is more than an unadorned, the-defendant-

unlawfully-harmed-me accusation. <u>Id.</u> at 555 (internal citations

omitted). A pleading that offers “labels and conclusions” or “a

formulaic recitation of the elements of a cause of action will not

do.” <u>Iqbal</u> at 678, *citing*, <u>Twombly</u> at 555. Nor does a complaint

suffice if it tenders “naked assertion[s]” devoid of “further

factual enhancement.” <u>Iqbal</u> at 678, *citing*, <u>Twombly</u> at 557.

To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to “state a claim to

relief that is plausible on its face.” <u>Iqbal</u> at 678 (internal

citations omitted). A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

## B. Count 2 – Plaintiffs' 42 U.S.C. §1983 "Monell" claim should be dismissed

42 U.S.C. §1983 (hereinafter abbreviated to §1983) states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress […].

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Under 42 USC §1983, local governments cannot be held vicariously liable for the actions of its employees under a theory of respondeat superior or solely because it employs a tortfeasor. Monell v. Dep't of Soc. Servs., 436 US 658, 690-91 (1978); Sanford

v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). "To state a claim under § 1983, a plaintiff […] must show that the alleged deprivation [of a Constitutional right] was committed by a person acting under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994), *quoting*, West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must then establish that the deprivation resulted from an official policy or custom. Monell at 694.

Assuming, *per arguendo*, the SAC pleads a plausible Fourth Amendment excessive force claim against Defendants Dixon and/or Ordorf, the SAC must plead facts which could plausibly establish the City of Millville was the moving force of the constitutional violation. Monell, *supra*., 436 U.S. at 694. "The court's holding and reasoning in Monell have created a two-path track to municipal liability under §1983, depending on whether the allegations are based upon a municipal policy or custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). In Andrews v City of Phila., the court articulated the distinctions between ***municipal policy*** versus ***municipal custom*** as sources of liability:

> ***Policy*** is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a ***"custom"*** when, though not authorized by law, "such practices of a state official [are] so permanent and well-settled" as to virtually constitute law.

895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted; emphasis added).

    *i.*   *Policy*

"The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). The term "official policy" refers to formal governmental rules or practices. Id. at 480-81.

The SAC does not allege any formally adopted policies or training programs by the City of Millville that endorse the use of excessive force. In fact, the SAC suggests the opposite. *See*, SAC, para. 97 ("Separate and apart from, and/or as a result of the *violations of*, the AG UFP, Millville Police Department Directives, and any police academy training he received, Defendant Dixon used excessive force against Plaintiff in effecting her arrest […]."). Thus, Plaintiff is pursuing liability based on the theory of a custom or practice.

    *ii.*   *Custom or Practice*

A claim of municipal liability on a theory of "custom" or "practice" is intertwined with claims based on theories of a failure to train/inadequate training and failure to supervise. The standards set forth by the United States Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989) govern the analysis. The Canton v. Harris Court explained:

We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in Monell and Polk County v. Dodson, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under §1983. As Justice BRENNAN's opinion in Pembaur v. Cincinnati, put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under §1983.

Canton v. Harris, 489 U.S. at 388. The Canton Court continued:

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. See Springfield v. Kibbe, 480 U.S., at 268, (O'CONNOR, J., dissenting); Oklahoma City v. Tuttle, supra, 471 U.S., at 821, (opinion of REHNQUIST, J.). It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes;

9

the fact that they do says little about the training program or the legal basis for holding the city liable. Id.

As such, to plead a plausible Monell claim based on a failure to train or failure to supervise theory, in addition to showing a violation of a plaintiff's constitutional rights, a plaintiff must plausibly allege that the training and/or supervision of Millville police officers was *so inadequate* and the resulting conduct *so probable*, that the City acted with deliberate indifference to the constitutional deprivation of its citizens' rights. City of Canton 387-91. Plaintiff must also demonstrate that the inadequate training and/or supervision *caused* the alleged constitutional deprivation. Grazier v. City of Phila., 328 F.3d 120, 124-25 (3d Cir. 2003); City of Canton at 385. "[A] municipality's deliberately indifferent failure to train is *not* established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." Simmons v. Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (emphasis provided), *citing*, Canton at 1206; Marable v. W. Pottsgrove Twp., 176 F. App'x 275, *283 (3d Cir. 2006)[1].

_____

[1] Unpublished opinion attached as Ex. 1

Furthermore, in order to prevail on a failure to train or failure to supervise claim, "plaintiffs must show both 'contemporaneous knowledge' of the allegedly offending incident, or 'knowledge of a prior pattern of similar incidents and circumstances under which a supervisor's inaction could be found to have communicated a message of approval'." Hansell v. City of Atlantic City, 152 F. Supp. 2d 589, 609 (D.N.J. 2001), aff'd, 46 Fed. Appx. 665 (3d Cir. 2002), quoting, Montgomery v DeSimone, 159 F.3d 120, 127 (3d Cir. 1998). Finally, municipal liability for failure to train under §1983 cannot be inferred from a single instance of misconduct by a non-policy making employee. City of Oklahoma v. Tuttle, 471 US 808, 813 (1985); City of Canton, supra, at 397.

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Zampetis v. City of Atl. City, Civil Action No. 15-1231 (NLH), 2015 U.S. Dist. LEXIS 169997, at *17-18 (D.N.J. Dec. 21, 2015)[2], quoting, Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 407 (1997). "The plaintiff must show that (1) a policymaker had (2) notice that a

---

[2] Unpublished case attached as Exhibit 2

constitutional violation was likely to occur, (3) acted with deliberate indifference to the risk, and (4) the failure to act caused the constitutional violation." Zampetis, id., at 18, citing, Connick v. Thompson, 563 U.S. 51 (2011). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan County, 520 U.S. at 410.

"As the Supreme Court has explained, 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [unconstitutional deliberate indifference]'." Zampetis v. City of Atl. City, Civil Action No. 15-1231 (NLH), 2016 U.S. Dist. LEXIS 132929[3], at *19 (D.N.J. Sep. 27, 2016), quoting, Farmer v. Brennan, 511 U.S. 825, 835 (1994). "[S]tatistical evidence alone may not justify a ... finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." Zampetis v. City of Atl. City, Civil Action No. 15-1231 (NLH), 2015 U.S. Dist. LEXIS 169997, *23 (D.N.J. Dec. 21, 2015), quoting, Merman v. City of Camden, 824 F. Supp. 2d 581, 591 (D.N.J. 2010). "If a plaintiff relies mainly on statistics showing the frequency of excessive force complaints and how frequently they are sustained, the

---

[3] Unpublished opinion attached as Ex. 3

plaintiff must show why the prior incidents were wrongly decided [by Internal Affairs] and how the misconduct in the case is similar to that involved in the present action." Id., *quoting*, <u>Forero v. Atlantic City</u>, 2014 U.S. Dist. LEXIS 43228, [WL] at *3, (D.N.J. Mar. 19, 2014)[4].

First, Millville maintains that neither Defendant Dixon nor Defendant Orndorf committed any civil rights violations against the Plaintiffs, which is a prerequisite for finding Millville liable under "Monell." *See*, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988), *supra*.

Even if it is plausible that a civil rights violation occurred, Plaintiff has not plead a plausible "Monell" claim against Millville. While the factual allegations made in the SAC are extensive, there is not one fact which alleges a pattern or practice of excessive force by either the City of Millville Police Department as a whole, or by Officer Dixon or Orndorf alone. The SAC simply addresses Dixon's prior history of use of force and makes a conclusory allegation there were instances of excessive force; but, the SAC does not reference a single instance wherein Dixon or Orndorf was found to have used excessive force prior to February 25, 2018.

---

[4] Unpublished opinion attached as Ex. 4

The SAC refers only to the fact Dixon uses force more often than others and cites to statistics gathered by NJ Advance Media/NJ.com and published in "The Force Report." Plaintiff apparently hopes to rely on the total number of Use of Force Reports completed by Dixon and ask the factfinder to speculate that some of those use of force incidents must have been excessive, thereby concluding Dixon displayed a pattern of using excessive force.

Plaintiff is apparently alleging the City should have done more to review all use of force reports and the related events to make sure Dixon was not using excessive force. Yet, Plaintiff cites to no standard that was in effect at the time of the incident to require such reviews. In fact, "The Force Report" itself states: "Many major U.S. cities track use-of-force trends as part of systems that flag potentially problematic officers for review. **But in New Jersey, that's not required** […]." https://force.nj.com/database/pd-dept/millville-cumberland (emphasis added). Use of force statistics do not equate to constitutional violations or any wrongdoing, and relying on use of force statistics alone to imply a pattern of *excessive* use of force is not sufficient to defeat a motion to dismiss, especially when the statistics relied on are unreliable and would ultimately be inadmissible.

NJ.com itself discredits Plaintiff's use of "The Force Report" data as support. In reporting on "The Force Report," NJ.com stated: "Police force is sometimes necessary, often painful and rarely pretty. A high number of uses of force does not necessarily indicate wrongdoing, and numbers can fluctuate based on location or assignment."[5] "The Force Report's" methodology states:

> Because force incidents are self-reported by police officers, they inherently contain some human error.
> Using force is a normal and necessary part of policing. This is not a database of police misconduct. A high number of uses of force does not necessarily indicate wrongdoing.
> Use-of-force incidents are self-reported, and thus, forms are dependent on the accuracy of the completing officer. And that's if a form was completed at all, and if it was turned over under the public record requests.
> […]
> Not everyone interprets the statewide guidelines for reporting force the same. Some departments or officers may be more rigorous about reporting, thus making it appear as though their numbers are higher.[6]

The SAC takes one step in the right direction by citing to actual Internal Affairs complaints made against Dixon for excessive force at para. 312, and concludes there were ten such complaints made against Dixon in a 7-year time frame from 2013-2019 and none were sustained. However, the SAC does not specify how many complaints were made prior to the Capps incident. Any complaints made after the Capps incident are irrelevant to

---

[5] https://www.nj.com/news/2018/12/this-nj-cop-used-more-force-than-anyone-else-is-he-violent-or-just-good-at-his-job.html

[6] https://www.nj.com/news/2018/11/how_we_built_the_most_comprehensive_statewide_database_of_police_force_in_the_us.html

establishing a deliberate indifference to a pattern of excessive force being the moving force behind the alleged actions against Capps. Logically, events occurring after an event cannot be a cause of the event. Moreover, the SAC provides no context for that number of complaints. What basis does Plaintiff have to suggest ten complaints for excessive force over a seven-year period is abnormal? Does it matter how many arrests Dixon makes, or how many calls for service Dixon responds to? Does it matter what the violent crime rate of the city is compared to other cities? It is quite telling, however, that of Dixon's 80 use of force incidents reported by NJ.com and "The Force Report," only ten of them resulted in a citizen making a complaint.

"If a plaintiff relies mainly on statistics showing the frequency of excessive force complaints and how frequently they are sustained [or not sustained], the plaintiff must show why the prior incidents were wrongly decided [by Internal Affairs] and how the misconduct in the case is similar to that involved in the present action." Zampetis, *supra*., *quoting*, Forero v. Atlantic City, 2014 U.S. Dist. LEXIS 43228, [WL] at *3, (D.N.J. Mar. 19, 2014). The SAC relies only on the number of Internal Affairs complaints that were not sustained, does not provide any basis to infer any of those complaints involved conduct "similar to that involved in the present action" (other than to say they were all complaints for excessive force), or that any were wrongly decided.

Plaintiff alleges the excessive force used by Dixon was a takedown maneuver. If the takedown maneuver on a resisting arrestee is considered excessive, Plaintiff would need to have alleged facts to establish a pattern of prior use of such a tactic, in an unconstitutional manner, to determine if the City could be held deliberately indifferent to such actions.

The SAC presents a claim of Dixon punching people in face, stating that Sgt. Redden "told OPIA that he was aware that Dixon had punched people in the face **and that he addressed this with Dixon**." SAC, para. 246 (emphasis added). First, the allegation that Dixon punched people in the face is irrelevant in this case because there is no allegation Dixon punched Plaintiff Capps. Second, there is no allegation that Sgt. Redden was speaking of excessive force, only that Sgt. Redden was allegedly aware Dixon punched people in the face. Even though there is no evidence that any such punching amounted to excessive force, the fact Sgt. Redden addressed the issue with Dixon is the opposite of deliberate indifference, especially so since Sgt. Redden addressed the issue without any factual findings that any such punching was excessive force.

Moreover, the SAC alleged Dixon stated, "if I'm justified to use force, I'm going to use force." SAC, para. 248. This paragraph sums up Plaintiffs' entire case as it goes on to state, "Dixons' attitude about the use of force stands in contrast to the Attorney

17

General's Use of Force Policy, which states that an officer should use the 'utmost restraint' in connection with the use of force, even though it may be 'justified.'" This is precisely why Plaintiffs' SAC is fatally deficient and comes up short of a plausible case for deliberate indifference to known constitutional violations. The Attorney General's guidelines do not establish constitutional parameters, rather, they promote more of a guideline or a rubric by which officers should be evaluated at an administrative level. Plaintiff can argue all he wants that Dixon has displayed a pattern of using *justified* force more than any other officer, but that is not the same as alleging a pattern of using excessive force.

The SAC has similar allegations that have effectively caused Plaintiff to plead herself into dismissal. The following are some examples, keeping in mind that none of these events precipitated by any findings that Dixon used excessive force, only that the City was being diligent in its supervision of Dixon:

1. "Farabella's public statements to NJ.com in support of Dixon also are undercut by Farabella's own interview with OPIA, in which he told OPIA that he had talked to Dixon a few times about his use of force, and that the type of force he used was not the image of a police officer."

This allegation shows the opposite of deliberate indifference. Even though the force being used by Dixon was not found to be excessive, Farabella still saw some of Dixon's actions as questionable and he discussed these issues with Dixon.

2. "In connection with the arrest of Joyce, Millville police
   officer Chard spoke to OPIA and said that Dixon used a
   "hip toss" on Joyce. Chard told OPIA that supervisors
   spoke to him about using force, 'but this is a rare
   occurrence'."

Again, even without any evidence of Dixon using excessive force,

this allegation illustrates supervisors addressed some of their

concerns with Dixon.

3. "Records produced by Millville further demonstrate that
   in 2016 the police department more often used "random"
   reviews of videos for purposes of evaluating Dixon and
   other officers. Yet selecting one or two random videos
   would not be targeted toward catching a pattern of
   excessive force, making the system in place before the
   2019 revision inadequate for catching repeat offenders."

First, it was not even a state standard to conduct randomized

reviews at the time the Millville Police Department was conducting

them; so, the City provided more supervision than was required by

any state standard. Second, Plaintiff is essentially alleging that

the review system that was in place was just not good enough. It

is not enough to allege a system was "inadequate," especially when

there is no evidence that Millville knew at the time it was

inadequate.

4. "In an August 2014 entry, Dixon logged 13 UOF incidents,
   only one of which raised concerns with Lt. Colon.
   Guardian Tracking stated that, 'Dixon will be monitored
   for any further incidents.' He was not being monitored
   closely enough, as NJ.com reported on public Facebook
   memes posted by Dixon regarding police use of force."

This is precisely the type of allegation that does not meet the

standard for deliberate indifference. This statement shows that

Dixon was being supervised, his use of force was being monitored, and steps were taken to address his use of force. **"As the Supreme Court has explained, 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [unconstitutional deliberate indifference]'."** Zampetis v. City of Atl. City, Civil Action No. 15-1231 (NLH), 2016 U.S. Dist. LEXIS 132929, at *19 (D.N.J. Sep. 27, 2016) (emphasis added), *quoting*, Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> 5. "Internal Affairs observed in February of 2016 that, although Dixon's excessive force complaints resulted in findings of 'exonerated' or 'unfounded,' he was still showing a pattern. Defendant Chief Farabella in March of 2016 concurred with a recommendation made by the Cumberland County Prosecutor's Office's Chief of Detectives and by the Millville Police Departments own Internal Affairs Unit that Dixon should be sent to a training course call 'Verbal Judo' due to the excessive force complaints made against him in a two-year period."

First, this statement suggests the Cumberland County Prosecutor's Office reviewed Dixon's Internal Affairs complaints and agreed with Millville's Internal Affairs findings. If discovery takes place in this case, the extent of participation by the Cumberland Prosecutor's Office in overseeing Millville's use of force and Internal Affairs function will add another layer to Millville's defense against deliberate indifference. This paragraph from the SAC barely scratches the surface on the involvement of the Prosecutor's Office. Second, although the Prosecutor's Office

agreed there was no evidence Dixon used excessive force, it determined Dixon could possibly benefit by taking an extra training course in Verbal Judo, presumably a course designed to train officers to deescalate situations to reduce the need to use force as frequently. Chief Farabella agreed and ordered Dixon to take the course. This, again, is the opposite of deliberate indifference. Hypothetically, even if the Prosecutor's Office felt Dixon's use of force was excessive, sending him for additional training would still be the opposite of deliberate indifference to a pattern of excessive force. If Millville knew Dixon had a pattern of excessive force and did nothing, that would be deliberate indifference. One might argue sending him to "Verbal Judo" would not have been adequate to address a pattern of excessive force, but even then, inadequacy is not deliberate indifference. Since there was no evidence of excessive force, "Verbal Judo" was probably adequate to address the concerns raised by Dixon's use of justified force.

The five excerpts above are just some examples from Plaintiffs' 393 paragraph SAC that contradict Plaintiffs' allegations of deliberate indifference to a pattern of excessive force. The SAC does not allege any facts to support a legally cognizable claim there was a pattern or practice of using **excessive force** by Dixon or any Millville Police Officer. Plaintiff only alleges Dixon had a lot of use of force incidents, but as even

NJ.com states, use of force incidents do not equate to wrongdoing; and, on and before the date of the subject event, there was no requirement in New Jersey to monitor officers' use of force reporting. Moreover, contrary to Plaintiffs' pleading requirement, Plaintiffs admit Millville did monitor Dixon's use of force and addressed concerns about Dixon's use of force, even though doing so was not required, and even though there was no finding of Dixon using excessive force. So, Plaintiffs' entire <u>Monell</u> claim comes down to the allegation that the City of Millville did not do a good enough job monitoring Dixon's use of force and Millville could have done more. Such allegations are simply not enough to establish municipal liability.

### C. <u>Counts 8, 9, 11, 12 – Plaintiffs' state tort claims should be dismissed</u>

The New Jersey Tort Claims Act ("NJTCA") governs Plaintiffs' state tort claims against the City of Millville, Officer Dixon, and Officer Orndorf. The Legislative Declaration of the NJTCA provides, in part:

> [I]t is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.

N.J.S.A. 59:1-2. N.J.S.A. 59:2-1(a) states, "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(b) states, "[a]ny liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." N.J.S.A. 59:2-2(b) states, "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable."

The NJTCA does not establish liability for a public entity based on the theories of negligent supervision or negligent retention. The NJTCA does provide for vicarious liability on public entities for certain acts or omissions of their public employees, but only when the public employee is found liable. Thus, Plaintiff's negligent supervision and negligent retention claims in Counts 8 and 9 are not legally cognizable and should be dismissed.

N.J.S.A. 59:5-2(b)(3) provides that "Neither a public entity nor a public employee is liable for […] [a]ny injury caused by […] a person resisting arrest or evading arrest."

N.J.S.A. 59:3-3 provides, in pertinent part, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law."

N.J.S.A. 59:2-10 provides, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."

Plaintiff's vicarious liability claim in Count 12 should be dismissed because the NJTCA expressly immunizes public entities and public employees for injuries caused by a person resisting or evading arrest. *See*, N.J.S.A. 59:5-2. The SAC admits Plaintiff Capps resisted arrest and the video evidence puts that question beyond debate. The injuries sustained by Capps were caused because she resisted arrest.

Additionally, N.J.S.A. 59:3-3 holds that police officers are not liable for injuries arising out of their good faith execution or enforcement of the law. Plaintiffs do not dispute the lawfulness of the arrest, nor do Plaintiffs dispute Plaintiff Capps resisted arrest. Just because Plaintiffs argue, in hindsight, that Dixon could have used less speed or strength or pressure in subduing Plaintiff, that does not negate Dixon's or Orndorf's the good faith execution of the arrest. Since N.J.S.A. 59:2-2(b) states that a public entity can only be vicariously liable if a public employee is found liable, the City of Millville cannot be liable for any

injuries resulting from the Defendant Officers' good faith execution of the law.

If it is found that the Officers' actions were not conducted in good faith, then it must be said they acted maliciously or engaged in willful misconduct. <u>N.J.S.A.</u> 59:2-10 provides that a public entity cannot be held liable for a public employee's acts "constituting a crime, actual fraud, actual malice, or willful misconduct." The SAC alleges claims of assault, battery, and intentional infliction of emotional distress against Dixon and Orndorf. These are intentional torts for which a public entity cannot be held vicariously liable. *See*, <u>Ward v. Barnes</u>, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008) ("[T]here is no legal basis for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require 'actual malicious or willful misconduct.' Section 59:2-10 of the Tort Claims Act precludes entity liability for such conduct […].").

Moreover, the New Jersey Supreme Court has held that violating standing orders is considered "willful misconduct."

> [W]illful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline. […].
>
> The phrase "willful misconduct" in this context naturally commands the meaning we here attribute to it: the knowing failure to follow specific orders, "knowing"

that there is an order and willfully failing to follow
it, *i.e.,* intentionally failing to obey the order.

<u>Fielder v. Stonack</u>, 141 N.J. 101, 126 (1995)(emphasis added). Not
only does the SAC allege Dixon pled guilty to criminal charges
relating to the arrest of Capps, which Millville will maintain is
ultimately inadmissible, but the SAC repeatedly alleged both Dixon
and Orndorf violated policies and procedures of the Millville
Police Department and the New Jersey Attorney General. If those
allegations should be proven, which Millville maintains they
should not, Millville cannot be held vicariously liable for the
conduct complained of.

Pursuant to the NJTCA, there is no scenario wherein a public
entity can be held vicariously liable for an injury arising from
the arrest of a resisting arrestee. Such an injury either arises
from the good faith efforts of the police officer; or they arise
from the willful, malicious, or criminal actions of the police
officer. Accordingly, for all the tort claims alleged in the SAC,
the *respondeat superior* claims against Millville should be
dismissed, with prejudice.

Since there is no underlying negligence on the part of
Millville, Plaintiff Gibson's loss of consortium claim should also
be dismissed against Millville, with prejudice. "A *per quod* claim
is only maintainable by reason of a spouse's personal injury. It
depends upon and is incidental to the personal injury action."

<u>Tichenor v. Santillo</u>, 218 N.J. Super. 165, 173 (App. Div. 1987), *citing*, <u>Rex v. Hutner</u>, 26 *N.J.* 489, 492 (1958). "Our courts have characterized it as a derivative claim, not a separate cause of action." <u>Id</u>.

**III. CONCLUSION**

For the foregoing reasons, Count 3 of the SAC should be dismissed in its entirety because there was no underlying civil rights violations on the part of any of the Defendant Officers; nor was the City of Millville deliberately indifferent to any custom, pattern, or practice of excessive use of force. Also, Counts 8, 9, 11 and 12 should be dismissed in their entirety because the City of Millville cannot be held vicariously liable for the alleged actions of the Defendant Officers pursuant to the New Jersey Tort Claims Act.

Respectfully submitted,

A. Michael Barker, Esq.