**REYNOLDS & HORN, P.C.**
116 South Raleigh Avenue
Suite 9B
Atlantic City, NJ  08401
609-335-4719
By:  Thomas B. Reynolds, Esquire
(Atty. ID #019311982)
Attorney for Defendant, Officer Joseph Dixon
File No. 8111-TBR

| | |
|---|---|
| AUDRA CAPPS; AND DOUGLAS ROBERT GIBSON, JR.,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH DIXON; BRYAN ORNDORF; JODY FARABELLA; CITY OF MILLVILLE; JOHN/JANE DOE(S),<br><br>Defendants. | THE UNITED STATES DISTRICT COURT<br><br>CIVIL NO. 1:19-CV-12002-RMB-AMD<br><br>CIVIL ACTION<br><br>**STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR DISMISSAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE** |

Defendant Joseph Dixon respectfully submits the following Statement of Material Facts in support of the Motion for dismissal of Plaintiff's complaint:

## STATEMENT OF MATERIAL FACTS

1. On February 25, 2018 at approximately 8:22 p.m., defendant Millville Police Officer Bryan Orndorf responded to a police dispatch call reporting a description of a vehicle operated by a possible DWI suspect, by locating Plaintiff Audra Capps' 2003 gray Cherokee, which Officer Orndorf pulled over in the area of a commercial property at 612 West Main Street, in Millville; before and after the stop, Officer Orndof made observations of the vehicle's operation and of the occupant Ms. Capps that were consistent with the conclusion that Capps was driving while intoxicated,

1

according to Officer Orndorf's Supplemental Investigation Report.  See Exhibit A, Officer Orndorf's 2-page Supplemental Investigation Report.

2. Millville Police Officer Joseph Dixon arrived at the scene and took over the vehicle stop and investigation, which resulted in plaintiff's arrest on charges of DWI, Reckless Driving, Resisting Arrest, Refusal to Submit to Breath Testing, in addition to summonses issued by Officer Orndorf for Failure to maintain lane and Possession of an open container of alcohol in a vehicle.  See Officer Dixon's 6-page Investigation Report and Officer Orndorf's report, Exhibit A.

3. Plaintiff Capps admits in her pleadings that she does not challenge the basis for the motor vehicle stop on February 25, 2018, and she does not challenge the probable cause for her arrest.  Second Amended Complaint (Court Docoument 58), paragraph 64.

4. Plaintiff Capps admits in her Second Amended Complaint at paragraphs 52 and 54 that as Officer Dixon initiated the arrest of Capps, that Capps "took a step away" and "began to back up so as to not be handcuffed", prior to Officer Dixon's executing a takedown maneuver to effect Plaintiff's arrest.

5. On November 19, 2018, Plaintiff Capps pled guilty to charges of Resisting Arrest and to DWI (Driving while impaired), and the traffic summonses were dismissed.

<u>See</u> Exhibit B, 11/19/18 Millville Police Officer Paul Deckert's Supplemental Investigation Report.

6. In this civil action Plaintiff Capps alleges that Officer Dixon used excessive force against Capps in effecting her arrest, resulting in a violation of Capps' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures. <u>See</u> Second Amended Complaint, paragraph 97.

7. The roadside DWI investigation, arrest, plaintiff's resistance and Dixon's takedown maneuver and handcuffing of Capps were captured on video by the police Mobile Video Recorder (MVR) mounted inside Dixon's patrol car, and the Capps incident became part of a broad, wide-ranging investigation by New Jersey's Division of Criminal Justice, through the Attorney General's Office of Public Integrity and Accountability (OPIA), that was initiated following the November or December 2018 publication of NJ.com's series entitled <u>The Force Report</u>; the OPIA investigation involved allegations of misconduct occurring during the course of Dixon's employment as a Millville police officer. <u>See</u> Plaintiff's Second Amended Complaint, paragraphs 46, 50, 155, and 158.

8. As part of the Division of Criminal Justice OPIA investigation, State investigators took statements from Audra Capps and from Officer Bryan Orndorf, each of whom provided their recollections of the incident, as recorded in the Division of Criminal Justice Supplement Reports. <u>See</u> Exhibits C and D, Reports of Division of Criminal

3

Justice interviews of Audra Capps and Officer Bryan Orndorf, respectively, produced by Plaintiff's attorney as discovery documents P1943-P1945 and P1946-1948.

9. Audra Capps told State investigators that after Officer Dixon told her she was under arrest, Capps

> "panicked because she was never arrested before which caused her to become scared. Officer Dixon took both of her wrists and she pulled away from him which caused him to lose grip of her. . . . Capps said she had to plead guilty to resisting an arrest to the DUI. At the time, she did not feel that she was resisting arrest but later found out that because she pulled away from the officer that was considered resisting arrest." See Exhibit C.

10. Officer Bryan Orndorf told State investigators that when Officer Dixon went to place Capps under arrest, Capps

> "moved away from him and he performed a hip toss maneuver to take her to the ground. Officer Orndorf stated that he believes Officer Dixon did this maneuver because his training kicked in and it is a way to bring a subject to the ground quickly and effectively. He believes that Officer Dixon did the right thing and it is unfortunate that he was much larger than her, so injury occurred as a result of the size difference. Officer Orndorf learned how to do a hip toss in the academy and has never used it on the street because when he did it, he dislocated his hip." See Exhibit D.

11. On November 20, 2019, pursuant to a written plea agreement between Dixon and OPIA, Joseph Dixon pled guilty before N.J. Superior Court Judge Robert Malestein (Cumberland County) to a charge of third-degree aggravated assault by recklessly causing injury to Audra Capps by using excessive force, or greater than the force he could have used to accomplish the arrest. See Exhibit E, Transcript of 11/20/19 Plea Hearing, Dixon testimony, at page 9 line 13 through page 10 line 14.

4

12. As part of the plea agreement, Dixon also on November 20, 2019 pled guilty to one count of third-degree aggravated assault by recklessly causing injury to T.J., as a result of using more force than was necessary under the circumstances, in the course of making an arrest while working as a Millville police officer on March 24, 2018.  See Plea Hearing Transcript, Exhibit E, at page 10 line 22 through page 11 line 23.

13. At a Superior Court hearing on January 17, 2020, Judge Malestein sentenced Dixon to 2 years probation, in accordance with the plea agreement, and Judge Malestein considered the arguments of counsel on a motion by Dixon's criminal defense attorney for a civil reservation pursuant to N.J. Court Rule 3:9-2.  See Exhibit F, Transcript of January 17, 2020 Motion and Sentence.

14. During the January 17, 2020 Court hearing, the Deputy Attorney General represented that the State's investigation had resulted in a decision to potentially charge and indict Dixon with official misconduct crimes that would expose Dixon to facing, if convicted, a mandatory minimum prison term of at least 10 years (Exhibit F, Transcript of January 17, 2020 Motion and Sentence, at page 10), and Judge Malestein stated on the record that Dixon's plea agreement represented a 'Hobson's choice' for Dixon, who was facing the very real possibility of 10 years without parole, with Judge Malestein adding:  "he either takes a plea on a third degree with a potential for county jail time and a probationary term or he takes his chances and

5

ultimately face a very significant period of time in state prison. . . . And that's really not a choice".  Exhibit F, page 18 line 8 through page 20 line 6.

15. Judge Malestein denied the application for a civil reservation, without prejudice to the matter being revisited, stating "I'm not so certain if I enter a civil reservation in Superior Court in Cumberland County in the Criminal Division whether or not the United States District Court is actually going to follow that" (Exhibit F, p. 17 lines 18-22), and "I don't know what a Federal District Court judge would do with that (a civil reservation) in any event". Id., p. 21 lines 4-6.

16. In this pending civil litigation, Defendant Dixon has filed answering pleadings wherein he has denied violating Plaintiff Capps' constitutional rights, denied he is legally liable to Capps in damages, and Dixon has asserted lawful defenses including qualified immunity for law enforcement officers' activities in the course of duties.  On behalf of his defenses Dixon has provided certified interrogatory answers, which state, in part:

> "On the date and time in question, while in the course of employment as police officer for the Millville Police Department, this answering party conducted an investigation, arrest based on probable cause, and charging of plaintiff Audra Capps with driving while intoxicated and resisting arrest, to which offenses plaintiff pled guilty.  Further details of the incident, including the physical force which was utilized to counter plaintiff's resisting and in order to effect the arrest, are specifically described in this answering party's police investigation, arrest and related reports maintained by the Millville Police Department.  At no time did this answering party intend to cause physical injuries to the plaintiff, and in a negotiated plea agreement based, on retrospect and other factors, this answering party subsequently pled guilty in Superior Court to reckless conduct in the use of greater force than was necessary, in hindsight, to effectuate Ms. Capps' arrest."  See Exhibit G, Joseph Dixon's certified answers to interrogatories, number 3.

6

17. A portion of Officer Dixon's patrol car MVR recording of the Capps arrest, cited at paragraph 50 of Plaintiff's Second Amended Complaint (and which partial MVR recording begins after Plaintiff Capps failed sobriety tests administered by Dixon), shows, at the following timestamps: 20:31:06, Officer Dixon began to peaceably handcuff Capps, and Capps verbally and physically resisted the cuffing until 20:31:15, when Plaintiff Capps had pulled her arms from behind her back and turned around to face Dixon; at 20:31:16 Dixon immediately reacted by grabbing Capps' upper torso and pulling her around his left side and to the ground by 20:31:18; and thereafter Officers Dixon and Orndorf complete the handcuffing until at 20:31:36, Officer Dixon lifted Capps to her feet. Officer Dixon's use of physical, manual force at issue in this case lasted approximately 2 seconds, and Dixon helped Capps to her feet less than 20 seconds later.

18. Plaintiff Capps declined subsequent medical assistance referrals by Officers Dixon and Orndorf (see Dixon Investigation Report and Orndorf Statement to OPIA), and plaintiff Capps sought treatment on her own after leaving the police department on the night of her arrest. The cause, nature and extent of Capps' injury claims are disputed.

It is respectfully submitted that based on the pleadings and evidence in this matter, Plaintiff's proofs fail to establish that Dixon's execution of the takedown maneuver to effectuate the lawful arrest of Capps, was conduct that resulted in a clearly established violation of Capps' constitutional or statutory rights, under controlling principles of law on qualified immunity and as set forth in the accompanying Brief. Accordingly, it is respectfully submitted that defendant Dixon is entitled to an Order granting the instant motion to dismiss the Complaint with prejudice, pursuant to the Federal Rules of Civil Procedure.

Date:  10/17/20                                       **REYNOLDS & HORN, P.C.**

                                                  By:   */s/ Thomas B. Reynolds*
                                                        Thomas B. Reynolds, Esquire
                                                        Attorney for Defendant Joseph Dixon