**REYNOLDS & HORN, P.C.**
116 South Raleigh Avenue
Suite 9B
Atlantic City, NJ  08401
609-335-4719
By:  Thomas B. Reynolds, Esquire
(Atty. ID #019311982)
Attorney for Defendant, Officer Joseph Dixon
File No. 8111-TBR

| | |
|---|---|
| AUDRA CAPPS; AND DOUGLAS ROBERT GIBSON, JR.,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH DIXON; BRYAN ORNDORF; JODY FARABELLA; CITY OF MILLVILLE; JOHN/JANE DOE(S),<br><br>Defendants. | THE UNITED STATES DISTRICT COURT<br><br>CIVIL NO. 1:19-CV-12002-RMB-AMD<br><br>CIVIL ACTION<br><br>**BRIEF IN SUPPORT OF MOTION FOR DISMISSAL OR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE** |

## INTRODUCTION AND PROCEDURAL STATUS

Plaintiff Audra Capps filed her initial Complaint in this case on May 1, 2019, and moving defendant Joseph Dixon filed answering pleadings on July 30, 2019.  Thereafter on August 31, 2020, pursuant to the parties' requests, submissions and conferences with the Court, U.S. District Judge Renee Marie Bumb entered a Consent Order (Court Document 57), granting Plaintiff leave to file a Second Amended  Complaint by September 16, 2020, and granting defendants leave to file motions to dismiss in response to said Amended Complaint and/or for judgment on the pleadings, on or

1

before October 17, 2020.  Plaintiff did file her Second Amended Complaint (Court Document 58), and on behalf of the defense of Officer Dixon, this motion comes before the Court on Dixon's application to dismiss Plaintiff's allegations on the pleadings, pursuant to  Rules 12(b)(6), (c) and (d) of the Federal Rules of Civil Procedure.

In this action Plaintiffs seek damages pursuant to 42 U.S.C. Section 1983 against Officer Dixon, for allegedly using excessive force against Capps in effecting her February 25, 2018 arrest, resulting in a violation of her federal Constitutional rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures. See Second Amended Complaint, Count 1, paragraph 97.  Plaintiff in remaining Counts of the Second Amended Complaint also asserts derivative claims against Dixon, arising out of the same incident, for State constitutional and common law claims of negligence, assault and battery.

Defendant Dixon asserts that under relevant legal principles, and specifically based upon the most recent, controlling U.S. Supreme Court precedent on interpretation and application of qualified immunity for law enforcement officers in defense of excessive use of force claims, Plaintiff has not and cannot establish that clearly established law prohibited Officer Dixon from taking down a resisting arrestee, to effect a lawful arrest, under the circumstances of this case.  Accordingly, Officer Dixon is entitled to qualified immunity and dismissal of the allegations against him.

Movant Dixon hereby incorporates by reference the Statement of Material Facts filed concurrently with this brief, and for the reasons which follow, Joseph Dixon requests the Court to grant this motion for judgment on the pleadings.

## **LEGAL STANDARDS OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein,

Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

Qualified immunity is "immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 237 (2009), (citing Mitchell v. Forsyth, 472 U.S. 511 (1985); "Typically, the 'application of the defense of qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved 'long before trial.'" Radiation Data, Inc. v. New Jersey Dept. of Environmental Protection, 456 N.J. Super. 550, 560 (App. Div. 2018) (quoting Brown, 230 N.J. at 98 (citations omitted)). When determining qualified immunity, a trial court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Id. (quoting Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998)). A defendant in a civil rights action is entitled to qualified immunity shielding officials from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Bland v. City of Newark, 900 F. 3d 77 (3d Cir. 2018).

This "high standard for 'clearly established' law" is "tilted in favor of shielding government actors." Zaloga v. Borough of Moosic, 841 F.3d 170, 175-77 (3d Cir. 2016). When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft, 563 U.S. at 741 (quoting Malley, 475 U.S., at 341).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before

4

commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." 472 U.S. at 526. "Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Id. "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.

## LEGAL ARGUMENT

### UNDER RECENT U.S. SUPREME COURT PRECEDENT, OFFICER DIXON IS ENTITLED TO QUALIFIED IMMUNITY IN THIS EXCESSIVE FORCE CLAIM AS A MATTER OF LAW

In the 2019 decision of City of Escondido v. Emmons, 139 S. Ct. 500 (2019), the U.S. Supreme Court expounded upon and clarified the doctrine of qualified immunity as it applies to claims of excessive force made against police officers for their conduct in effectuating an arrest. The plaintiff in Escondido claimed that the defendant officer, Craig, used excessive force in effectuating plaintiff's arrest for the misdemeanor offense of resisting and delaying a police officer, where the officer utilized a takedown maneuver in taking the arrestee down to the ground and then handcuffing him. After stating the applicable rule that qualified immunity attaches when an official's conduct does not

5

violate clearly established statutory or constitutional rights of which a reasonable person would have known [citing recent Supreme Court decisions Kisela v. Hughes, 138 S. Ct. 1148 (2018); District of Columbia v. Wesby, 138 S. Ct. 577 (2018); White v. Pauly, 137 S. Ct. 548 (2017); and Mullenix v. Luna, 136 S. Ct. 305 (2015)], the Escondido Court expressly rejected the Ninth Circuit Court of Appeals' formulation of the definition of a clearly established right by saying only, and at a high level of generality, that the "right to be free of excessive force" was clearly established.  Escondido, supra, at p. 503.  The Supreme Court held that the Ninth Circuit Court had failed to properly analyze or explain whether clearly established law barred Officer Craig from stopping and taking down plaintiff Emmons in the manner shown and under the existing circumstances. Id., at 504.

In citing  Wesby, supra, the Escondido Court held that the Supreme Court has

> "stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. . . . While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate. . . .  Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. . . .  But a body of relevant case law is usually necessary to clearly establish the answer . . . ."

Escondido, supra at 504, quoting Wesby.

See also White v. Pauly, 137 S. Ct. 548 (2017), holding that clearly established law should not be defined at a high level of generality, but must instead be particularized to the facts of the case.   The "clearly established" standard requires that at the time of the action taken, the then-existing legal principle must clearly prohibit the officer's conduct in the particular circumstances before him; "(t)he rule's contours must

6

be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018).

In the White, supra, the Supreme Court instructed the lower courts on qualified immunity by stating the following:

> "[E]xisting precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.
> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases.  The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.
> Today, it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be particularized to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

Id. at 551-52 (internal citations and quotation marks omitted.

Applying these principles to the instant matter, it is clear that Plaintiff Capps has not met and cannot meet, under the particularized circumstances of this case, the threshold showing of a deprivation of a 'clearly established' constitutional right. Plaintiff's argument appears to be that she had a constitutional right that Officer Dixon could not effect an arrest with a take-down maneuver, to overcome her resistance, in these circumstances.  This claim does not represent a clearly established constitutional violation, and under the Supreme Court's prevailing analysis, Officer Dixon is entitled to qualified immunity.

Plaintiff has proffered no evidence, authority, or legal precedent, to prove that one who is unlawfully resisting an arrest, that is based on probable cause, has a right to

7

be free from a law enforcement officer's takedown maneuver to apply handcuffs and effectuate an arrest.  Similarly, Plaintiff has not shown any evidence that a law enforcement officer would clearly believe that his conduct in using a takedown maneuver, lasting 2 seconds, to arrest a resisting suspect, was unlawful or a violation of clearly established statutory or constitutional rights.

Rather, in the Second Amended Complaint, Plaintiff Capps has cited published excerpts of the Attorney General's Office (see paragraphs 68-69 of the Second Amended Complaint) and of a State Police Training Commission's course curriculum (see paragraph 88), which excerpts in fact expressly authorize police officers to use non-deadly, manual physical force when "necessary to overcome a subject's physical resistance to the exertion of the law enforcement officer's authority"; and "(e)xamples of physical force include "wrestling a resisting subject to the ground, using wrist locks or arm locks, striking with the hands or feet, or other similar methods of hand-to hand confrontation." Id., at paragraphs 68-69.  The State Police Training Commission course excerpt specifically provides 5 recognized "takedown techniques" that are expressly authorized for officers to subdue resisting suspects.  Id., at paragraph 88.

Indeed, Officer Bryan Orndorf, an eyewitness to Officer Dixon's arrest of Capps, stated to State Division of Criminal Justice investigators that Officer Dixon utilized the takedown "maneuver because his training kicked in and it is a way to bring a subject to the ground quickly and effectively . . . that Officer Dixon did the right thing and it is unfortunate that he was much larger than her, so injury occurred as a result of the size difference; Officer Orndorf learned how to do a hip toss in the academy and has never

8

used it on the street because when he did it, he dislocated his hip." See Exhibit D, Report of Division of Criminal Justice interview of Officer Bryan Orndorf.

The totality of the circumstances in this matter, and in the precise moment and situation facing Dixon, who at that time had no knowledge of Capps' intentions or potential actions, do not prove a clearly established constitutional violation committed by Officer Dixon in the immediate decision and execution of the takedown maneuver, in a matter of less than 3 seconds, to effect the arrest of the resisting Plaintiff Capps.  To the contrary, Plaintiff has failed to show that Dixon's official conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known, defined with the specificity required by controlling Supreme Court decisions. Plaintiff Capps' assertions that her right to be free of excessive force, under the particularized facts of this case, are of such a high level of generality that the unlawfulness of the officer's conduct in question is not beyond debate.

The requirement of specificity in defining a clearly established right was explained by the Escondido Court as follows:

> "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts; use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. . . . (I)t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the issue of reasonableness.  An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

Id. at p. 503, quoting Kisela v. Hughes, 138 S. Ct. 1148 (2018).

As noted above, Officer Dixon made a split-second judgment and acted when confronted with a situation of evolving circumstances, which conduct by Dixon, involving a takedown maneuver, was authorized, and not prohibited by, settled law[1], controlling authority or by clearly established precedent, and Dixon is entitled to qualified immunity.

Dixon's negotiated plea agreement involving guilty pleas to reckless conduct during arrests of Capps and Joyce does not eliminate Dixon's qualified immunity defenses.  Dixon faced a Hobson's choice (per the characterization of Judge Malestein, who also stated that Dixon really had no choice) of a plea offer that would essentially assure Dixon his freedom, versus a prolonged fight against a powerful State agency and zealous prosecutor, who expressed in court that his goal was to indict and prosecute Dixon for official misconduct crimes that would result in a 10-year mandatory minimum prison sentence, indicating the State's desire to target and 'get' Dixon at any cost, following an investigation prompted by a media report.  It cannot be said that Dixon's choice, for himself and his family, to plead guilty under these circumstances, reflected his state of mind, good faith, and intentions at the precise moments of the evolving situations leading to the lawful arrests of Capps and Joyce.  There has been no fair, plenary hearing or adjudication of any of the claims against Dixon raised in this civil litigation, and Dixon is entitled, in the context of this litigation, to an objective analysis

---

[1] See, e.g., State v. Moriarty, 133 N.J. Super. 563 (App. Div. 1975), reciting long-established, deeply rooted legal principles, at p. 573:  It is recognized that "a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances obtaining." State v. Koonce, 89 N.J. Super. 169, 184 (App. Div. 1965). The duty imposed on the citizen to submit also obtains when the restraint by the police officer is for any lawful purpose. State v. Mulvihill, supra. **If, however, the citizen resists, the officer is not only justified in but has the duty of employing such force as is reasonably necessary to overcome the resistance and accomplish the arrest** (emphasis added).

and determination, by this Court, of the particular relevant facts and circumstances in issue.  If and when necessary, Dixon will apply to this Court for an order formally decreeing that Dixon's guilty plea be deemed inadmissible in this litigation, as Dixon, in this forum, should be afforded a level playing field to assert his defenses, in the interests of justice and fairness.

Based on the accompanying Statement of Material Facts, Certification of Counsel, and attached Exhibits, including the police video and audio recordings of the subject incident, all of which are incorporated by reference herein, movant defendant Joseph Dixon submits that the Plaintiff's generalized, undefined claims of constitutional violations are barred by qualified immunity and should be dismissed pursuant to Federal Rules of Civil Procedure.  Movant Dixon respectfully submits there is an absence of a genuine issue as to any material fact presented in this claim for excessive force in violation of Plaintiff's constitutional rights, to preclude the entry of judgment, dismissing the Complaint.

## **CONCLUSION**

Qualified immunity is an objective question to be decided by the court as a matter of law. <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 242 (3d Cir. 2004). Based on established and current caselaw applying the principles of qualified immunity to the facts of this case, movant Dixon respectfully requests that the Court enter an Order dismissing the Complaint, with prejudice.

Date:  10/17/20  **REYNOLDS & HORN, P.C.**

By:  /s/Thomas B. Reynolds

Thomas B. Reynolds, Esquire
Attorney for Defendant
Joseph Dixon