EXHIBIT F--Dixon Motion (Capps v. Millville, et als.)

```
                                        SUPERIOR COURT OF NEW JERSEY
                                        CRIMINAL DIVISION
                                        CUMBERLAND COUNTY
                                        INDICTMENT NO. 19-11-1113 S/B
                                        A-_____
STATE OF NEW JERSEY,      )
                          )
                          )       TRANSCRIPT
           Plaintiff,     )
                          )
      v.                  )            OF
                          )
JOSEPH DIXON,             )
                          )
                          )    MOTION AND SENTENCE
           Defendant.     )

                          Place: Cumberland County Courthouse
                                 60 West Broad Street
                                 Bridgeton, NJ 08302

                          Date:  January 17, 2020
```

BEFORE:

   THE HONORABLE ROBERT G. MALESTEIN, J.S.C.

TRANSCRIPT ORDERED BY:

   THOMAS B. REYNOLDS, ESQ.
   Reynolds & Horn, P.C.

APPEARANCES:

   BRIAN UZDAVINIS, ASSISTANT PROSECUTOR
   Attorney on behalf of the State of New Jersey

   ANDREW M. BUTCKO, ESQ.
   Helmer, Conley & Kasselman
   Attorney on behalf of the Defendant


   **Sarah D'Agostino, CTR**
   **The TYPE-RIGHT-ER**
   **(856)881-2422**
   **FAX NO. (856)494-7806**
   **E-mail: Cvendzules@comcast.net**
   Audio Recorded
   Audio Operator, Ana Garcia

2

```
                                INDEX
 1
 2      WITNESSES:
 3      FOR THE STATE          DIRECT   CROSS    REDIRECT    RECROSS
 4      (No Witnesses Sworn)
 5
 6      FOR THE DEFENDANT
 7      (No Witnesses Sworn)
 8
 9      EXHIBITS                       IDENTIFICATION      EVIDENCE
10      (No Exhibits)
11
12      CIVIL RESERVATION MOTION:
13      ARGUMENT
14      BY: Mr. Butchko - 3
15      BY: Mr. Uzdavinis - 5
16
17      COURT DECISION - 16
18
19      SENTENCING:
20      ARGUMENT
21      BY: Mr. Butchko - 8
22      BY: Mr. Uzdavinis - 10
23
24      SENTENCE - 22
25
```

Colloquy 3

1    (Whereupon Proceeding Commenced at 12:05:49 p.m.)
2           THE COURT: Okay. We are on the record. This
3    is the State of New Jersey v. Joseph Dixon under
4    Accusation 19-11-1113. Counsel, note your appearances.
5           MR. UZDAVINIS: Good afternoon, Your Honor.
6    Deputy Attorney General Brian Uzdavinis appearing on
7    behalf of the State.
8           MR. BUTCHKO: Good afternoon, Your Honor. May
9    it please the Court, Andrew Butchko of the law firm of
10   Helmer, Conley and Kasselman appearing on behalf of
11   Joseph Dixon.
12          THE COURT: Okay. So we're here today for two
13   reasons. One is we are here for sentencing. There is
14   also a motion, which has been filed with regard to the
15   issue of a potential civil reservation. So why don't we
16   take care of the motion? Well, I'll hear argument on
17   the motion first.
18          MR. BUTCHKO: Thank you. Thank you, Judge.
19          THE COURT: Then we'll deal with everything
20   altogether. Go ahead.
21          MR. BUTCHKO: Judge, it's my motion for a
22   civil reservation. I did brief the case and I attached
23   some cases, which I think are instructive on whether a
24   civil reservation is warranted in this case. And as I
25   point out in my brief, Rule 3:9-2 allows a defendant who

1  enters a guilty plea to apply for a civil reservation
2  upon good cause shown.
3            And as I point out in my brief, the early
4  cases seem to have focused mostly on whether the civil
5  reservation is a condition of the plea, but later cases
6  that I've cited in my brief, State v. Compurcio
7  (phonetic) 215 -- 2015 New Jersey Super., a unpublished
8  decision which I've attached in my brief.  As well as
9  State v. McIntyre -- McIntyre Caulfield, 455 N.J. Super.
10 1, a 2018 Appellate Division case.  They seem to suggest
11 that good cause can be shown where the potential civil
12 case could wreak financial devastation upon a defendant.
13 And that's what we're primarily relying upon here,
14 Judge.
15           We tried to condition this plea on a civil
16 reservation, but the State would not agree to that
17 condition.  I think a civil reservation should be
18 granted because of the -- my client is facing two civil
19 -- two civil suits.  There may be others in the future.
20 We don't know at this point.  The statute of limitations
21 for the filing of civil suits hasn't expired with regard
22 to all of the incidents involving my client.
23           And I think that his financial situation is
24 such that if there are judgments in those cases, they
25 are gonna wreak financial hardship upon my client.  He

                    Argument - Mr. Butchko                    5

1  has surrendered his position as a law enforcement
2  officer.  He is working, but the income he receives at
3  his new job is minimal, between 30 and $60,000.00 a year
4  depending upon commissions.
5            He does -- he does have a home.  He's a
6  primary provider for his family.  He has three sons.
7  His work -- his -- I mean, his wife is a stay at home
8  mom.  He does have $20,000.00 in equity in his home and
9  he did receive his pension contributions when he
10 surrendered -- surrendered his position, which he still
11 has, but it only amounts to about $20,000.00.
12           So, Judge, he's not -- he doesn't have
13 substantial means here.  It's my understanding that at
14 least one of the litigants in the civil case are seeking
15 a multimillion dollar settlement in the case.  So for
16 those reasons, Judge, I think my client -- that a civil
17 reservation should be granted because judgments in the
18 civil cases could wreak financial havoc on him.  For
19 that reason, Judge, we'd ask you to order a civil
20 reservation.
21           THE COURT:  Go ahead, Counsel.
22           MR. UZDAVINIS:  Just a few brief comments for
23 the record, Your Honor.  I know that we've discussed
24 this and we've made our position clear in our brief that
25 we've filed that we would rely on as well.

1  　　　　　As Mr. Butchko pointed out, the Court can
2  order that civil reservation under 3:9-2 provided that
3  good cause is shown and to establish good cause.  The
4  case law is pretty clear that the burden is on the
5  defendant and the defendant has to show that civil
6  reservation or no civil use order is necessary to remove
7  an obstacle to his guilty plea, which is not the case
8  here because he has already pled guilty while fully
9  aware of the fact that we would oppose such an order.
10 　　　　　Or you can show that the civil consequences of
11 his plea without such an order may wreak devastating
12 financial havoc upon him.  The cases that defendant
13 relied on, and we discussed them in our brief, but
14 particularly <u>McIntyre Caulfield</u>.  In that case, the --
15 which seems particularly pertinent here.  The Defendant
16 had not yet entered a guilty plea and then did not want
17 to once she found out that insurance coverage would be
18 declined against her in a related civil suit that was
19 filed by the parents of an infant who died in the
20 Defendant's care.  She was a daycare provider who had
21 let the child fall asleep I believe on its stomach
22 negligently.
23 　　　　　In this instance, the Defendant committed
24 these crimes, which are the basis of a civil suit,
25 during the course of his employment as a police officer

Argument - Mr. Uzdavinis                7

1  with the City of Millville.  The current litigation
2  civilly is filed against the Defendant as well as other
3  police officers, the chief of police, the City of
4  Millville itself, and its been our understanding, and
5  Defense has not made any representation to the contrary,
6  that that case is being handled and that there's -- by
7  the municipal -- I believe it's a JIF, a joint insurance
8  fund.
9  　　　　　But at any rate, the municipality's insurance
10 carrier is providing full coverage and defense in that
11 matter.  Should something jeopardize that or there be a
12 change of circumstances in the future, I believe Your
13 Honor or another court could address that, but at this
14 time the State believes that entry of such an order
15 would be contrary to the governing case law and would be
16 premature.  So the State would oppose it.
17 　　　　　THE COURT:  Thank you. Okay.  I've also
18 received some additional information and I'll make it
19 part of the presentence report.  I do have an impact
20 statement from Audra (phonetic) and -- which is dated
21 January 17, 2020.  I did receive a copy of that.
22 　　　　　In addition to that, I've received as attached
23 as Exhibit A from Counsel for Mr. Dixon --
24 　　　　　MR. UZDAVINIS:  Your Honor --
25 　　　　　THE COURT:  -- more letters than I care to

```
 1   count on his behalf.
 2              MR. UZDAVINIS:  If I may, we have an --
 3              THE COURT:  Go ahead.
 4              MR. UZDAVINIS:  -- additional victim impact
 5   statement that arrived late yesterday.  I can provide it
 6   to the Defense.  This is from the other victim, Ms.
 7   Tanika Joyce (phonetic).
 8              THE COURT:  That I don't have.
 9              MR. UZDAVINIS:  Could I provide that to you?
10              THE COURT:  If you have a copy, bring it on
11   up.  Okay.  Thank you.  All right.  Anything -- anything
12   with regard to sentencing then, Counsel?
13              MR. BUTCHKO:  Yes, Judge.
14              THE COURT:  Go ahead.
15              MR. BUTCHKO:  Judge, I have reviewed the
16   presentence report with my client.  There are no changes
17   or corrections to the presentence report.  I have also
18   submitted a sentencing memorandum to the Court.  I
19   apologize for the lateness of that.  I was hoping I
20   could get a copy of the presentence report before I
21   filed that, but when wasn't forthcoming yesterday, I
22   decided to file my sentencing memorandum.
23              Judge, before the Court is Joseph Dixon who's
24   a 28 year old male.  He has no prior record.  He has
25   pled guilty to two third degree offenses.  He is
```

                         Argument - Mr. Butchko                   9

```
 1   entitled to the presumption of non-imprisonment.  As a
 2   result of that plea, he's surrendered his employment.
 3   He surrendered his employment, frankly, before he
 4   entered a guilty plea and he also signed at the time of
 5   the plea a lifetime forfeiture of public office.
 6              He is remorseful about what happened and he,
 7   by virtue of these guilty pleas, is accepting
 8   responsibility for what he did.  As I point out in my
 9   sentencing memorandum, there are a number -- it's our
10   position that there are a limit -- a limited number of
11   aggravating factors.  As I counted, only Aggravating
12   Factor Number Nine applies, the need to deter others.
13              And as I point out in my brief, that applies
14   in every crime, so there's nothing unique about this
15   crime.  So I'd ask that you give minimal weight to that.
16   But as I lay out in my -- in my brief, there are as I
17   count them, nine mitigating factors that we believe
18   apply in this case.  Mitigating Factor Number 2, 4, 5,
19   6, 7, 8, 9, 10, and 11, Judge.
20              The Court is familiar with the facts of this
21   case.  I'm not gonna go through every aggravating and
22   mitigating factor, but it's our position that the
23   mitigating factors substantially outweigh the
24   aggravating factors.  And while this is a negotiated
25   plea and it calls for a sentence of probation, 364 days
```

Argument - Mr. Uzdavinis

```
 1   in county jail, we're asking the Court in light of the
 2   numerous mitigating factors to consider sentencing my
 3   client simply to probation with no jail or if a jail
 4   sentence is gonna be imposed, that the Court consider
 5   suspending the imposition of that sentence.
 6             That's our application, Judge.  Other than
 7   that, we move for sentencing.
 8             THE COURT:  From the State, Counsel.
 9             MR. UZDAVINIS:  Thank you, Your Honor.  The
10   Defendant in this matter during -- just a few brief
11   remarks for the record.  During his relatively brief
12   time as a police officer for the City of Millville he
13   had a routine practice of using force during the course
14   of arrests.  So much so that our review resulted in a
15   decision to potentially charge and indict him with
16   official misconduct, a pattern of official misconduct,
17   additional aggravated assault charges, tampering with
18   public records for not accurately describing everything
19   that occurred during those arrests.
20             He was facing, if convicted, a mandatory
21   minimum period in prison before parole of at least ten
22   years.  So I know the letters that were submitted on his
23   behalf ask this Court for leniency, but this negotiated
24   plea agreement really is lenient, if not generous, as
25   is.  And that agreement did require him to enter a
```

Argument – Mr. Uzdavinis                              11

```
 1   consent order with the lifetime ban on public office or
 2   employment and it did contemplate a sentence of
 3   probation conditioned on 364 days in county jail.
 4             The State would defer to Your Honor's decision
 5   in terms of how to impose that jail time.  The State is
 6   also in receipt of the Defendant's sentencing brief.  We
 7   received it yesterday, with regard to any sentencing
 8   calculus concerning aggravating -- aggravating and
 9   mitigating factors, the State would defer to Your Honor.
10             I would say that the two victims, with regard
11   to the two aggravated assault charges that Defendant
12   pled guilty to based on his use of excessive force
13   during the course of these two arrests, are present and
14   would like to address the Court if Your Honor is all
15   right with that.
16             THE COURT:  Yeah, go right ahead.  I've read
17   both victim impact statements.  So if they have anything
18   to add to that, I'll certainly hear from them.  Come on
19   up.  You can come stand next to the attorney, to his
20   right.  Go ahead.
21             MR. UZDAVINIS:  And to my right, Your Honor,
22   is Ms. Tanika Joyce and this is our victim witness
23   coordinator from Division of Criminal Justice, Melissa
24   Miller (phonetic).
25             THE COURT:  Thank you.
```

| | |
|---|---|
| 1 | MS. JOYCE:  Hello.  Good morning. |
| 2 | THE COURT:  Good morning.  Good afternoon, I |
| 3 | should say. |
| 4 | MS. JOYCE:  Good afternoon, yes.  On March |
| 5 | 24th, 2018 I was a victim of an aggravated assault by a |
| 6 | police officer while shopping with my children and |
| 7 | grandchildren.  This traumatic event has caused my |
| 8 | children and grandchildren and myself to lose trust in |
| 9 | law enforcement and embedded great fear and anxiety |
| 10 | towards law enforcement as a whole. |
| 11 | On March 24th, 2018, Officer Dixon abused his |
| 12 | authority as law enforcement by throwing me to the floor |
| 13 | and then macing me, even though I showed no sign of |
| 14 | hostility towards him.  Even now, I still have moments |
| 15 | of anxiety whether it be in -- I'm driving in my car and |
| 16 | a police officer pulls up near me or even when I hear |
| 17 | sirens of police cars itself, it causes my breathing to |
| 18 | tense up and my hands to shake. |
| 19 | Never in my 42 years on this Earth have I ever |
| 20 | felt like this, a feeling of embarrassment and pain, |
| 21 | fear, and the worse part of this feeling derives from |
| 22 | the one thing that is supposed to keep others and myself |
| 23 | safe from law -- is law enforcement. |
| 24 | In addition to the emotional hardship that |
| 25 | this has caused my fam -- hardships and financial |

Colloquy                                                13

| | |
|---|---|
| 1 | burdens, it has caused my family to suffer greatly. |
| 2 | Since the incident -- since this occurred, we have moved |
| 3 | twice of fear and to keep my children safe -- feeling |
| 4 | somewhat safe.  We are still not fully settled and |
| 5 | cramped into a much smaller place, what we are not used |
| 6 | to living. |
| 7 | Mr. Dixon needs -- I feel Mr. Dixon should |
| 8 | have more time, more than just probation and I hope he |
| 9 | realizes the long term damage he has done to my entire |
| 10 | family.  Not just me, but my children and grandchildren. |
| 11 | Thank you. |
| 12 | MR. UZDAVINIS:  Thank you for the Court's |
| 13 | indulgence. |
| 14 | THE COURT:  It's quite all right. |
| 15 | MR. UZDAVINIS:  I wanted the Defendant to hear |
| 16 | this.  This is Ms. Audra Caps (phonetic). |
| 17 | THE COURT:  Thank you.  Go ahead, Audra. |
| 18 | MS. CAPS:  Audra.  Joseph Dixon on February |
| 19 | 25th, 2018 you ruined my life.  My life and life I share |
| 20 | with my husband will never be the same.  There are |
| 21 | others who are also responsible for what happened to me, |
| 22 | but for purposes of today's sentencing, the focus is on |
| 23 | you. |
| 24 | It is one thing as a police officer to have a |
| 25 | reason to stop someone out on the roads.  It is |

                                  Colloquy                                14

1    something totally different when a police officer goes
2    above and beyond what is reasonable and uses excessive
3    force to make an arrest.  And that is what you did to me
4    when you arrested me.
5               You slammed me into the pavement in a parking
6    lot in Millville.  I was no physical match for you, but
7    you didn't care.  Why did you do it?  Because you
8    thought you could.  You didn't even know the tape in the
9    patrol car was rolling.  That says a lot.  It says that
10   you thought you could get away with it because you had a
11   badge, a title, and authority.  You thought you were
12   above the law and you were wrong.
13              Before the night of February 25th, 2018 my
14   husband and I had a good life.  You took that good life
15   from us.  These days many, many nights my husband is up
16   at night frustrated that there is nothing he can do to
17   comfort me and nothing that he can have done to protect
18   me from you.  Someone your chief of police described in
19   the press as an example of a fine officer.  Yes, he said
20   that about you.
21              After you slammed me to the pavement on the
22   night of February 25th, 2018 I said that my ribs were
23   broken.  You -- my injury and my pain were ignored.  I
24   asked that I be allowed to call my husband.  My request
25   was ignored.  I asked that -- I said that I could not


                                  Colloquy                                15

1    breathe.  My complaint was ignored.  I said that you
2    slammed my face.  My complaint was ignored.  And I said
3    that I needed to go to the hospital, still ignored.
4               But, Joseph Dixon, this is something you need
5    to hear.  The pain that I live with everyday can not be
6    ignored.  When you assaulted me, you broke several of my
7    ribs.  I have been receiving medical treatment since
8    that night.  I have had to have two surgeries to try to
9    fix my ribs and they are still not right.  They didn't
10   heal correctly.
11              I have scars on my body from the two
12   surgeries.  My medical prognosis is not good.  My
13   options for living a pain free life are limited.  I now
14   have had to quit two jobs because I can't do the work.
15   I am seeing a therapist because I have been diagnosed
16   with PTSD.  I am afraid of police officers.  I am afraid
17   to drive at night and I now lead a life of pain.  My
18   life as I knew it is over.
19              I take some comfort in knowing that you are
20   now a convicted felon.  I take some comfort in knowing
21   that you will be placed on probation and that you could
22   go to jail for what you did to me and to another victim.
23   But I take great comfort in knowing that you will no
24   longer be able to walk the streets as a police officer
25   and that you will never again be in a position to do

```
 1    what you did to me to anybody else.
 2              But remember this, whatever discomfort you
 3    experience by no longer being able to call yourself a
 4    police officer is nothing compared to what I have lost.
 5    I didn't deserve what you did to me, but now I have to
 6    live with the consequences of your actions for the rest
 7    of my life.
 8              I'd like to thank Deputy Attorney Brian and
 9    the detectives from the Attorney General Office of
10    Public Integrity and Accountability for all of their
11    fine work investigating this case and pursuing justice
12    for me and for the other victim that Joseph Dixon
13    assaulted before he was brought to justice.
14              I would ask this Court to also do justice and
15    to impose the maximum sentence on Joseph Dixon.  Thank
16    you.
17              THE COURT:  Thank you, ma'am.
18              MR. UZDAVINIS:  Thank you, Your Honor.  I had
19    a few more things to say, but at this point I'll just
20    move for sentencing.
21              THE COURT:  Thank you.  This comes before the
22    Court for sentencing and also on a motion that has been
23    filed on behalf of the Defendant.  I'm gonna deal with
24    the motion first and it's kind of all jumbled together
25    and I say that in all seriousness because the victims
```

                          Court Decision                          17

```
 1    are clearly upset.  They've sustained injuries.  No
 2    matter what sentence the Court imposes, it will not be
 3    sufficient for them.  It never is.  And for the
 4    Defendant any sentence that I impose, it's gonna be more
 5    than he would expected to have obtained as a result of
 6    it.
 7              And I understand.  It is a plea that comes
 8    before the Court for sentencing, but I'm gonna deal with
 9    the issue of the -- the civil reservation.  Rule 3:9-2
10    does provide specifically that for good cause shown the
11    Court may, in accepting a plea of guilty, order that
12    such plea not be evidential in any civil proceeding.
13              I understand that the civil matter is
14    proceeding in the usual course of litigation.  It's in
15    the Federal District Court at this point in time.
16    They're gonna be obliged to follow the rules in New
17    Jersey, if you will, or whatever federal precedent they
18    need to follow in that case.  I'm not so certain if I
19    enter a civil reservation in Superior Court in
20    Cumberland County in the Criminal Division whether or
21    not the United States District Court is actually going
22    to follow that.  They're gonna be bound by it in some
23    fashion.
24              But good cause standard is actually a minimal
25    standard.  The problem with that is Counsel in both have
```

```
 1    noted in their brief is that it used to be -- it used to
 2    be like a much tougher standard, so some of the newer
 3    case law and McIntyre is the case that the Defendant
 4    relies upon makes it a little bit easier.
 5              And I frankly, I don't believe whether or not
 6    I grant a civil reservation or not, if that's gonna
 7    change the end result of any type of civil litigation at
 8    the end of the day.  He came forward, he had a Hobson's
 9    choice, just as McIntyre did in State v. McIntyre, so he
10    was facing the very real potential of being indicted on
11    a second degree official misconduct and a pattern of
12    official misconduct.
13              As Counsel indicated, it's a very tough
14    statute.  It's extraordinarily difficult for those that
15    are charged with it because you face a mandatory minimum
16    of five years in State prison without parole and on a
17    pattern of official misconduct if you get prosecuted and
18    convicted of that in addition to the official misconduct
19    counts, it has to run consecutive.
20              So there is a very real possibility that he
21    faced ten years without parole.  That doesn't do any
22    good to a victim who's looking to receive monetary
23    compensation and to deal with a state prison inmate to
24    continue on with that litigation.  That's neither here
25    nor there, but that doesn't help matters either.
```

Court Decision                                               19

```
 1              So but he was forced with a Hobson's choice.
 2    He can either go try his case, take his chances, maybe
 3    be adjudicated not guilty so he didn't have to worry
 4    about the civil litigation or he can come into court, he
 5    can plead guilty to a third degree aggravated assault,
 6    which is what he did.  He admitted to his responsibility
 7    on those two counts.  His attorney was very careful as
 8    to how that language was worded so as to attempt to
 9    assure -- because he was worried about financial and the
10    disastrous financial ruin that could occur.
11              You can't get blood from a stone though,
12    Counsel, so he -- his plea was put through on a very
13    purposeful level by his attorney.  So the plea colloquy
14    that was entered was very specific to ensure that
15    whatever insurance coverage would be available for the
16    victims, that he didn't take it out of coverage by the
17    municipal JIF or whoever it is.
18              And I know that because he was very specific
19    and the plea colloquy did take awhile because he wanted
20    to make certain that everything was protected.  He tried
21    to protect him the best he can.  He wanted to have the
22    civil reservation, but the plea couldn't be entered with
23    that.  So he tried to do the best that he can in order
24    to protect him, but his choice -- he didn't really have
25    a choice.
```

```
 1                  So he either takes a plea on a third degree
 2    with a potential for county jail time and a probationary
 3    term or he takes his chances and ultimately face a very
 4    significant period of time in state prison all because
 5    of this financial issue.  And that's really not a choice
 6    for any defendant, just as in McIntyre.
 7                  He -- the litigation was pending obviously at
 8    the time that this or the threat of litigation was
 9    certainly pending at the time that the plea was entered,
10    but I'm satisfied -- the case law, by the way, has
11    defined two examples of what constitutes good cause.
12    Good cause.  First, good cause exists where no civil use
13    agreement when such an agreement is necessary to remove
14    an obstacle to a defendant pleading guilty to a criminal
15    charge.  That didn't happen here and I think Counsel is
16    right and that's State v. Holloway.
17                  So he -- he was gonna plead guilty.  He had
18    to, but he didn't really have a choice.  So it didn't
19    remove an obstacle.  He still pled guilty to it.
20                  Second, good cause may be shown by a grant of
21    reservation where the civil consequence of a plea may
22    wreak devastating financial havoc on a defendant.
23    That's a possibility right now, but it's not a
24    probability because there is insurance coverage.  And
25    although, I know we all pay for the cost of insurance,
```

                          Court Decision                       21

```
 1    if you will, but right now personally he doesn't face
 2    that financial impact.
 3                  So at this point in time I'm gonna deny the
 4    request for a civil reservation.  I don't know what a
 5    Federal District Court judge would do with that in any
 6    event.  He's going to apply the rules of evidence that
 7    the way they need to apply it.  I'm pretty certain that
 8    Mr. Dixon is not happy with my decision, but I'm gonna
 9    deny the request for a civil reservation without
10    predjudice at this point.
11                  That civil litigation can continue to go
12    forward.  That's probably the only thing that will make
13    the victims -- it will never make them whole, but that's
14    the only remedy that they have at this point in time and
15    I'm not gonna put any of this as a -- as an impediment
16    in their way right now.
17                  So I'm gonna deny it without prejudice.  If
18    for some reason something bad happens and they deny
19    coverage, Mr. Shapiro, who's here in the courtroom, now
20    represents at least one of the victims, I'm certain will
21    let somebody know and Counsel will know.  You can always
22    -- the great thing about being in the Criminal Division
23    or the worst thing is you can always come back in
24    anytime you want to.
25                  The rules provide with a certain period of
```

1  time.  The rules are bent historically on almost every
2  rule.  File it.  So if it does become an issue in the
3  future, Counsel, with regard to that potential, then
4  we'll do it.  But I'm pretty sure that the civil action
5  is gonna proceed in a fashion wherein the victims are
6  going to be protected so that there is adequate coverage
7  to ensure that they can be made as whole as possible for
8  whatever injuries may have been sustained as a result of
9  the actions of Mr. Dixon.
10              With regard to the -- now, moving forward to
11 the sentencing.  This is before the Court for sentencing
12 pursuant to a plea that was negotiated between the State
13 and the Defendant.  The Defendant previously pled guilty
14 on November 20th, 2019 to Count One of the Indictment
15 which alleged aggravated assault in the third degree as
16 to Count One and Count Two, I'm sorry, was an
17 accusation.  And Count Two of the Accusation also a
18 third degree aggravated assault.
19              I have reviewed the presentence report.  I am
20 going to make the following findings with regard to both
21 the aggravating and the mitigating factors as I am
22 required to do statutorily.
23              Aggravating Factor Nine is the only
24 aggravating factor that the Court can impose at this
25 time.  That is the need to deter the Defendant and

Sentence                                              23

1  others from violating the law and I can't put very much
2  weight on it.  I'll give it moderate weight, but it's
3  the need for general deterrence as opposed to specific
4  deterrence, so the Appellate Courts have told us we
5  can't put much weight on that, but nevertheless it is
6  something that I have that I will consider.
7               The following mitigating factors, the
8  Defendant has argued in his submissions to the Court is
9  Mitigating Factor Number 2, Mitigating Factor Number 4,
10 and Mitigating Factor Number 5, and Mitigating Factor
11 Number 6.  There's no support in the record for any of
12 those, with the exception of perhaps Mitigating Factor
13 4.
14              To the extent that there was an allegation
15 that there may have been a brief resisting charge as to
16 each one.  I'm not gonna make that decision, but it's
17 really -- it's part of the allegations that are in the
18 presentence report, if you will.  So to the extent that
19 there -- there was some type of an excuse that could --
20 that could be -- that substantial grounds to excuse the
21 conduct, it doesn't establish a defense here clearly.
22 So I'm gonna give Mitigating Factor Four some slight
23 weight.
24              However, the Court will find the following
25 mitigating factors.  Mitigating Factor Seven is

```
 1    applicable.  That is that the Defendant has no history
 2    of prior delinquency or criminal activity or has led a
 3    law abiding life for a substantial period of time before
 4    the commission of the present offense.  I will give that
 5    substantial weight.
 6            Mitigating Factor Eight is applicable.  The
 7    Defendant's conduct was the result of circumstances
 8    unlikely to recur.  I -- I make that assessment because.
 9    one, is he's no longer a police officer.  He won't have
10    that opportunity.  And two, his character in the
11    character letters it looks like he -- I don't believe
12    the circumstances are likely to recur.  I'll give that
13    moderate weight.
14            Mitigating Factor Nine is applicable.  The
15    character and attitude of the Defendant indicates that
16    he is unlikely to commit another offense.  I give that
17    moderate weight.  Again, he has no prior crimes.  He
18    pled guilty.  He came into court.  He admitted his guilt
19    with regard to the two charges, thus saving the victims
20    and the Court from the uncertainties of a trial.
21            Mitigating Factor Ten is his amenability to
22    probationary treatment.  It is his first indictable
23    conviction.  And but for the cons -- the seriousness of
24    the offenses, it appears that he's going to be amenable
25    to probationary treatment.  I give that moderate weight.
```

                                Sentence                      25

```
 1            Mitigating Factor 12, although that's usually
 2    reserved in the cases where there's cooperation with law
 3    enforcement, that doesn't involve this particular case.
 4    But nevertheless, he did accept responsibility for his
 5    actions.  He's come into court, so to that end, again,
 6    I'll give that some moderate weight.
 7            The victims are assured now that he is a
 8    convicted felon, as Audra had indicated on the record
 9    and she can have some solace in knowing that.  With the
10    uncertainties of trial, you never know what a jury is
11    gonna do.
12            So it was a negotiated plea.  It's between the
13    State and the Defendant.  It's entitled to a presumption
14    of reasonableness and by and large it appears to be
15    appropriate under the facts and circumstances of the
16    case and in the interest of justice, I'm going to impose
17    the recommended sentence.
18            The mitigating factors, however, do
19    preponderate and outweigh the aggravating factors when I
20    weigh them qualitatively.  And that's not to say that
21    the injuries that the victim sustained were minor by any
22    stretch of the imagination.  It's this is the risk
23    assessment of -- that pertains specifically to the
24    Defendant and the aggravating and mitigating factors
25    that I'm required to weigh qualitatively.
```

Sentence

```
 1              There is no presumption for incarceration for
 2    third degree crimes.  This is his first indictable level
 3    conviction.  The plea recommends probation with county
 4    jail time.  I do find it to be a reasonable disposition
 5    of the charge with the following exceptions and I'm
 6    going to impose the following sentence.
 7              On Count One of Accusation 19-11-1113, the
 8    Defendant is hereby committed to the custody of the
 9    Cumberland County jail for 364 days.  That's conditioned
10    upon serving a period of probation of two years.
11              The Court hereby suspends imposition of the
12    county jail term for 364 days.  Probation is going to
13    monitor and report compliance and report any violation
14    to the Attorney General's Office.  The sentence --
15    suspended sentence will be triggered by a violation of
16    probation.
17              The Defendant is to provide a DNA sample to
18    law enforcement in accordance with the statute.
19              There's no credit for time served.
20              He'll be assessed a $50.00 VCCB penalty.
21              $30.00 law enforcement penalty.
22              $75.00 Safe Street Assessment.
23              There will be a $15.00 per month probation
24    supervision fee.
25              On Count Two of Accusation 19-11-1113, he is
```

Sentence                                                     27

```
 1    also committed into the Cumberland County jail for 364
 2    days conditioned upon serving a period of probation of
 3    two years.  That will run concurrent to Count One.
 4              The Court suspends imposition of the county
 5    jail sentence for 364 days and again, probation will
 6    monitor compliance and report any violations to the
 7    Attorney General's Office.  The suspended sentence will
 8    be triggered by a probation violation.
 9              There will be another $50.00 VCCB penalty.
10              A $75.00 Safe Street Assessment.
11              There's a forfeiture of the Defendant's public
12    employment. Any monetary obligations under the terms of
13    this particular sentence will be payable at $20.00 per
14    month on the penalties.  The first payment will be due
15    -- it will be payable through probation.  The first
16    payment is gonna be due within 30 days of today's date.
17              So just so that you know, sir, what I did was
18    I denied the civil reservation.  You're not happy, the
19    victims are happy.  I sentenced you in accordance with
20    the terms of the plea agreement, except I suspended the
21    imposition of the jail time.  What that means is that it
22    -- you don't go to jail right now.  If you violate and
23    do not comply with probation from here until the 364
24    days up, you're gonna get picked up and you'll be sent
25    to the county to finish out the jail time.
```

```
 1              The important thing that you need to know is
 2     that you need to be good for the period of probation.
 3     If you violate the terms and conditions of your
 4     probation, it is a third degree crime.  The next time
 5     around, it is not a jury trial right.  It is a hearing
 6     right.  It is a preponderance standard, not beyond a
 7     reasonable doubt and if you -- and if the Court
 8     ultimately -- if you violate your probation and the
 9     Court ultimately finds that you were wilfully violated a
10     significant and substantial term of your probationary
11     treatment, you are resentenced.
12              It is a third degree crime.  You've already
13     been sentenced to the maximum on a -- on a 364 day.  The
14     next step up is state prison.  You face three to five
15     years in state prison if you violate your probation, so
16     please keep that in mind.
17              You will have a period of 45 days to file an
18     appeal of the conviction or of the sentence that was
19     just imposed.  You have an extra 45 days if you need
20     that.  You have five years to file what is called a
21     petition for post-conviction relief.  That would be a --
22     a constitutional type of violation.
23              There are exceptions that are applicable if
24     you don't file it within the five years, however, if you
25     miss any of those filing times, including any
```

                            Sentence                         29

```
 1     extensions, you might be out of luck.  If you can not
 2     afford a lawyer for any of that, the Court can appoint
 3     one for you.
 4              You're about to -- did he sign it already?
 5              MR. BUTCHKO:  He did.
 6              THE COURT:  The appeal rights form?  You
 7     signed a form?
 8              MR. BUTCHKO:  I reviewed it with him and he
 9     signed it.  Yes.
10              THE COURT:  Thank you.  You can hand that to
11     my officer.  Thank you.  So you put your signature on
12     this, sir.  You understand what those rights are?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And your attorney reviewed that
15     with you; correct?
16              THE DEFENDANT:  Yes.
17              THE COURT:  And you signed that form
18     voluntarily?
19              THE DEFENDANT:  Yes.
20              THE COURT:  Okay.  I'm satisfied there is a
21     knowing, voluntary, and intelligent placement by the
22     Defendant of his signature on his appeal rights form.
23     He understands those rights.  He understands the time
24     parameters.  He's been well represented.
25              Sir, you're gonna take the papers that you
```

EXHIBIT F--Dixon Motion (Capps v. Millville, et als.)

```
 1   get.  You're gonna take the elevator to the lower level.
 2   They're gonna -- you're gonna -- there's only two things
 3   down there besides maintenance and that will be finance
 4   or probation.
 5              You're gonna set the terms and conditions up
 6   of your probationary treatment and again, if you violate
 7   your probation you'll be back in front of me or one of
 8   my colleagues.  Okay.  Anything further, Counsel?  No?
 9   Okay.
10              MR. UZDAVINIS:  Your Honor, if I could just
11   note for the record, you may want to consider noting on
12   the JOC that these convictions do subject Defendant to
13   the certain person statute so he can no longer possess
14   any firearms.  The State's understanding based on Mr.
15   Butchko's representations is that he's already disposed
16   of any guns that he owns and he also today turned over
17   his firearms purchaser's ID card to us.
18              THE COURT:  Okay.  So there's a forfeiture
19   because it's a certain person conviction now, so what
20   that means in plain language is you can't have a firearm
21   purchase.  You can't even have a gun in the house.  It's
22   not unlegal -- un -- it's not unlawful to have a gun in
23   your house without a card except if you're a certain
24   person in New Jersey.  Because of this conviction,
25   you're a certain person.  You can not be around a
```

                                Colloquy                           31

```
 1   firearm at all.
 2              That is a significant offense, by the way.
 3   Just like official misconduct.  It's a mandatory five
 4   years in state prison, five years without parole if you
 5   are convicted of that offense.  Okay.  Thank you,
 6   Counsel, for reminding me of that.
 7              MR. BUTCHKO:  Thank you, Your Honor.
 8              MR. UZDAVINIS:  Thank you, Your Honor.
 9              THE COURT:  All right.  Good luck to you.
10   Counsel, you want the Defendant to head downstairs and
11   then the victims can make their way out first.  It's up
12   to you.
13              MR. BUTCHKO:  That's fine.
14              THE COURT:  Whatever you want to do.
15              UNIDENTIFIED SPEAKER:  Thank you very much.
16              THE COURT:  Okay.  I'm gonna have him go
17   because Counsel has got to get out of here.  He can go
18   out to the elevator, head down to probation, and then
19   the victims can follow after.
20
21        (Whereupon Proceeding Concluded at 12:44:08 p.m.)
22                         - - - - -
23
24
25
```

```
 1                         CERTIFICATION
 2
 3
 4        I, SARAH D'AGOSTINO, CTR, the assigned transcriber,
 5   do hereby certify the forgoing transcript of proceedings
 6   on January 17th, 2020, CourtSmart, 2020-01-17, Index
 7   12:05:49 to 12:44:08, Cumberland County Superior Court,
 8   is prepared in full compliance with the current
 9   Transcript Format for Judicial Proceedings and is a true
10   and accurate compressed transcript of the proceedings as
11   recorded.
12
13
14
15
16
17
18        SARAH D'AGOSTINO
19   /S/ SARAH D'AGOSTINO, AOC# 696
20
21
22   THE TYPE-RIGHT-ER               DATE: 1/27/20
23
24
25
```