**LOUIS CHARLES SHAPIRO, P.A.**
By:    Louis Charles Shapiro, Esquire (New Jersey Bar I.D. No. 028201997)
1063 E. Landis Avenue
Vineland, New Jersey 08360
(856) 691-6800; Fax No. (856) 794-3326
Email: shap1@prodigy.net
Attorney for Plaintiffs, Audra S. Capps, Douglas
Robert Gibson, Jr., and Tanika Joyce

| | | |
|---|---|---|
| AUDRA S. CAPPS, et al, | : | |
| | : | UNITED STATES DISTRICT COURT |
| Plaintiffs, | : | FOR THE DISTRICT OF NEW JERSEY |
| | : | CAMDEN VICINAGE |
| vs. | : | |
| | : | CIVIL ACTION |
| JOSEPH DIXON, et al., | : | |
| | : | |
| Defendants. | : | Civil Action No.: 1:19-cv-12002--RMB-AMD |
| | : | |
| TANIKA JOYCE, | : | |
| | : | UNITED STATES DISTRICT COURT |
| Plaintiff, | : | FOR THE DISTRICT OF NEW JERSEY |
| | : | CAMDEN VICINAGE |
| vs. | : | |
| | : | CIVIL ACTION |
| JOSEPH DIXON, et al., | : | |
| | : | |
| Defendants. | : | Civil Action No.: 1:20-cv-01118-RMB-AMD |
| | : | |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, AND/OR FOR SUMMARY JUDGMENT

---

Louis Charles Shapiro, Esquire
I.D. No. 028201997
LOUIS CHARLES SHAPIRO, P.A.
1063 E. Landis Avenue
Vineland, New Jersey 08360
(856) 691-6800

On the Brief (Of Counsel):
Louis Charles Shapiro, Esquire

Attorney for Plaintiffs, Audra S. Capps, Douglas
Robert Gibson, Jr., and Tanika Joyce

## TABLE OF CONTENTS

I.   PROCEDURAL BACKGROUND ....................................................... 1

II.  FACTUAL BACKGROUND ............................................................ 4

A. The MPD's Own Written Policy Laid the Groundwork
   For Deliberate Indifference as to the Use of Excessive Force ......................... 4

B. Dixon Demonstrates Dangerous Behavior Early On In His MPD Career............ 8

C. Defendants Were Aware At Least As Early As 2016 That Dixon
   Was Showing a Pattern ....................................................................... 10

D. Chief Farabella Acknowledges His Own Authority and
   Responsibilities For The Running of the MPD and Internal Affairs .................12

E. The Supervisory Defendants Continue To
   Avoid Looking Into Use of Force Incidents in MVR Reviews .........................14

F. Dixon Assaults Barry Cottman, a Jaywalking Suspect, in June of 2017 ............. 19

G. Dixon Uses Excessive Force Against Audra Capps .................................... 21

H. Dixon and Orndorf Violated Capps's Constitutional
   Rights and State and Department Directives ............................................. 23

I. Dixon Also Did Not Follow Police Academy Training ................................ 26

J. Defendants Dixon and Orndorf Failed to
   Attend to Plaintiff Capps's Medical Needs ............................................... 28

K. Capps Sustained Multiple Broken Rib
   Fractures and Underwent Two Surgeries .................................................. 32

L. One Month After Assaulting Audra
   Capps, Dixon Assaults Tanika Joyce ..................................................... 34

M. NJ.com Discovers Large Numbers of Use of
   Force Incidents By the MPD and By Dixon .............................................. 35

N. MPD Officers Talk to OPIA In Connection With
   The OPIA's Criminal Investigation of Dixon ............................................. 38

O. Dixon Pleads Guilty to Assaulting Plaintiffs Capps and Joyce ....................... 43

P.  MPD's Internal Affairs Unit Sustained Investigations
Against MPD Officer For Some Types of Violations,
But Not When Excessive Use of Force Was Alleged ................................. 45

Q.  Defendants Did Not Make Policy Changes Until it Was Too Late .................. 47

III.  LEGAL ARGUMENT ...................................................................... 50

A.  Defendant Joseph Dixon's Motions to Dismiss, For Judgment on the
Pleadings, and Alternatively For Summary Judgment As To Plaintiff
Audra Capps (1:19-cv-12002-RMB-AMD, ECF Doc. 64) And As to
Plaintiff Tanika Joyce (1:20-cv-01118-RMB-AMD, ECF Doc. 52) ................. 50

1.  The Standards of Review ....................................................... 50

2.  Dixon Is Not Entitled to Qualified Immunity ................................. 53

a.  Dixon Violated Plaintiffs' Clearly Established Rights ................... 53

b.  Dixon Ignores the "Heck Doctrine" ...................................... 60

c.  Dixon Misapplies Cases Involving a
Criminal Defendant's Assertion of Self-Defense ......................... 63

d.  Dixon Does Not Assist His Case By Trying to
Reimagine the Reality of His Criminal Convictions ..................... 64

e.  Dixon's Actions Were Not Reasonable Under the Circumstances ..... 70

B.  Defendant Bryan Orndorf's Motion to Dismiss As to Plaintiff Audra
Capps (1:19-cv-12002-RMB-AMD, ECF Doc. 62) .................................... 77

1.  Orndorf Is Not Entitled to Dismissal On Capps's
Excessive Force Claim ......................................................... 77

2.  Orndorf Is Not Entitled to Dismissal on Capps's Failure to
Intervene Claim .................................................................79
3.  Orndorf's Disclaiming of Liability Based on an Attempt to
Undermine Dixon's Guilty Pleas is Without Merit ........................... 81

4.  Orndorf Was Deliberately Indifferent to Capps's Medical Needs .......... 83

5.  Orndorf Further Misinterprets the Second Amended Complaint ............87

6.  Orndorf Misinterprets the Law .................................................89

7.  Orndorf Is Not Entitled to Dismissal of Plaintiff's State Law Claims .... 92

C.  The Supervisory Defendants' Motions to Dismiss As to Plaintiff Audra
    Capps (1:19-cv-12002-RMB-AMD, ECF Doc. 61) And As To Plaintiff
    Tanika Joyce (1:20-cv-01118-RMB-AMD, ECF Doc. 51) ......................... 95

    1.  The Iqbal Dicta ...........................................................................95

    2.  The Supervisory Defendants Are Not Entitled to Qualified
        Immunity Based on a Theory That There Was No Underlying
        Constitutional Violation ..........................................................99

    3.  Supervisory Liability Is Not As Limited as the
        Supervisory Defendants Contend ..............................................105

    4.  The Supervisory Defendants Criticize The
        State of the Law Under Section 1983 ......................................  108

    5.  The Supervisory Defendants' Concept of "Personal Involvement"
        For Purposes of Imposing Supervisory Liability Is Too Narrow ......... 109

    6.  The Supervisory Defendants' Position That Supervisory Liability
        Applies Only in an Eighth Amendment Context is Incorrect .............. 113

    7.  The Supervisory Defendants' Call For a
        Reexamination Third Circuit Law is Misplaced ........................... 115

    8.  Not All Supervisory Defendants Are
        Required to be "Policymakers." .............................................. 117

    9.  Other Courts Have Declined to Adopt the Interpretation of Iqbal
        Being Pressed By the Supervisory Defendants ............................. 120

    10. While Most of the Supervisory Defendants Need
        Not Be Deemed to Be "Policymakers" To Incur Liability,
        Chief Farabella Does Fall Under That Category ........................... 128

D.  Defendant City of Millville's Motions to Dismiss the Monell Claims
    of Plaintiff Audra Capps (1:19-cv-12002-RMB-AMD, ECF Doc. 63),
    And As To Plaintiff Tanika Joyce (1:20-cv-01118-RMB-AMD,
    ECF Doc. 50) ..............................................................................131

    1.  The City Is Not Entitled To Dismissal of Plaintiffs' Monell Claims ......131

    2.  In Carpenter v. Chard, Municipal Liability Claims Against

The City of Millville Survived Summary Judgment ........................136

3. Plaintiffs' Monell Claims Are Not Limited to "Custom or Practice." ...................................................................140

4. The Zampetis Saga ............................................................ 144

IV.   CONCLUSION ......................................................................... 147

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                    <u>Pages</u>

Abdullahi v. City of Madison, 423 F.3d 763 (7th Cir. 2005) ………………………………….. 91

Abraham v. Raso, 183 F.3d 279, 290-91 (3d Cir. 1999) ……………………………………77, 101

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199 (3d Cir. 2009) …………………53

Adedeji v. Hoder, 935 F. Supp.2d 557 (E.D.N.Y. 2013) ……………………………………… 58

Adelman v. Jacobs, No. 18-607, 2019 U.S. Dist. LEXIS 65485 (W.D.Pa. Apr. 17, 2019 ….78, 92

Aldrich v. City of Columbus, 2016 WL 6084570 (S.D. Ohio 2016) …………………………… 58

A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572 (3d Cir. 2004) ……105, 118

Anderson v. Creighton, 483 U.S. 635 (1987) ……………………………………….…..54, 98, 101

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ……………………………………..52, 53

Andison v. Clark Cty., Case No. C14-5492 RBL (W.D.Wash. May 8, 2015) ……………..122, 123

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) ………….118, 119, 129, 137, 140

Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60 (3d Cir. 2011) ….. 106, 107

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) …………………………………………………….54

Ashcroft v. Iqbal, 556 U.S. 662 (2009) …..49, 50, 95, 96, 97, 98, 99, 105, 109, 116, 120, 124, 125, 126, 127, 134

Baker v. Monroe Township, 50 F.3d 1186 (3d Cir.1995) ……….107, 113, 114, 118, 124, 125, 127

Barkes v. First Corr. Med., Inc., 766 F.3d 307 (3d Cir. 2014) ……………………… 98, 105, 127

Bass v. Robinson, 167 F.3d 1041(6th Cir. 1999) …………………………………………….110

Bayer v. Monroe, 577 F.3d 186 (3d Cir. 2009) ……………………………………………126

Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) …………………..119, 129, 131, 137, 145

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) …………………………………..50, 134

Berg v. Cnty. of Allegheny, 219 F.3d 261 (3d Cir. 2000) ...............................................131

Bielevicz v. Dubinon , 915 F.2d 845 (3d Cir. 1990) ..................................119, 129, 131, 145

Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012) ...........................................................50

Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) .......................96, 97, 98, 106

Bland v. City of Newark, 900 F.3d 77 (3d Cir. 2018) ..................................................103

Board of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown, 520 U.S. 397 (1997) ....128, 131, 138, 144

Borrello v. Elizabeth Bd. of Educ., Civil Action No. 14-3687, 2014 WL 3548827 (D.N.J. July 17, 2014) ...............................................................................................................107

Brayshaw v. Gelber, 232 N.J. Super. 99, 110 (App. Div. 1989) .......................................95

Brickell v. Clinton Cnty. Prison Bd., 658 F. Supp.2d 621, 625–26 (M.D.Pa. 2009) ..............126

Brosseau v. Haugen, 543 U.S. 194 (2004) ...............................................................54

Brown v. Long Beach Police Dept., No. 03-60902 (5th Cir. 2004).............................103-104

Brown v. Makofka, 644 Fed. App'x 139 (3d Cir. 2016) .........................................89-90

Brown v. Muhlenberg Township, 269 F.3d 205 (3d Cir.2001) .....................107, 116, 119, 123

Burns v. County of Cambria, 971 F.2d 1015 (3d Cir. 1992) .........................................102

Camilo-Robles v. Hoyos, 151 F.3d 1 (1998) .......................................................112, 122

Campbell v. Gibb, No. 10-6584, 2012 WL 603204 (D.N.J. Feb. 21, 2012) ......120, 121, 125, 126

Carpenter, et al. v. Chard, et al., Case No. 1:18-cv-10959-JHR-KMW (D.N.J. Sept. 30, 2020) ...........................................................................................................136-140

Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999) .......................................123

Castellani v. City of Atlantic City, Civil Action No. 1:13-cv-05848-JBS-AMD (D.N.J. July 21, 2017) ................................................................................56, 78, 79, 106

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................53

C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198 (3d Cir. 2000) ................................................118

Champion v. Outlook Nashville, Inc., 380 F.3d 893 (6th Cir. 2004) ............................56, 91

Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210 (3d Cir. 2015) ...............................118, 128

City of Canton v. Harris, 489 U.S. 378 (1989) ..........................122, 128, 131, 138. 142, 143

City of Escondido v. Emmons, 139 S.Ct. 500 (2019) .............................................54, 55

City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985) ...............................................112

Cordial v. Atlantic City, Civil No. 1:11-cv-01457-RMB-AMD (D.N.J. June 2, 2014) ......120-121

Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988) ...................................84, 126

Coley v. Lucas Cty., 799 F.3d 530 (6th Cir. 2015) ...................................................112

Connick v. Thompson, 131 S.Ct. 1350 (2011) ........................................................145

Crawford-El v. Britton, 523 U.S. 574 (1998) ...........................................................57

Davis v. Clifford, 825 F.3d 1131 (10th Cir. 2016) ......................................................57

Davis v. Egg Harbor Twp., Civil No. 14-4213 (D.N.J. June 5, 2017) ...............61, 62, 100, 104

Dare v. Twp. of Hamilton, 2013 U.S. Dist. LEXIS 164129 (D.N.J. Nov. 18, 2013) ...107, 108, 109

Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001) ..................................................55

Deville v. Marcantel, 567 F.3d 156 (5th Cir. 2009) ...................................................103

Diaz v. Diaz Martinez, 112 F.3d 1, 4 (1st Cir. 1997) ...........................................112, 122

Dinote v. Danberg, No. 14-3158 (3d Cir. Feb. 4, 2015) ...............................................127

Dique v. New Jersey State Police, 603 F.3d 181 (3d Cir. 2010) ......................................61

District of Columbia v. Wesby, 138 S.Ct. 577 (2018) ..................................................55

Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003) ...............91

Duran v. Warner, 2013 U.S. Dist. LEXIS 117462, Civil No. 07-5994 (JBS/AMD) (D.N.J. Aug. 20, 2013) ........................................................................................115

Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) ...............................................116, 117

Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87 (1st Cir.1994) .........................112, 122

Figueroa v. Camden, No. 09-4343, 2012 WL 3756974 (D.N.J. Aug. 28, 2012) ............121, 122

Flood v. Schaefer, 367 F. App'x 315 (3d Cir. 2010) ...............................................62

Garrison v. Porch, 376 Fed. App'x. 274 (3d Cir. 2010) ............................................60

Germany v. Vance, 868 F.2d 9 (1st Cir.1989) ......................................................109

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety Division of State Police, 411 F.3d 427 (3d Cir. 2005) ...................................................................................61

Goodwin v. City of Painesville, 781 F.3d 314 (6th Cir. 2015) ......................................57

Gravelet-Blondin v. Shelton, 728 F.3d 1086 (9th Cir. 2013) ........................................54

Graham v. Connor, 490 U.S. 386 (1989) ...........................................54, 70, 88, 90, 103

Gutierrez-Rodriguez v. Cartagena, 882 F.2d 559 (1st Cir. 1989) ...................................112

Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014) ....................................................127

Hanks v. Rogers, 853 F.3d 738 (5th Cir. 2017) ...............................................56, 103

Hansell v. City of Atlantic City, 152 F. Supp.2d 589 (D.N.J. 2001) ...............................141

Harewood v. Brathwaite, 64 F. Supp.3d 384 (E.D.N.Y. 2014) ......................................58

Harlow v. Fitzgerald, 457 U.S. 800 (1982) .....................................................53, 98

Hayes v. County of Mercer, 217 N.J. Super. 614 (App. Div. 1987) ..............................94, 95

Heck v. Humphrey, 512 U.S. 477 (1994) ........................................................61, 62

Hegarty v. Somerset County, 53 F.3d 1367 (1st Cir.1995) ..........................................109

Helling v. McKinney, 509 U.S. 25 (1993) ...........................................................84

Hicks v. Camden Cty., 2017 U.S. Dist. LEXIS 1891, Civil Action No. 16-3436 (JBS/JS) (D.N.J. Jan. 6, 2017)................................................................................108

Hill v. Algor, 85 F. Supp. 2d 391 (D.N.J. 2000) ......................................................100

Holmes v. Cushner, Civil Action No. 10-5384 (D.N.J. Dec. 19, 2012) ..............................60

Hope v. Pelzer, 536 U.S. 730 (2002) ...................................................................54

Horton v. City of Harrisburg, Civil Action No. 1:06-cv-2338 (M.D.Pa. July 23, 2009)...123, 124

In re IKON Office Solutions, Inc., 277 F.3d 658 (3d Cir. 2002) ....................................127

Ingram v. County of Camden, Civil No. 14-5519 (JBS-KMW), slip op. (D.N.J. Mar. 29, 2019) ................................................................................................84

Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289 (3d Cir. 1988) ............................52

Jacobs v. Cumberland Cty., Civil Action No. 1:16-cv-01523-JHR-AMD (D.N.J. May 31, 2019)..................................................................................... 2, 79, 105

Jackson v. Danberg, 594 F.3d 210 (3d Cir. 2010) ......................................................53

Jackson v. Tellado, 236 F. Supp.3d 636 (E.D.N.Y. 2017) ..............................................57

Jankowski v. Lellock, 649 F. App'x 184 (3d Cir. 2016) ................................................120

Jones v. Pi Kappa Alpha Int'l Fraternity, Inc., 765 F. App'x 802 (3d Cir. 2019) .................105

Kentucky v. Graham, 473 U.S. 159 (1985) ..............................................................137

Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004) ...............................................70, 101, 102

Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009) ...................................59, 100

Leatherman v. Tarrant Cty. Narcotics and Coord. Unit, 507 U.S. 163 (1993) .....................99

Leibner v. Borough of Red Bank Police Dept., Civil Action No. 12-4104 (FLW), 2013 U.S. Dist. LEXIS 33713 (D.N.J. Mar. 12, 2013) .................................................................88

Liberty and Prosperity 1776, Inc. v. Corzine, 720 F. Supp.2d 622 (D.N.J. 2010) ...............125

Lora Pena v. F.B.I., 529 F.3d 503, 505-506 (3d Cir. 2008) ……………………………………62

Losch v. Parkesburg, 736 F.2d 903 (3d Cir. 1984) …………………………………………..138

Lustig v. Mondeau, 211 Fed. App'x. 364 (6th Cir. 2006) ………………………………………58

Major Tours, Inc. v. Colorel, Civ. Action No. 1:05-cv-03091-JBS-JS (D.N.J. June 29, 2011) ..125

Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir.1994) ………………112, 113, 122

Malley v. Briggs, 475 U.S. 335 (1986) …………………………………………………………54

Mantz v. Chain, 239 F. Supp. 2d 486 (D.N.J. Dec. 30, 2002) …………………………………100

Martin v. Wilks, 490 U.S. 755 (1989) …………………………………………………………52

Martinez Correa v. Lopez Feliciano, 759 F.Supp. 947 (D.P.R. 1991) …………………………112

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ………………………53

Mayer v. Belichick, 605 F.3d 223 (3d Cir. 2010) ………………………………………………51

McCue v. City of Bangor, Maine, 838 F.3d 55 (1st Cir. 2016) ……………………………91, 92

McCracken v. Fulton Cty., 2020 U.S. Dist. LEXIS 92956, Civil Action No. 3:19-cv-1063 (M.D.Pa.

May 28, 2020) ……………………………………………………………………………………108

McDonald-Witherspoon v. City of Philadelphia, Civil Action No. 17-1914 (E.D.Pa. Aug 23,

2018)………………………………………………………………………………………………116

McDowell v. Sheerer, 374 Fed. App'x 288 (3d Cir. 2010) ……………………………………..79

McQueen v. Beecher Cmty. Sch., 433 F.3d 460 (6th Cir. 2006) ………………………………110

McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009) …………………………………137

M.D. v. Smith, 504 F. Supp.2d 1238 (M.D. Ala. 2007) …………………………………………93

Meredith v. Erath, 342 F.3d 1057 (9th Cir. 2003) ……………………………………………..58

Meyer v. Riegel Prods. Corp., 720 F.2d 303 (3d Cir. 1983) …………………………………52

Mikulec v. Town of Cheektowaga. 909 F. Supp.2d 214 (W.D.N.Y. 2012) ………………………93

Mitchell v. Forsyth, 472 U.S. 511 (1985) ................................................................51

Monell v. Department of Social Serv. of the City of New York, 436 U.S. 658 (1978) ................................................................................................3, 109, 131, 137, 142, 146

Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998) .....................................138, 141

Murphy v. Middlesex Cnty., 361 F.Supp.3d 376 (D. N.J. 2019) ...............................117-119

Natale v. Camden Cty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003) ..................................84

Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997) ...................................................60, 62

Newland v. Reehorst, 328 Fed. App'x. 788 (3d Cir. 2009) ...........................................77

O'Hara v. City of New York, 570 Fed. App'x. 21 (2d Cir. 2014) .....................................57

Oklahoma City v. Tuttle, 471 U.S. 808 (1985) .........................................................142

Orsatti v. N.J. State Police, 71 F.3d 480 (3d Cir. 1995) ................................................53

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) ........................51

Owens v. Okure, 488 U.S. 235 (1989) ..................................................................96

Panarello v. Vineland, 160 F. Supp. 3d 734 (D.N.J. 2016) ............................................100

Papasan v. Allain, 478 U.S. 265 (1986) ................................................................50

Parkell v. Danberg, 833 F.3d 313 (3d Cir. 2016) ......................................................118

Pearson v. Callahan, 555 U.S. 223 (2009) ..............................................................53

Pearson v. Prison Health Serv., 850 F.3d 526 (3d Cir. 2017) .........................................84

Peatross v. City of Memphis, 818 F.3d 233 (6th Cir. 2016) ....................................110-112

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) .............................................140, 142

People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139 (3d Cir. 1984) ...102

Person v. Willingboro Twp., No. 02-3808 (RBK), 2005 U.S. Dist. LEXIS 18984 (D.N.J. Aug. 25, 2005) ...................................................................................................89

Phillips v. Roane Cty., 534 F.3d 531 (6th Cir. 2008) ................................................110

Pinder v. Johnson, 54 F.3d 1169 (4th Cir. 1995) ......................................................147

Polk County v. Dodson, 454 U.S. 312 (1981) ..................................................127, 142

Ramirez v. Martinez, 716 F.3d 369 (5th Cir. 2013) ...................................................103

Reedy v. Evanson, 615 F.3d 197 (3d Cir. 2010) .......................................................124

Reichle v. Howards, 132 S.Ct. 2088 (2012) ..............................................................54

Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128 (3d Cir. 2010) .................................52

Ribot v. Camacho, Civil No. 09-5888 (JAP) (D.N.J. June 25, 2012) ..............................70

Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004) ................................................77

Rizzo v. Goode, 423 U.S. 362 (1976) ....................................................................100

Robertson v. Sullivan, 07-CV-1416, 2010 WL 1930658 (E.D.N.Y. 2010) .........................58

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir.1988) ...........................................107, 114

Rosenburg v. Vangelo, 93 Fed. App'x 373 (3d Cir. 2004) ...........................................121

Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999) ..........................................................84

Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989) ...............................115, 116, 121, 123

Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010) ..............118, 124, 126, 137

Scott v. Harris, 550 U.S. 372, 380-381 (2007) ...................................................78, 103

Shammas v. Shammas, 9 N.J. 321, 88 A.2d 204 (1952) .............................................83

Seekamp v. Michaud, 109 F.3d 802 (1st Cir.1997) ...................................................122

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) .........................................................70

Shehee v. Luttrell, 199 F.3d 295 (6th Cir. 1999) .......................................................110

Smith v. Freland, 954 F.2d 343 (6th Cir. 1992) ...................................................52, 103

Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) ..............................................113-114

Smith v. Smith, Civil No. 20-9120 (RBK-AMD) (D.N.J. July 22, 2020) ...................117-118

Society Hill Civic Ass'n v. Harris, 632 F.2d 1045 (3d Cir. 1980) .....................................52

Springfield v. Kibbe, 480 U.S. 257 (1987) ...............................................................143

State v. Koonce, 89 N.J. Super. 169 (App. Div. 1965) ...............................................63

State v. LaResca, 267 N.J.Super. 411 (App.Div.1993) ...............................................69

State v. Moriarty, 133 N.J. Super. 563 (App. Div. 1975) .............................................63

State v. Mulvihill, 105 N.J. Super. 458 (App. Div. 1969) .............................................63

State v. Mulvihill, 57 N.J. 151 (1970) ...............................................................63, 64

State v. Reali, 26 N.J. 222, 139 A.2d 300 (1958) .......................................................83

State v. Slater, 198 N.J. 145 (2009) ...............................................................65, 83

State v. Smullen, 118 N.J. 408, 571 A.2d 1305 (1990) ...............................................83

State v. Taccetta, 200 N.J. 183 (2009) ...................................................................83

State v. Williams, 29 N.J. 27 (1959) ...................................................................100

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir. 1989) .......................115, 118

Suarez v. City of Bayonne, 566 F. App'x 181 (3d Cir. 2014) .......................................62

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) .................................51

Thomas v. Frederick, 766 F. Supp. 540 (W.D.La. 1991) .........................................81, 92

Tennessee v. Garner, 471 U.S. 1 (1985) .............................................................103

Tichenor v. Santillo, 218 N.J. Super. 165 (App. Div. 1987) ...........................................1

Trumpson v. Farina, 218 N.J. 450, 95 A.3d 210, 223 (2014) .........................................92

United States v. Lanier, 520 U.S. 259 (1997) .........................................................104

Voutour v. Vitale, 761 F.2d 812 (1st Cir.1985) .......................................................122

Weigel v. Broad, 544 F.3d 1143, 1152 (10th Cir. 2008) ...............................................91

White v. Pauly, 137 S.Ct. 548 (2017) ……………………………………………………..54

Wilson v. Layne, 526 U.S. 603 (1999) …………………………………………………104

Wyatt v. Cole, 504 U.S. 158 (1992) ……………………………………………………..57

Young v. Beard, No. 3:CV-07-2266, 2009 WL 3111736 (M.D.Pa. Sept. 23, 2009) …………..121

Young v. City of Providence, 396 F. Supp.2d 125 (D.R.I. 2005) …………………………102, 122

Zampetis v. City of Atlantic City, Civil Action No. 15-1231 (NLH) (D.N.J. Dec. 21, 2015) ……………………………………………………………………144, 145

Zampetis v. City of Atlantic City, Civil No. 1:15-cv-01231-NLH-AMD (D.N.J. Sept. 27, 2016)……………………………………………………………………146

Zampetis v. City of Atlantic City, Civil No. 1:15-cv-01231-NLH-AMD (D.N.J. June 29, 2017) ……………………………………………………………………..146, 147

Zampetis v. City of Atlantic City, Civil No. 1:15-cv-01231-NLH-AMD (D.N.J. Nov. 2, 2018) ……………………………………………………………………….147

Ziglar v. Abbasi, 137 S.Ct. 1843 (2017) …………………………………………………..57

**Statutes**

42 U.S.C. section 1983 …………………………………………………………..(Various)

N.J.S.A. § 2C:29-1(a) …………………………………………………………..62

N.J.S.A. 59:1-1 …………………………………………………………………34

N.J.S.A. 59:3-3 ………………………………………………………………94, 95

N.J.S.A. 59:3-14 ……………………………………………………………94, 95

N.J.S.A. 59:5-2(b)(3) …………………………………………………………93

## **Court Rules**

Federal Rule of Civil Procedure 8(a) …………………………………………………………..99, 116

Federal Rule of Civil Procedure 9(b) …………………………………………………………….99

Federal Rule of Civil Procedure 12(b)(6) ………………………………………………….49, 51, 52

Federal Rule of Civil Procedure 12(c ) …………………………………………………………….52

Federal Rule of Civil Procedure 12(d) …………………………………………………………...49

Federal Rule of Civil Procedure 56 …………………………………………………………52, 53

R. 3:9-2 …………………………………………………………………………………..69, 83

R. 7:6-2(a)(1) …………………………………………………………………………………….69

## **News Articles**

Article, June 25, 2020, Philadelphia Inquirer, "Philly Police Commissioner Danielle Outlaw, Mayor Jim Kenney  Apologize for Teargassing of Protesters on 676" …………………………68

Article, CNN, August 22, 2020, "New Mexico city to pay $6.5 million to the family of a man who died in police custody" ……………………………………………………………………..68

Article, MSNBC, Feb. 21, 2020, "Judge in Stone case: 'The truth still exists; the truth still matters.'" …………………………………………………………………………………..82

## **Law Review Articles**

Note, Peter Boynton, "Supervisory Liability in the Circuit Courts after Iqbal," Journal of Constitutional Law, Vol. 21:2 (Dec. 2018) ……………………………………………95, 96, 97, 98

Article, Kit Kinports, "Iqbal and Supervisory Immunity," Penn State L. Rev. Vol. 114:4 (2010)

……………………………………………………………………………….…………..98

Note, Sheldon Nahmod, "Constitutional Torts, Over-Deterrence and Supervisory Liability After

Iqbal, 14 Lewis & Clark Law Review 279 (2010) …………………………………96, 97, 98, 99

Plaintiffs, Audra S. Capps, Douglas Robert Gibson, Jr.[1], and Tanika Joyce ("Plaintiffs"), submit this Brief in opposition to the various motions to dismiss, for judgment on the pleadings, and/or for summary judgment filed by Defendants, Joseph Dixon, Bryan Orndorf, the City of Millville, Chief of Police Jody Farabella, Sgt. Lawrence Mulford, Sgt. Ross Hoffman, Sgt. Harold Duffield, Jr., Lt. Kevin McLaughlin, Sgt. Cindi Zadroga, Sgt. John Redden, III, Sgt. Carl Heger, and Sgt. Daniel Ayars[2] (collectively, "Defendants").   For the following reasons, Defendants' motions should be denied.

## I.    **PROCEDURAL BACKGROUND**

The City of Millville (sometimes referred to as the "City") suggests in its brief in support of its motion to dismiss in the Joyce case that the Second Amended Complaint represents a "third bite at the apple" after extensive pre-motion briefings and conferences on the subject.   See City's brief in Joyce, at 4.   Some context is appropriate.

Plaintiffs Capps and Gibson filed their initial detailed Complaint on May 1, 2019.   ECF Doc. 1.   Plaintiff Joyce did not retain counsel for this action until early 2020, shortly before the

---

[1] Plaintiff Gibson is the husband of Plaintiff, Audra S. Capps.   He has a sole claim for loss of consortium.   See Count 11 of the Second Amended Complaint, ECF Doc. 58.   It is not a controversial proposition that such a claim is only maintainable by reason of a spouse's personal injury, and depends upon and is incidental to the personal injury action.   Tichenor v. Santillo, 218 N.J. Super. 165, 173 (App. Div. 1987) (citations omitted).   It is a "derivative claim" that can rise "no higher than the personal injury claim of the other spouse."   Id. (citations and footnote omitted).   Moreover, "[t]he consortium claim and the principal personal injury claim are closely interconnected; together, they represent the total, compensable damages – direct and indirect – suffered as a result of the principal plaintiff's injury."   Id. at 175.   Defendants argue that because the claims of the principal Plaintiff, Audra Capps, should be dismissed, then there is no derivative loss of consortium claim on the part of her husband.   See Orndorf Br. at 28.   For the many reasons set forth in this response to Defendants' motions, there is no basis to dismiss Plaintiffs claims.

[2] The individual Defendants other than Dixon and Orndorf are referred to collectively as the "Supervisory Defendants."

expiration of the statute of limitation. She filed her Complaint on January 31, 2020. See ECF Doc. 1.

The first round of Amended Complaints came into being because someone sent Plaintiffs a Rule 11 letter, in spite of the overall sufficiency of the original Complaint in the Capps case. There were various amendments made to the Complaint, which included, among other things, a change to remove Chief Farabella as an individual defendant on a state tort claim of negligent supervision, and to instead name the City as the defendant on that claim. The other significant changes reflected in the first Amended Complaints were the addition of multiple individual defendants under a theory of supervisory liability. Those additions to the first Amended Complaint came into being because the Rule 11 letter cited a case known as Raheem Jacobs v. Cumberland Cty., Civil Action No. 1:16-cv-01523-JHR-AMD (D.N.J. May 31, 2019), a case which contained a discussion of the subject. Given the nature of the discovery produced by the City, the theory fits, as demonstrated herein.

At a pre-motion conference, the Court questioned whether all of the individually named Supervisory Defendants actually were Defendant Dixon's supervisors. The Second Amended Complaints in both the Capps and Joyce actions (see ECF Docs. 58 and 47, respectively) were meant to address those concerns with specific allegations about which individual defendants supervised Dixon, when they supervised him, and what they did or did not do to address Dixon's conduct as it was occurring. Certain supervisors named in the first Amended Complaints were not named in the Second Amended Complaints. The changes to the Second Amended Complaints, which can be seen from the underlined portions in those documents, consisted as well of, among other things, additional facts reflected in discovery received pertaining to the Millville Police Department's (sometimes, the "MPD") mobile video recording ("MVR") review policy, and how

it permitted the MPD to avoid grappling with excessive force by its officers, together with a further discussion of what the MPD knew about Dixon, and when it knew it.

The Second Amended Complaint in Capps lists the following causes of action: (1) violations of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. sec. 1983; (2) supervisory liability under sec. 1983; (3) municipal liability under Monell v. Department of Social Serv. of the City of New York, 436 U.S. 658 (1978) ("Monell"); (4) violation of Article 1, paragraph 7 of the New Jersey Constitution; (5) intentional infliction of emotional distress; (6) assault; (7) battery; (8) negligent supervision; (9) negligent retention in employment; (10) negligence; (11) loss of consortium; and (12) vicarious liability. Plaintiff Joyce's case is different from that of Audra Capps because she filed no Tort Claim Notice to preserve state common law claims. In terms of Joyce's state constitutional search and seizure claim, and the three federal section 1983 claims, the pleaded facts in her Second Amended Complaint are very similar to those in the Capps Second Amended Complaint. As such, they will be addressed together throughout this submission with references to the Capps Second Amended Complaint, except where it is otherwise noted.

By Order dated June 25, 2020, these cases, together with the action captioned as Barry Cottman v. Jody Farabella, et al., Civil Action No. 1:19-cv-14122-NLH-AMD (D.N.J.), were consolidated for Monell discovery purposes only. See ECF Doc. 51. On August 31, 2020, the Court entered the parties' proposed Consent Order, which set a briefing schedule for Defendants' motions to dismiss, and which permitted Plaintiffs to response to those motions in one consolidated brief. See ECF Doc. 57 in Capps. The various Defendants then filed seven separate motions with regard to the two cases pending before this Court on October 16, 2020 and October 17, 2020. Prior to the filing of the Second Amended Complaint, the City and the Supervisory Defendants filed a

motion to dismiss the first Amended Complaint in <u>Joyce</u>.  <u>See</u> ECF Doc. 35-1.  Since that filing

related to a pleading that is no longer operative, it is respectfully submitted that this particular

motion is moot.  Accordingly, Plaintiffs only have to respond to <u>seven</u> separate motions to dismiss

their cases, instead of eight.

## II.  **FACTUAL BACKGROUND**

### A.  **The MPD's Own Written Policy Laid the Groundwork**
### **For Deliberate Indifference as to the Use of Excessive Force.**

The Millville Police Department's own written policy allowed supervisors to avoid the

issue of reviewing mobile video recording ("MVR") use of force incidents entirely.  An MVR

policy directive dated February 28, 2002 provided as follows:

> … (2) **Lieutenants will periodically review** at least two randomly selected videotapes and
> recordings for each subordinate for whom they [sic] supervise.  At least one of these
> randomly selected videotapes and recordings shall include a motor vehicle stop involving
> one or more of the following law enforcement procedures: orders or requests any occupant
> [sic] out of a vehicle, conducts a frisk or search of any occupant or the vehicle, summons
> a canine [sic], requests an occupant for consent to search, conducts a consensual or non-
> consensual search of the vehicle, makes a seizure or arrest, **or uses force**.  The review will
> assist the supervisor in assessing the officer's job performance in these areas and will help
> determine whether MVR equipment is being fully and properly used.  Material that may
> be appropriate for training may also be identified.  NOTE: Reviews will be conducted
> weekly.  All reviews will be documented, utilizing a report to the Chief of Police of the
> determination of the review. [bold, underlining, and bracketed material added; capital
> lettering in original].

<u>Capps</u>, Second Am. Compl., par. 184.  The very language of the policy thus allowed supervisors

to use various kinds of incidents for MVR review, with the option to use a use of force incident.

There was also an option to <u>not</u> use such an incident category for MVR review, which was used

for officer training and supervision purposes.  The Millville Police Department had this MVR

review policy on the books since 2002.  But in other respects, it was not being followed.  <u>Id.</u>, par.

185.  As part of the MPD's process of evaluating its officers, a supervisor was supposed to perform

an evaluation on approximately an annual basis.  <u>Id.</u>, par. 182.  Yet the City's own documents on

the selection of MVR footage involving Dixon for purposes of evaluation and training revealed that supervisors did not review use of force incidents. Rather, supervisors' reviews of MVRs involving Dixon were selected supposedly at "random" and were not "incident specific," even though there was a box right on the evaluation template form which contemplated the ability to review specific incidents. Id., par. 183.

Aside from failing to adopt new policies, the MPD did not even enforce those policies already on the books. A Millville Police Department Employee Performance Evaluation policy dated November 15, 2006 states that, " Performance evaluations **shall** be completed on an annual basis unless specified due to probationary status." Yet the City of Millville has provided no annual evaluations for Dixon until the year 2015, though he was hired in August of 2012. Moreover, "Supervisors **shall** evaluate each subordinate under their command. All evaluations **shall** be forwarded up through the chain of command to the Chief of Police." Additionally, each employee was required to be rated by their immediate supervisor. Id., par. 285 (bold added).

On August 13, 2012, then-Chief of Police Thomas Haas and then-Commissioner David Vanaman signed off on personnel action to hire Dixon, with a start date of August 27, 2012. Id., par. 168. Defendant Dixon completed police academy training on January 23, 2013. Id., par. 169. As a probationary employee, Dixon was subject, upon information and belief, to regular evaluations during the working test period during this first year of employment.[3] Upon information and belief, and as may be standard practice prior to employment with a police department, Dixon underwent an initial psychological fitness for duty examination prior to the commencement of his employment in August of 2012, the report for which Defendant, the City of

---

[3] In the event that such evaluations were not preserved, Plaintiff reserves the right to state a claim for evidence spoliation. Id., par. 170.

Millville, presently cannot locate, according to the City of Millville's own discovery responses. Id., par. 171.  Upon information and belief, and as may be further revealed in discovery and investigation, in or about the summer of 2013 and thereafter, Dixon displayed reckless, negligent and/or dangerous conduct as a police officer, of which current and former officers within the Millville Police Department and the Supervisory Defendants named herein knew or should have known. Id., par. 172.

Other policy directives within the MPD were not designed and/or not applied in such a way so as to insure officer accountability.[4]  A Chief Haas-era Guardian Tracking General Order dated August 10, 2012 allowed supervisors to document routine employee performance, which would serve as an early intervention system, and which would provide "non-punitive intervention." Id., par. 188. Under this policy directive, "Supervisors are strongly encouraged to document as much detail as possible throughout the year into the Guardian Tracking system" (hereinafter, "GTS"). This would include "officers involved in a use of force incident" and "unscheduled use of sick time by an employee."  However, as described elsewhere herein, various supervisors within the MPD provided very little detail in GTS when it came to use of force incidents by Dixon. Id., par. 189.

Moreover, a September 3, 2012 Early Intervention Policy once again emphasized "non-punitive intervention" designed to detect patterns and trends before the conduct escalates into more serious problems and before "negative discipline" becomes necessary.  This policy further stated that, "All levels of supervision, especially first line supervisors, are expected to recognize

---

[4] Separately, in or about October of 2012, the MPD hired an outside consultant to review and revise department policies.  Yet the program was suspended due to inaction by the department to review and adopt the policy revisions. Id., par. 284.

potentially troublesome employees" and that emphasis "should be placed on anticipating employee problems before it results in improper performance or conduct." Areas of examination would include use of force incidents, internal affairs regardless of outcome, and incidents of arrested persons being injured. Despite the existence of this policy directive, it was not put into practice. Id., par. 190.

In or about the time of the transition from then-Chief of Police Thomas Haas to Defendant Chief Farabella in 2015, deficiencies in training and supervision were identified – namely, the lack of annual evaluations being done for officers and the failure to provide newly promoted officers with evaluations during their probationary supervision periods. Upon information and belief, it was at about that time that the MPD began performing approximately annual evaluations and quarterly supervisory MVR reviews. As described above, the concept of performing supervisory MVR reviews had been on the books for years. And, as described elsewhere in detail herein, the policy as it was written and as it was later applied in practice gave Defendants and other supervisors license and a loophole to intentionally avoid evaluating use of force incidents among MPD officers, thus contributing to a total system-wide failure to address the problem of excessive force within the police department. This had real-life consequences, as described in detail below. Id., par. 286.

If Dixon's personnel file is any guide, it was apparent that MVR reviews were not being done until 2015. And the content of the reviews that are available reveal that supervisors were using any other type of incident *except* use of force incidents. While the policy specifically includes use of force as a category area for purposes of MVR review, the policy language specifically gives the reviewing supervisor an option and a clear loophole to look at something else – anything else about a car stop -- other than use of force incidents, by the use of the language

"*or* use of force." In this sense, there was nothing "random" about the absence of supervisory MVR reviews involving officer use of force.  Rather, there was a custom and practice of avoidance.  Id., par. 186.

According to records produced by Defendants to date, the reviews were not done by lieutenants, were not done weekly, and did not necessarily follow the categories specified in the policy.  What the reviewers did engage in was a consistent custom to avoid taking the option in the policy language to look into use of force incidents in MVR reviews because to do so would create a paper trail on excessive force on an officer and potentially lead to civil liability.  This custom and practice prevented supervisors from catching problem officers who used excessive force, and it allowed them to remain employed by the Millville Police Department, in particular, Defendant Dixon.  Id., par. 187.

**B.  Dixon Demonstrates Dangerous Behavior Early On In His MPD Career.**

Under a policy dated January 23, 2013 regarding Field Training and Evaluation issued by former Chief Haas, patrol supervisors had ultimate authority over all personnel assigned to a respective shift.  Id., par. 191.  However, as alleged in the Second Amended Complaints, the City of Millville's Interrogatory Answer No. 25 reflects Defendant's refusal to even identify by name the supervisors of Defendants Dixon and Orndorf when asked, and instead vaguely referred the reader to those officers identified in GTS, its internal database.  Due to Defendant's refusal to identify these supervisors, recourse therefore is made to the City of Millville's own produced documents, which provided answers to the questions of whether and how the Defendant officers could have so many supervisors, and how so many of these supervisors could miss the warning signs presented – particularly the warning signs presented by Dixon's behavior.  Id., par. 192.

By way of example and not by way of limitation, approximately five months after completing his police academy training, Dixon performed a dangerous July 1, 2013 precision immobilization technique ("PIT") in his police vehicle, which was "not an authorized technique," for which he received a three-day suspension on or about October 24, 2013 and a requirement to attend re-training on vehicular pursuit because he attempted a maneuver in violation of New Jersey Attorney General and MPD pursuit policies. Then-Chief of Police Thomas Haas reduced the suspension from seven days. Dixon's supervisor at the time was Defendant Sgt. Ross Hoffman. Id., par. 173. In connection with a separate 2013 Internal Affairs inquiry, the Professional Standards Unit requested of then-Chief of Police Thomas Haas to conduct a more in depth investigation into Dixon's associations. That follow-up investigation was either never conducted, or was conducted but has not been produced by Defendant, City of Millville. It is conspicuously absent. Id., par. 174.

According to a Millville Police Department General Order dated September 1, 2014 regarding internal affairs procedures, the MPD's Professional Standards Unit "should investigate and review use of force incidents," and the supervisor of that unit "shall immediately notify the Chief of Police, verbally and in person if possible, of complaints against the agency and/or its employees with regards to ... excessive force." Yet according to interviews conducted by the New Jersey Attorney General's Office of Public Accountability and Integrity ("OPIA"), which are recounted herein, prior to 2019 supervisors were reviewing the face of use of force ("UOF") reports for accuracy and completeness, but apparently taking few, if any, other investigatory steps to determine if a subordinate officer used excessive force. Id., par. 316. In addition, the numbers and outcomes of Internal Affairs investigations against Dixon and others for alleged excessive force are not the only measurements of Defendants' custom, usage or practice of taking a blind

eye toward the use of excessive force by Millville police officers.  Id., par. 317.  Indeed, the Supervisory Defendants relied on a useless system of random MVR reviews for evaluation and training purposes, which was effective at studiously avoiding the review of actual audio and video footage which might reveal its officers' use of excessive force.  Id., par. 318.  Moreover, what turned out to be 80 UOF forms issued by Dixon in a short period of time was in part cause enough for OPIA to investigate and to successfully prosecute him to a criminal standard of beyond a reasonable doubt, as detailed elsewhere herein.  But the frequency with which Dixon generated these UOF forms apparently was not enough for the Defendants named and unnamed to take action or to recognize that, in Defendant Officer Dixon, they had a problem waiting to happen, and that someone was going to be seriously hurt.  Id., par. 319.

### C. Defendants Were Aware At Least As Early As 2016 That Dixon Was Showing a Pattern.

During his employment with the Millville Police Department, Dixon received discipline or counseling for, among other things, not properly submitting evidence and for missing court proceedings.  But when it came to incidents involving the use of excessive force as they were occurring, and as Dixon was filling out his 80 UOF forms along the way, Defendant Chief Farabella and the other individual Supervisory Defendants had his back, and failed to act in the face of mounting documentary and video evidence that Dixon was a problem waiting to happen. Id., par. 175.

Entries in GTS for Dixon prior to the Capps and Joyce incidents described below showed that he received discipline or counseling for non-force related infractions.  Id., par. 180.  By August 27, 2014, after only being employed by the MPD for two years, Dixon accumulated 13 use of force incidents.  On one of those 13 cases, MPD Lt. Michael Colon had concerns, and as of that August

27, 2014 entry, Dixon would be "monitored for any further incidents." As discussed elsewhere herein, whatever "monitoring" was contemplated, it was plainly insufficient. Id., par. 181.

Defendants Sgt. Ross Hoffman and Sgt. Lawrence Mulford appear as supervisors of Dixon in documentation relating to 2013 and 2014 use of force incidents. Id., par. 193. As of August 27, 2014, just two years into Dixon's tenure with the Millville Police Department, which included his first five months when he was in police academy and not on the street, the department was on notice of his use of force incidents, such that "Dixon will be monitored for any further incidents." However, Dixon continued to fill out numerous use of force forms after that time, without being subjected to meaningful discipline. Id., par. 194.

After a rare "incident specific" MVR review, Defendant Sgt. Harold Duffield made a detailed GTS entry on September 3, 2014 regarding counseling on Dixon's excessive speed on a call without any previous mention of his dangerous July 1, 2013 PIT maneuver. However, use of force entries in August of 2014 in GTS were accompanied by very little narrative information. Id., par. 195. In addition, according to the Millville City Code, section 46-95, "Department heads shall evaluate probationary employees a minimum of three times during the working test period and provide a written recommendation to the Commissioner in charge of the department indicating whether the employee should be retained. All personnel shall be evaluated at least once per year during the month of their anniversary date of hire or promotion." Id., par. 196. Yet Defendant Dixon's personnel file contains no supervisory MVR reviews – random or otherwise – before 2015, no annual evaluations of Dixon prior to 2015, and no evaluations performed during his initial one-year working test period. Id., par. 197.

City of Millville records also show that in 2014, some of Dixon's own supervisors, including Sgt. Redden and Sgt. Duffield, themselves had sustained findings and received various