IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AUDRA CAPPS, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>JOSEPH DIXON, et al.,<br><br>          Defendants. | Civil No. 19-12002 (RMB/AMD)<br><br>**OPINION** |
| TANIKA JOYCE,<br><br>          Plaintiff,<br><br>v.<br><br>JOSEPH DIXON, et al.,<br><br>          Defendants. | Civil No. 20-1118 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

Louis Charles Shapiro, P.A.
By: Louis Charles Shapiro, Esq.
1063 East Landis Avenue
Vineland, NJ 08362
          Attorney for Plaintiff

Reynolds & Horn, P.C.
By: Thomas B. Reynolds, Esq.
116 S. Raleigh Ave.
Apt. 9B
Atlantic City, NY 08401

Barker, Gelfand, James & Sarvas, P.C.
By: A. Michael Barker, Esq.
210 New Road
Suite 12
Linwood, NJ 08221
        Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

Before the Court are various motions to dismiss in two separate, but similar cases: Capps et al., v. Dixon et al. (19-12002) and Joyce v. Dixon et al. (20-1118). The facts and claims are nearly identical between these two actions. In addition, all Plaintiffs are represented by the same counsel, Plaintiffs assert claims arising under 42 U.S.C. § 1983, as well as various claims arising under New Jersey state law, Plaintiffs filed a single opposition brief to the motions to dismiss, and each Defendant is represented by the same counsel in the two cases. Accordingly, the Court will address the motions filed in both cases in this single Opinion.

In the Capps action, the Court now considers the following motions: Police Chief Jody Farabella's, Sergeant Lawrence Mulford's, Sergeant Ross Hoffman's, Sergeant Harold Duffield's, Lieutenant Kevin McLaughlin's, Sergeant Cindi Zadroga's, Sergeant John Redden's, Lieutenant Carl Heger's, and Sergeant Dan Ayars's (collectively "Supervisory Defendants") Motion to Dismiss [Docket No. 61], Defendant Bryan Orndorf's ("Orndorf") Motion to Dismiss [Docket No. 62], the City of Millville's

("Millville") Motion to Dismiss [Docket No. 63], and Joseph Dixon's ("Dixon") Motion to Dismiss [Docket No. 64]. For the reasons stated herein, the Court will grant, in part, and deny, in part, each of these motions.

In the Joyce action, the Court now considers the following motions: Millville's Motion to Dismiss [Docket No. 50], the Supervisory Defendants' Motion to Dismiss [Docket No. 51], and Dixon's Motion to Dismiss [Docket No. 52]. For the reasons stated herein, the Court will deny Dixon's motion, grant, in part, and deny, in part, the Supervisory Defendants' motion, and grant, in part, and deny, in part, Millville's motion.

## I.   **BACKGROUND**

### A. **Audra Capps and Douglas Robert Gibson, Jr.**

Plaintiffs Audra Capps ("Capps") and Douglas Robert Gibson, Jr. ("Gibson") (collectively "Capps Plaintiffs") assert various claims for constitutional violations as well as state tort claims. On February 25, 2018, Defendant Orndorf, an officer with the Millville Police Department, stopped Capps while she was driving on State Highway 49. [Docket No. 58, at ¶ 40]. Dixon, a fellow police officer, then joined Orndorf at the scene. [Id. at ¶ 41]. During the traffic stop, Capps requested to call her husband, Plaintiff Gibson, which Dixon denied. [Id. at ¶¶ 42-43].

Dixon allegedly ordered Capps out of her car and conducted a field sobriety test. [Id. at ¶¶ 44-45]. Capps failed this test, and she was placed under arrest. [Id. at ¶¶ 49-50]. According to the Second Amended Complaint, Capps "began to back up so as not to be handcuffed," and Dixon placed her in a headlock. [Id. at ¶¶ 54-55]. Capps alleges that while Dixon held her in a headlock, he "lifted her off the ground, whirled her around in the headlock, swung [her] over his hip while she was still in a headlock, [] violently slammed this much smaller female suspect to the hard pavement below," and then fell on top of her with all his weight. [Id. at ¶¶ 56-57]. While Capps was on the ground, Orndorf purportedly placed his knee on Capps's back to help Dixon secure the handcuffs. [Id. at ¶ 58].

Dixon and Orndorf then placed Capps in the back of a patrol car. [Id. at ¶59]. Capps alleges that, while in the patrol car, she requested both medical treatment and for the officers to call her husband, both of which the officers ignored. [Id. at ¶¶ 61-62]. The officers took Plaintiff to the Millville Police Department and charged her with multiple offenses. [Id. at ¶67].

Capps went to the hospital after been processed at the Police Department. [Id. at ¶ 119]. She was diagnosed with a chest wall contusion and several fractured ribs. [Id. at ¶¶ 120-21.] According to the Second Amended Complaint, Capps's injuries did not heal properly, the various procedures she received did

not alleviate her pain, and she underwent multiple reconstructive surgeries. [Id. at ¶¶ 122-24]. Approximately 14 months after her injuries, Capps underwent an additional surgery which revealed that "cartilage had been ripped away from her bones, and nerves were tangled around the cartilage, causing severe pain." [Id. at ¶ 129]. To date, Capps contends that she still experiences pain from her injuries. [Id. at ¶ 135].

In her Complaint, Capps asserts a 42 U.S.C. § 1983 claim and argues that Dixon's takedown maneuver violated her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Capps also alleges that Orndorf violated § 1983 both by failing to intervene in Dixon's actions, and by placing his knee on her back during the arrest. In addition, Capps asserts a supervisory liability claim under § 1983 against the Supervisory Defendants, all of whom are officers with the Millville Police Department. Capps's similarly alleges that the City of Millville violated § 1983 for improperly training and supervising its officers.

The Capps Plaintiffs assert several state law claims as well. Capps alleges that Dixon's and Orndrof's actions during the arrest violated her rights to be free from unreasonable searches and seizures under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c), (e), and (f), and Article I, Paragraph 7 of the New Jersey Constitution. Similarly, she alleges that Dixon's

5

and Ordndorf's actions constitute negligence, assault, battery, and intentional infliction of emotional distress.

Against Millville and the Supervisory Defendants, Capps asserts claims for negligent supervision, negligent retention, vicarious liability, and negligence. Finally, Gibson asserts a claim for loss of consortium against all Defendants. Defendants have moved to dismiss all counts.

### B. **Tankika Joyce**

Plaintiff Tanika Joyce ("Joyce") filed her action alleging deprivations of her rights under the Fourth and Fourteenth Amendments of the United States Constitution. [Docket No. 47]. On March 24, 2018, Joyce was at a Shop Rite Store in Millville, NJ. [Id. at ¶ 56]. Shop Rite employees called the police to report a shoplifting by a minor, who was Joyce's child. [Id.]. When police arrived at the store, Joyce allegedly refused to provide her identification to the police officers. [Id. at ¶ 58]. The officers informed Joyce that the minor would not be charged with shoplifting, but that they could not release the child to Joyce without proof of identification. [Id. at ¶ 59].

Defendant Dixon was one of the Millville police officers at the Shop Rite. According to the Second Amended Complaint, Dixon demanded Joyce's identification, and threatened her with arrest for not providing it. [Id. at ¶ 60]. Thereafter, Dixon began to place Joyce under arrest. [Id. at ¶ 61]. Joyce contends that she

pulled away from Dixon and asked why she was being arrested. [Id.]. At this point, Dixon allegedly "slammed Joyce to the ground, causing her to land on her hip and hit her head on the floor," where he then sprayed her with pepper spray. [Id. at ¶ 62]. Joyce's daughter attempted to record this on her phone, but another officer purportedly prevented her from doing so. [Id. at ¶ 63]. In addition, Joyce alleges that Dixon later admitted that he took Joyce to the ground using a "jiu jitsu" move he learned outside of his connection with the police department. [Id. at ¶ 68].

While Joyce was on the ground, she told the officers that she was unable to breathe and that she was injured. [Id. at ¶ 64]. The officers then took Joyce to a patrol car and drove her to the police station. [Id. at ¶ 65]. EMS met Joyce at the police station and took her to the hospital. [Id. at ¶¶ 65-66].

Joyce asserts several claims in this action. Like Capps, Joyce asserts a § 1983 claim for Dixon's takedown maneuver, a § 1983 supervisory liability claim against the Supervisory Defendants, a § 1983 municipal liability claim against Millville, and a New Jersey Civil Rights Act claim against Dixon. Unlike Capps, however, Joyce asserts no additional state law claims. Defendants have moved to dismiss all counts.

## II.  <u>**STANDARD OF REVIEW**</u>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. <u>Id.</u> at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." <u>Bistrian v. Levi</u>, 696 F.3d 352, 358 n.1 (3d Cir. 2012). The Court may consider only the allegations in the complaint, and "matters of public record, orders, exhibits

attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

### III. **ANALYSIS**

Plaintiffs asserts unique theories of liability against Millville, the Supervisory Defendants, and Dixon respectively. In addition, the Capps Plaintiffs assert an additional claim against Orndorf. Plaintiffs predominantly assert claims arising under 42 U.S.C. § 1983. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To establish a claim under § 1983, "a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). The Court begins its analysis of a plaintiff's § 1983 claims by identifying "the exact contours of the underlying right said to have been violated," and

determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998)).

Here, Plaintiffs allege that Defendants violated their rights under the Fourth Amendment. The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As relevant here, an "excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. . . . A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." Groman v. Twp. of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995).

As noted above, Plaintiffs also assert claims under state law. The New Jersey Civil Rights Act ("NJCRA"), in part, provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or

> attempted to be interfered with, by threats,
> intimidation or coercion by a person acting
> under color of law, may bring a civil action
> for damages and for injunctive or other
> appropriate relief.
>
>                ***
>
> Any person who deprives, interferes or
> attempts to interfere by threats, intimidation
> or coercion with the exercise or enjoyment by
> any other person of any substantive due
> process or equal protection rights, privileges
> or immunities secured by the Constitution or
> laws of the United States, or any substantive
> rights, privileges or immunities secured by
> the Constitution or laws of this State is
> liable for a civil penalty for each violation.

N.J.S.A. § 10:6-2 (c), (e).

The NJCRA was "modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[ ]." <u>Trafton v. City of Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Courts interpret the NJCRA "analogously to § 1983." <u>Id.</u> at 444. Here, Plaintiffs allege that Defendants violated their rights to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." N.J. Const. art. I, para. 7.

### A. **Capps's Claims**

#### a. <u>Dixon</u>

As noted above, Capps argues that Dixon's takedown maneuver constituted excessive use of force, in violation of § 1983.

Dixon responds that Capps has failed to identify a clearly established right that he purportedly violated. More specifically, he contends that Capps can identify no law or caselaw showing that she had "a right to be free from a law enforcement officer's takedown maneuver to apply handcuffs and effectuate an arrest[,]" and that no police officer "would clearly believe that his conduct in using a takedown maneuver, lasting 2 seconds, to arrest a resisting suspect, was unlawful or a violation of clearly established statutory or constitutional rights." [Docket No. 64-2, at 7-8].

The Court must reject Dixon's argument. At this stage in the litigation, Capps has stated a valid claim and dismissal is not warranted. Neither party disputes that Dixon used some sort of takedown maneuver while arresting Capps. Instead, the parties dispute whether the particulars of the exact maneuver that Dixon used were excessive. In relevant part, Dixon focuses his argument on narrow grounds: that the takedown maneuver he applies is permissible. But that puts the "cart before the horse." The Court is not a factfinder, and it cannot evaluate whether Capps had a clearly established right to be free from Dixon's takedown until the parties address what actually happened. Undeniably, a police officer's actions may constitute either a permissible use of force or an excessive use of force depending on precisely what occurred. Here, the Court is

satisfied that Plaintiff has sufficiently alleged that Dixon's actions fall into this latter category. Accordingly, Dixon's Motion to Dismiss Plaintiff's § 1983 claim is denied[1].

### b. Orndorf

Capps asserts two § 1983 claims against Orndorf: one for Orndorf's failure to intervene in Dixon's use of force and one for Ornforf's own use of force.

Although a police officer has a "duty to take reasonable steps to protect a victim from another officer's use of excessive force," that officer is "only liable if there is a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002). But Capps has not alleged that Orndorf had a reasonable opportunity to intervene. Instead, Capps argues that "[s]omeone who worked with Dixon for that length of time, who also knew Dixon for 11-12 years before becoming a Millville Police Officer . . . would know exactly what was coming – that Dixon was going to slam Capps to the ground." [Docket No. 67-6, at 80]. But Capps's argument fails to appreciate that an officer's duty to intervene requires a realistic and reasonable opportunity to do so; it is not a duty to predict the future. Capps's allegations that Orndorf "would know exactly what was coming" does just that. Therefore,

---

[1]  The Court will not consider Dixon's subsequent guilty pleas at this time.

Orndorf's motion to dismiss is granted as to the failure to intervene claims.

Capps also claims that Orndorf directly violated her Fourth Amendment rights. As noted above, the Second Amended Complaint alleges that Orndorf used his knee to restrain and injure Capps during the arrest. Orndorf argues that Capps's allegations are unsupported by video of the arrest, and the Court should rely on that video recording in reviewing the Motion to Dismiss.

The Court finds that it would be inappropriate to make factual judgments based on the video recording at this time. Orndorf is correct that Capps makes several references to the video in her pleading. But these references do not permit the Court to review and make factual determinations from the recording. Only when "claims in the complaint are 'based' on an extrinsic document," may the Court review that extrinsic document in deciding a motion to dismiss. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis added). When, as here, a party merely cites an extrinsic document, the Court cannot review that document at such an early stage. Id. In other words, "[s]imply because a video that captured the events complained of in the complaint exists does not transform that video into a 'document' upon which the complaint is based." Slippi-Mensah v. Mills, No. 1:15-CV-07750-NLH-JS, 2016 WL 4820617, at *3 (D.N.J. Sept. 14, 2016) (emphasis added).

Moreover, Orndorf even acknowledges that "the video is obstructed" and "the precise location of Orndorf's knee cannot be ascertained." [Docket No. 62-1, at 9]. Although the Court has held that it will not review the video at this time, Orndorf's request is additionally inappropriate in that he asks the Court to make factual inferences from an objectively unclear recording. Accordingly, Orndorf's motion, as to Capps's direct § 1983 claim, is denied.

### c. Supervisory Defendants

As the parties have correctly identified, there are some uncertainties about the applicability of supervisory liability in any § 1983 action, and particularly in cases concerning the Fourth Amendment. Nevertheless, the Third Circuit has recognized "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates[:]" (1) liability based on an establishment of policies, practices or customs that directly caused the constitutional violation; and (2) personal liability based on the supervisor participating in the violation of Plaintiff's rights, directing others to violate Plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 316 (2014); see also Doe v. New Jersey Dep't of Corr., No. CIV.A. 14-5284 FLW, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015).

Having reviewed the Second Amended Complaint, it appears that Capps has simply named every Millville police officer who potentially had some supervisory responsibility over Dixon, regardless of when that role existed or how disconnected that supervision was from these events. The Third Circuit has repeatedly held that a plaintiff cannot establish § 1983 liability on a *respondeat superior* theory. See, e.g., Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015). Yet Capps's allegations attempt to bypass this restriction and hold some of the Supervisory Defendants liable solely for supervising Dixon. For example, Capps's live complaint makes only two allegations with respect to Defendant Ross Hoffman: (1) that Hoffman was Dixon's supervisor in 2013, when Dixon allegedly drove his police vehicle in a reckless manner [Docket No. 58-1, at ¶ 173], and (2) that Hoffman was Dixon's supervisor when Dixon used force on arrestees in 2013 and 2014. [Id. at ¶ 193]. But neither of these allegations are sufficient to establish § 1983 violations against Hoffman for Dixon's use of force against Capps in 2018-- they allege neither actions that directly caused Dixon's purported constitutional violations, nor do they allege participation in or acquiescence to Dixon's actions to Capps.

These same deficiencies are present for nearly every other Supervisory Defendant. Capps repeatedly fails to establish any

connection between most of the Supervisory Defendants and Dixon's purported constitutional violation in this action. Because Capps has failed to make this connection, dismissal of Capps's § 1983 claims against most of the Supervisory Defendants is warranted.

The exception, however, is Capps's supervisory liability claim against Defendant Chief Farabella. Unlike the other Supervisory Defendants, Farabella-- as the Chief of the Millville Police Department-- is undeniably a "policymaker." If, as Capps alleges, the Millville Police Department maintained a policy or custom of permitting officers to use excessive force without consequence, Farabella could be liable under § 1983. In addition, Capps has alleged that Farabella knew about Dixon's history of use of force complaints for years before Capps's arrest, and that Farabella was responsible for the internal review of complaints that Dixon received. [See id. at ¶¶ 230-31]. Capps also alleges specific incidents where Farabella spoke with Dixon about his use of force practices, but ultimately failed to take sufficient corrective measures. At this stage in the litigation, Capps has met her burden and dismissal is not warranted.

d. The City of Millville

Capps asserts Monell liability claims against the City of Millville. Monell liability, as established in Monell v. Dep't

of Soc. Servs., 436 US 658 (1978), states that a municipality
may be liable under § 1983 when a public employee deprives
someone of their constitutional rights, and does so pursuant a
municipal policy or custom. See Natale v. Camden Cty. Corr.
Facility, 318 F.3d 575, 583–84 (3d Cir. 2003). But Monell does
not impose liability on a municipality simply for employing
someone who violates another's constitutional rights; there is
no *respondeat superior* liability in § 1983. Robinson v. Fair
Acres Geriatric Ctr., 722 F. App'x 194, 198 (3d Cir. 2018)
(citing Monell, 436 U.S. at 691). Instead, "liability is imposed
'when the policy or custom itself violates the Constitution or
when the policy or custom, while not unconstitutional itself, is
the moving force behind the constitutional tort of one of its
employees." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d
Cir. 2014) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017,
1027 (3d Cir.1991)).

A plaintiff has not established the existence of a
municipality's policy or custom by showing that a municipality
took a particular action. Natale, 318 F.3d at 584. Instead, a
policy exists when "a decisionmaker possess[ing] final authority
to establish municipal policy with respect to the action issues
a final proclamation, policy or edict." Kneipp v. Tedder, 95
F.3d 1199, 1212 (3d Cir.1996). In contrast, a custom is an act
"that has not been formally approved by an appropriate

decisionmaker," but that is "so widespread as to have the force of law." Natale, 318 F.3d at 584 (quoting Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)).

When, as here, a plaintiff's identified policy or custom "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir.1999). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thomas, 749 F.3d at 222. "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). A "pattern of violations" will put a municipality on notice that a new program is necessary, but without notice that a course of training is deficient, there can be no deliberate indifference. Id. Finally, "the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

Millville argues that Capps's Monell claims should be dismissed because Capps failed to allege sufficient facts "to establish a plausible claim that the City of Millville was deliberately indifferent to a custom, pattern, or practice of excessive use of force by Dixon." [Docket No. 50-1, at 3]. But this is incorrect. Defendants concede that Chief Farabella was a decisionmaker for Monell liability purposes. [Docket No. 61-1, at 5]. In addition, Capps has sufficiently alleged that Farabella either knew or should have known that Dixon received use of force complaints at a rate far higher than other officers in the department, and that whatever measures he took to correct this issue was insufficient. Thus, dismissal of Capps's Monell claims against Millville is unwarranted at this time.

e. State Law Claims

Capps has asserted an NJCRA claim against both Dixon and Orndorf for their actions during her arrest. As noted above, the NJCRA is interpreted "analogously to § 1983." Trafton, 799 F. at 444. As such, the Court's analysis with respect to Capps's NJCRA claims is identical to the above, and those claims will not be dismissed.

In addition, Capps and Gibson assert eight state law tort claims against Defendants. Under the New Jersey Tort Claims Act, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. But

a public employee can be liable if his or her actions "constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. § 59:3-14. Under these standards, the Court will now consider each tort claim in turn.

First, Capps asserts intentional infliction of emotional distress claims against Dixon and Orndorf. To establish a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) defendant acted intentionally; (2) defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant's actions proximately caused her emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).

Having reviewed the conclusory allegations in the Second Amended Complaint, the Court finds that Capps has failed to state a claim for intentional infliction of emotional distress at this juncture. Beyond conclusions, Capps has not identified specific conduct, traceable to each of Dixon and Orndorf, that was so outrageous and extreme as to constitute infliction of emotional distress. Therefore, dismissal is warranted.

Second, Capps asserts assault claims against Dixon and
Orndorf. In New Jersey, "a person is subject to liability for
the common law tort of assault if: (a) he acts intending to
cause a harmful or offensive contact with the person of the
other, or an imminent apprehension of such contact, and (b) the
other is thereby put in such immediate apprehension." Panarello
v. Vineland, 160 F. Supp. 3d 734, 767 (D.N.J. Feb. 8, 2016)
(quoting Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591
(2009)). Although a police officer may not be liable for assault
when an arrestee physically resists the officer, see State v.
Williams, 29 N.J. 27, 39 (1959), an officer who uses "excessive
force in effectuating an arrest, . . . may be liable for assault
and battery." Hill v. Algor, 85 F. Supp. 2d 391, 411 (D.N.J.
2000)." Having found that Capps has stated a claim for excessive
force, the Court will deny Defendant's motion as to the assault
claims against Dixon and Orndorf.

Third, Capps asserts battery claims against Dixon and
Orndorf. "The tort of battery rests upon a nonconsensual
touching." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591
(2009). Like assault, a police officer is generally not liable
for battery when an offender resist arrests. But, also like
assault, an officer who uses excessive force can be liable for
battery. Hill, 85 F. Supp. 2d at 411. The Court has already
found that Capps's assault claims against Dixon and Orndorf will

not be dismissed and, for identical reasons, Capps's battery claims will also not be dismissed.

Finally, Plaintiffs' remaining tort claims-- negligent supervision, negligent retention, negligence, vicarious liability, and loss of consortium-- suffer from similar defects. As an initial matter, the Court remains unconvinced that the New Jersey Torts Claims Act permits liability against municipalities for negligent supervision, negligent retention, and vicarious liability. In addition, the New Jersey Tort Claims Act establishes that a municipality is generally not liable for an employee's actions, when those actions constituted "a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. § 59:2-10. Yet Plaintiffs have alleged that Dixon's and Orndorf's actions constituted crimes, malice, and willful misconduct. Given these considerations, the Court will dismiss all of Capps's and Gibson's tort claims against Millville.

In addition, and as noted above, the New Jersey Tort Claims Act states that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." Id. at § 59:3-3. For a public employee to assert this immunity, he must show that "the challenged conduct was undertaken with objective or subjective good faith." Dunlea v. Twp. of Belleville, 349 N.J. Super. 506, 509 (App. Div. 2002). Critically, "mere negligence on the part of a public employee is generally not

sufficient to defeat the good-faith immunity provided by
N.J.S.A. 59:3-3." Id. Instead, a plaintiff must allege at least
recklessness. Id. at 512.

Capps and Gibson do not sufficiently allege conduct from
the Supervisory Defendants that amounts to at least
recklessness, nor do they assert arguments fairly tracing each
of the Supervisory Defendants' conduct to their respective
negligence and loss of consortium claims. In addition,
Plaintiffs' conclusory and bald assertion that the police
officers in this case "would not take any action that would risk
running up against the Blue Wall of Silence" [Docket No. 67-6,
at 81] is both insufficient and inappropriate.

Nevertheless, the Court finds that dismissal of Capps's
negligence claims against only Dixon and Orndorf is unwarranted.
Unlike Capps's allegations against the other Defendants, her
allegations against Dixon and Orndorf are sufficiently detailed
to state a plausible claim at this stage in the litigation.

### B. Joyce's Claims

The Court's above analysis applies equally to the Joyce
matter, except that Joyce asserted no claims against Orndorf nor
did she assert any state tort claims. Joyce's claims against the
Supervisory Defendants and the City of Millville are identical
to Capps's claims. Her claims against Dixon do involve slightly
different circumstances, but the operative facts and allegations

are identical: Dixon allegedly used a dangerous and excessive takedown maneuver to restrain Joyce, and Joyce suffered severe injuries as a result. Thus, the Court will resolve Defendants' motions consistent with the above analysis for the Capps case.

## IV.  CONCLUSION

For the foregoing reasons, Dixon's Motion to Dismiss in 19-12002 [Docket No. 64] is GRANTED, IN PART, and DENIED, IN PART; Dixon's Motion to Dismiss in 20-1118 [Docket No. 52] is DENIED; Orndorf's Motion to Dismiss [19-12002, Docket No. 62] is GRANTED, IN PART, and DENIED, IN PART; the City of Millville's Motion to Dismiss in 19-12002 [Docket No. 63] is GRANTED, IN PART, and DENIED, IN PART; the City of Millville's Motion to Dismiss in 20-1118 [Docket No. 50] is DENIED; and the Supervisory Defendants' Motions to Dismiss [19-12002, Docket No. 61; 20-1118, Docket No. 51] are GRANTED, IN PART, AND DENIED, IN PART.

In addition, both the Capps Plaintiffs and Joyce may file Third Amended Complaints within 30 days from the date of this Opinion. But the Court will caution Plaintiffs against filing additional complaints as a matter of course. Given the number of complaints already filed in these cases, and the length of those complaints, the Court does not expect that the now-dismissed claims can be corrected by addressing minor oversights. Plaintiffs should be very critical of their potential claims

when considering additional pleadings. In addition, the Court further advises Plaintiffs that any amended complaints should avoid the "kitchen sink" pleading approach. See Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97 (3d Cir. 1988) ("[W]e acknowledge that the practice of 'throwing in the kitchen sink' at times may be so abusive as to merit Rule 11 condemnation.").

An appropriate Order accompanies this Opinion.


Dated: May 21, 2021                    s/Renée Marie Bumb
                                       RENÉE MARIE BUMB
                                       United States District Judge