# BARKER, GELFAND, JAMES & SARVAS

ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

**Atlantic County Office:**
210 New Road
Linwood Greene – Suite 12
Linwood, New Jersey 08221
(609) 601-8677
(609) 601-8577 – Telefax

A. MICHAEL BARKER *
TODD J. GELFAND **
VANESSA E. JAMES **
JEFFREY P. SARVAS

GREG DILORENZO
ADAM E. BARKER

**Burlington County Office:**
1 Eves Drive, Suite 111
Marlton, New Jersey 08053
(609) 601-8677
(609) 601-8577 – Telefax
E-Mail: TGelfand@BarkerLawFirm.net
*By Appointment Only*

\* CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
\*\* LICENSED TO PRACTICE IN PENNSYLVANIA
↳ ASSOCIATION OF WORKPLACE INVESTIGATORS –
CERTIFICATE HOLDER

Website: www.barkerlawfirm.net
e-mail: AMBarker@BarkerLawFirm.net

**Gloucester County Office:**
91 Circle Avenue
Pitman, New Jersey 08071
(856) 244-1854
Email: VJames@BarkerLawFirm.net
*By Appointment Only*

PLEASE REPLY TO
**ATLANTIC** COUNTY OFFICE

July 12, 2021

The Honorable Renée Marie Bumb, U.S.D.J.
United States District Court
District of New Jersey/ Camden Vicinage
Mitchell H. Cohen US Courthouse
One John F. Gerry Plaza
Camden, New Jersey 08101

Re:      Audra Capps v. City of Millville, et al.
         Civil Action Number: 1:19-cv-12002-RMB-AMD

         Tanika Joyce v. City of Millville, et. al.
         Civil Action Number: 1:20-cv-01118-RMB-AMD

Dear Judge Bumb:

Defendants Farabella, Orndorf, and the City of Millville submit this letter brief in reply to Plaintiffs' opposition to Defendants' motion for reconsideration. Defendants will briefly address just a few points raised by Plaintiff.

1.    **Plaintiffs' introductory comments**

Defendants have every right to raise every meritorious defense against the imposition of legal liability. Also, the moving Defendants did not waive their qualified immunity defense because they "subjected themselves to the discovery process" and "voluntarily engaged" in discovery. It is not the practice in this Court for all discovery to be stayed pending decisions on motions to dismiss. Defendants have been proceeding in good faith, in accord with prior discovery rulings in this District and rulings of the U.S.M.J. for this case.

2.    **Qualified immunity for Chief Farabella**

Defendants are not "re-hashing" arguments that have been addressed in full. Defendants are raising issues which appear to have been overlooked by the Court. This Court's opinion denying the moving Defendants' motion to dismiss did not fully address the qualified immunity arguments raised by Defendants Farabella and Orndorf.

Although the Court addressed and conceded that there are "uncertainties about the applicability of supervisory liability in any § 1983 action, and particularly in cases concerning the Fourth Amendment," (ECF 80 at p. 15), this Court made a legal error by not addressing why or how those uncertainties do not result in qualified immunity for Farabella. The case law cited throughout

Plaintiffs' opposition highlights all the uncertainties regarding supervisory liability. Plaintiff even goes so far as to point out the seemingly contrary opinions from the Tenth Circuit decided just two months apart back in 2010, with Supreme Court Justice Gorsuch having authored one of those opinions, while serving as a circuit court judge, an opinion that supports Farabella's position here.

In the context of the Fourth Amendment excessive use of force cases *sub judice*, it would be an understatement to say the scope of supervisory liability was and is debatable. The comments to Model Civil Jury Charge 4.6.1 (Section 1983 – Liability in Connection with the Actions of Another – Supervisory Officials), state:

> It is not yet clear what Iqbal's implications are for the theories of supervisors' liability that had previously been in use in the Third Circuit. **A theory of liability based on the supervisor's *direction* to a subordinate to take the action that violates *the plaintiff's* rights would seem viable after Iqbal (*subject to a caveat […] concerning levels of scienter*)**; such a theory is reflected in the first of the three alternatives stated in Instruction 4.6.1. The second and third alternatives stated in Instruction 4.6.1, by contrast, may be more broadly affected by Iqbal. Versions of those alternative theories – a knowledge- and acquiescence theory and a deliberate-indifference theory – were invoked by the plaintiff and the dissenters in Iqbal; accordingly, the Iqbal majority's conclusion that the plaintiff had failed to state a claim, coupled with the majority's statements concerning the non-existence of vicarious liability, might be read to cast some question on the viability of those two alternatives. […] Pending further guidance from the Supreme Court or the court of appeals, the Committee

decided to alert readers to these issues without attempting to anticipate the further development of the law in this area. In determining whether to employ some or all portions of Instruction 4.6.1, ***courts should give due attention to the implications of Iqbal for the particular type of claim at issue***. (Emphasis added).

*See also*, Ziglar v. Abbasi, 137 S. Ct. 1843, 1868 (2017) ("When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability."), *citing*, Wilson v. Layne, 526 U. S. 603, 618 (1999) ("it would be 'unfair' to subject officers to damages liability when even 'judges … disagree'").

Plaintiffs suggest Farabella argues he had to be physically involved in the arrest of Plaintiffs for supervisory liability to apply; however, that has never been Farabella's position. Farabella has articulated that he could be liable if he directed or ordered Dixon to violate Plaintiffs' rights, or if he knew Dixon was violating Plaintiffs' rights and acquiesced or failed to intervene. Farabella has never argued that Plaintiffs' claims against him were sounding merely for *respondeat superior* liability. Rather, Farabella has argued Plaintiffs' claims against him sounded for "Monell" liability based on a deliberate indifference to a custom, pattern, or practice. "Monell" liability does not require personal involvement in the underlying violation, supervisory liability does, per the Supreme Court in Rizzo and Iqbal, as well as the Second Circuit in Tangreti v. Bachmann, 983

4

F.3d 609, 618-19 (2d Cir. 2020), the Sixth Circuit in _Jones v. Sandusky Cty._, 541 F. App'x 653, 666 (6th Cir. 2013), and Justice Gorsuch in _Porro v. Barnes_, 624 F.3d 1322, 1327-28 (10th Cir. 2010). Even when the Third Circuit upheld supervisory liability in the Eighth Amendment context only, Justice Hardiman dissented to that holding in _Barkes v. First Corr. Med., Inc._, 766 F.3d 307 (3d Cir. 2014), stating, "In light of _Iqbal_, we must also overrule the framework we adopted for supervisory liability claims in _Sample_." _Id._ at 341.

Plaintiff argues that "sufficient time has passed with the applicable Third Circuit precedents in place that higher-ranking police officials should at this point be deemed to be on notice of federal precedent which is binding upon them and their conduct in New Jersey." (ECF 87, p. 6). That argument is entirely unavailing since Plaintiff and this Court have not cited a single Third Circuit case that has applied the "Monell" standard of liability to a supervisor in a Fourth Amendment excessive use of force context, in any opinion denying qualified immunity. If Plaintiff is arguing that police officials should be on notice that they can be sued in their "official" capacities for being deliberately indifferent to a custom, pattern, or practice, then Plaintiff is correct. However, no police official is on notice of exposure for _personally_ liable for that same conduct since there is no precedent that states as much. Even the Third Circuit's jury instructions

comment on that uncertainty. Moreover, this District previously afforded a supervisory defendant qualified immunity for the same reason Farabella is articulating. *See*, Castellani v. City of Atl. City, No. 13-5848 (JBS/AMD), 2017 U.S. Dist. LEXIS 113599, at \*54 (D.N.J. July 20, 2017). ("In the alternative, Defendant Hall asserts qualified immunity, and Plaintiff does not oppose. Plaintiff has not established that Defendant Hall violated a clearly established constitutional right, **as he has not identified a case where a supervisor acting under similar circumstances as Hall was held to have violated the Fourth Amendment**.") (emphasis added).

Plaintiff points out that Judge Hillman also recently ruled against Farabella in the Cottman case, following suit with Judge Bumb in the cases *sub judice*. However, for reasons similar to those supporting the moving Defendants' motion *sub judice*, Farabella is pursuing a motion for reconsideration in the Cottman case as well. The Third Circuit has, on several occasions, acknowledged the questionable state of supervisory liability, but has not ruled on it. Moreover, as noted *supra*., several other jurisdictions have ruled on the issue and determined the supervisory liability theory is *not* actionable in circumstances where the supervisor is not involved in the challenged underlying conduct. It is most certainly not clearly established law that a supervisor can be held

individually liable for the actions of a subordinate based on an alleged deliberate indifference to a custom, pattern, or practice.

Additionally, applying the deliberate indifference standard to an individual capacity supervisor claim in a Fourth Amendment case is *contrary* to the Third Circuit's holding in <u>Barkes</u>. <u>Barkes</u> applied the deliberate indifference standard to supervisors because deliberate indifference was the standard in finding an underlying Eighth Amendment violation. "The level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." <u>Barkes</u> at 319. In a Fourth Amendment excessive use of force case, the underlying standard is objective reasonableness, not deliberate indifference. No court anywhere (at least none that the moving Defendants are aware of) have applied an objective reasonableness standard to a supervisor's actions. <u>Barkes</u> explicitly held that the test it devised was *only* applicable to Eighth Amendment claims; thus, <u>Barkes</u> impliedly held that applying that same test in another context would be incorrect; yet, that is precisely what this Court endeavors to do. Not a single party to this action, the District Court included, has any idea what the standard is for finding a supervisor individually liable in the context of an underlying alleged Fourth Amendment excessive use of force. All we know is that deliberate indifference *is not* the standard. The moving Defendants maintain they should not be put to trial and prove a

defense with so many unanswered questions as to the state of the law under which they are being sued.

Dismissing Farabella in his individual capacity does not foreclose Plaintiff from holding Farabella liable in his "official" capacity by suing the entity under "Monell" because it is Farabella's alleged deliberate indifference to a custom, pattern, or practice that will expose Millville to liability just the same. Accordingly, the individual capacity supervisory liability claim against Chief Farabella should be dismissed because 1) there is no legally cognizable individual capacity supervisory liability theory for Fourth Amendment excessive use of force absent personal involvement, or 2) because, at the very least, it was not and is not clearly established that a supervisor can be held individually liable under such a theory. Accordingly, Chief Farabella is entitled to qualified immunity.

3.  **Qualified immunity for Orndorf**

This Court similarly did not address Orndorf's qualified immunity argument. This Court only focused on the factual question of whether or not Orndorf had his knee on Capps's back as alleged. This Court's analysis skipped over the legal question of whether Orndorf placing a knee on Capps's back for a few seconds while she was being handcuffed, after Capps was indisputably resisting arrest, was a clearly established Fourth Amendment violation. Even assuming, *per arguendo*, Orndorf did place his knee on Capps's back,

this Court did not identify a single case where such an action was

deemed unconstitutional, and neither has Plaintiff.

> [E]xisting precedent must have placed the statutory or
> constitutional question beyond debate. In other words,
> immunity protects all but the plainly incompetent or
> those who knowingly violate the law. […] As this Court
> explained decades ago, the clearly established law must
> be particularized to the facts of the case. Otherwise,
> [p]laintiffs would be able to convert the rule of
> qualified immunity . . . into a rule of virtually
> unqualified liability simply by alleging violation of
> extremely abstract rights.

White v. Pauly, 137 S. Ct. 548, 551-52 (2017) (internal citations

and quotation marks omitted).

> Specificity is especially important in the Fourth
> Amendment context, where the Court has recognized that
> it is sometimes difficult for an officer to determine
> how the relevant legal doctrine, here excessive force,
> will apply to the factual situation the officer
> confronts. Use of excessive force is an area of the law
> in which the result depends very much on the facts of
> each case, and thus police officers are entitled to
> qualified immunity unless existing precedent squarely
> governs the specific facts at issue. . . .

> [I]t does not suffice for a court simply to state that
> an officer may not use unreasonable and excessive force,
> deny qualified immunity, and then remit the case for a
> trial on the question of reasonableness. An officer
> cannot be said to have violated a clearly established
> right unless the right's contours were sufficiently
> definite that any reasonable official in the defendant's
> shoes would have understood that he was violating it.

> […]

> The Court of Appeals made no effort to explain how that
> case law prohibited Officer Craig's actions in this
> case. That is a problem under our precedents:

>> "[W]e have stressed the need to identify a
>> case where an officer acting under similar

> circumstances was held to have violated
> the Fourth Amendment. . . . While there does
> not have to be a case directly on point,
> existing precedent must place the lawfulness
> of the particular [action] beyond debate. . .
> Of course, there can be the rare obvious case,
> where the unlawfulness of the officer's
> conduct is sufficiently clear even though
> existing precedent does not address similar
> circumstances. . . . But a body of relevant
> case law is usually necessary to clearly
> establish the answer . . . ." *Wesby*, 583 U.S.,
> at ___ (internal quotation marks omitted).

City of Escondido v. Emmons, 139 S. Ct. 500, 503-04 (2019) 503-04

(internal quotations and citations omitted).

If the claim against Orndorf is permitted to proceed just for

placing a knee on the back of an arrestee, who was resisting, for

a few seconds until the arrestee is handcuffed, then this Court is

opening the door to every arrestee who ever had a knee placed on

his back while being handcuffed. That is going to be a whole lot

of lawsuits. Without any precedent squarely addressing the alleged

actions of Orndorf, Orndorf is entitled to qualified immunity, per

the repeated instructions from the Supreme Court of the United

States.

## 4.   The "Monell" claims against the City of Millville

First, it is not clear why Plaintiff brought up the collateral

order doctrine. This is not an interlocutory appeal, it is a motion

for reconsideration. Defendant Millville agrees the Third Circuit

will not exercise jurisdiction on an interlocutory basis with

respect Millville's motion to dismiss the "Monell" claims, unlike the denial of qualified immunity for Farabella and Orndorf, which is subject to interlocutory review.

Next, the point Plaintiff and this Court continue to miss is that there is more than one required element to proving "Monell" liability based on a deliberate indifference to a custom, pattern, or practice of excessive use of force. The pleadings must plausibly establish all elements, not just one. "[P]laintiffs must show […] 'knowledge of a prior pattern of similar incidents **and** circumstances under which a supervisor's inaction could be found to have communicated a message of approval'." Hansell v. City of Atlantic City, 152 F. Supp. 2d 589, 609 (D.N.J. 2001) (emphasis added), aff'd, 46 Fed. Appx. 665 (3d Cir. 2002), *quoting*, Montgomery v DeSimone, 159 F.3d 120, 127 (3d Cir. 1998). While the pleadings may, under a very liberal plausibility standard, assert a plausible case of a custom, pattern, or practice of excessive use of force, in this case, the pleadings clearly assert facts which make it impossible for Plaintiff to prove Millville was deliberately indifferent to the custom, pattern, or practice.

Assuming, *per arguendo*, Plaintiffs' Complaints pled a plausible pattern or practice of excessive use of force; and, assuming, *per arguendo*, Plaintiffs' Complaints pled a plausible case for an ineffective internal affairs review process; the Complaints go on to clearly allege that Farabella and other

11

supervisors addressed Dixon's use of force. Plaintiffs are stuck with that stubborn fact from here on out; so, the only argument Plaintiffs can advance is that the actions Farabella took were simply not enough. Plaintiff cannot argue that Farabella's conduct, and that of other supervisors, in addressing Dixon's use of force, and sending Dixon to a remedial "verbal judo" course, communicated a message of approval to Dixon. No further discovery will change the fact that Farabella addressed Dixon's use of force and related behavior and addressed Dixon's behavior. The only argument Plaintiffs can make is that Farabella's conduct was just not good enough, which, as a matter of law, is not sufficient to prove deliberate indifference.

The means by which Farabella identified a potential use of force pattern is irrelevant. Whether Farabella identified a use of force issue through the internal affairs process, a review of use of force reports, or some other way, Farabella identified a use of force concern and addressed it; he did not deliberately disregard it.

> Defendants primarily argue that to prove his claims against them, Plaintiff must show that their actions amounted to deliberate indifference, and Plaintiff has only described their imperfect actions where perfection is not the standard. The Court does not disagree with Defendants that to be successful on a municipal liability and supervisory liability claim, a plaintiff must establish that the municipality or supervisor acted with deliberate indifference, and that negligence is not sufficient.

Cottman v. Farabella, No. 1:19-cv-14122-NLH-AMD, 2021 U.S. Dist. LEXIS 121290, at *17 (D.N.J. June 28, 2021). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor ***disregarded*** a known or obvious consequence of his action." Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 410 (1997) (emphasis added). "[A] municipality's deliberately indifferent failure to train is **_not_** established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct." Simmons v. Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (emphasis provided), *citing*, Canton at 1206; Marable v. W. Pottsgrove Twp., 176 F. App'x 275, *283 (3d Cir. 2006).

Unlike most complaints which allege "Monell" claims, Plaintiffs' Complaints included facts which show Farabella did not ***disregard*** Dixon's behavior. Even if Plaintiff's Complaint pled a "*plausible*" case of a custom, pattern, or practice of excessive use of force, the Complaint did not plead a "plausible" claim of deliberate indifference to the custom, pattern, or practice of excessive use of force. The Complaint acknowledged Farabella did not ignore Dixon's use of force and only argues, at best,

Farabella's actions were not adequate. Accordingly, the "Monell" claim against the City of Millville should be dismissed.

Thank you for your consideration.

> **BARKER, GELFAND, JAMES & SARVAS**
> **a Professional Corporation**
>
> By: _____
>       A. Michael Barker, Esquire

Cc:  Louis Shaprio, Esquire
     Shap1@prodigy.net

     Thomas B. Reynolds, Esquire
     treynolds@reynoldshornlaw.com

14

Bcc: David DeWeese, Esquire
     david@deweeselawfirm.com

     Kristen Kiel
     kkiel@qual-lynx.com

     Chief Jody Farabella
     jody.farabella@pd.millvillenj.gov

     Daniel Ayars
     Daniel.ayars@pd.millvillenj.gov

     Police Officer Bryan Orndorf
     Bryan.orndorf@pd.millvillenj.gov

     Kelly Atapovich-Berardelli
     Confidential Secretary to Chief of Police
     Kelly.berardelli@pd.millvillenj.gov

     Sue Mooney
     smooney@qual-lynx.com

     Captain Ross Hoffman
     Ross.Hoffman@pd.millville.gov

     Sgt. Harold Duffield, Jr.
     Harold.Duffield@pd.millville.gov

     Sgt. Edward Zadroga
     Ed.Zadroga@pd.millville.gov

     Lt. Kevin McLaughlin
     Kevin.McLaughlin@pd.millville.gov

     Sgt. Cindi Zadroga
     Cindi.Zadroga@pd.millville.gov

     Sgt. John Redden, III
     John.Redden@pd.millville.gov

     Lt. Carl Heger
     Carl.Heger@pd.millville.gov

     Ret. Lt. Michael Colon
     K9justice052@gmail.com

     Ret. Sgt. Lawrence Mulford
     bigblue80@comcast.net