[D.I. 108 in 19-12002]
[D.I. 92 in 20-1118]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AUDRA CAPPS and DOUGLAS ROBERT GIBSON, JR., | Civil No. 19-12002 (RMB/AMD) |
| Plaintiffs, | |
| v. | |
| JOSEPH DIXON, et al., | |
| Defendants. | |
| TANIKA JOYCE, | Civil No. 20-1118 (RMB/AMD) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JOSEPH DIXON, et al., | |
| Defendants. | |

**APPEARANCES**:

Louis Charles Shapiro, Esq.
Louis Charles Shapiro, P.A.
1063 East Landis Avenue
Vineland, NJ 08362
    *Counsel for Plaintiffs*

Thomas B. Reynolds, Esq.
Reynolds & Horn, P.C.
116 South Raleigh Avenue
Apartment 9B
Atlantic City, NJ 08401
    *Counsel for Defendant Dixon*

A. Michael Barker, Esq.
Barker, Gelfand & James, P.C.
210 New Road
Suite 12
Linwood, NJ 08221
     *Counsel for Defendants Orndorf, Farabella, and City of
     Millville*

**DONIO, Magistrate Judge:**

          This matter comes before the Court by way of motion [D.I.
108] of Plaintiffs Audra Capps and Douglas Robert Gibson, Jr. in
Civil Action No. 19-12002, and by way of identical motion [D.I.
92] of Plaintiff Tanika Joyce in Civil Action No. 20-1118, to
compel the production of fitness for duty reports of Defendants
Joseph Dixon and Bryan Orndorf in unredacted form. The Court has
considered the submissions of the parties and decides this matter
pursuant to Federal Rule of Civil Procedure 78(b). For the reasons
that follow, Plaintiffs' motions to compel are granted.

          The Court sets forth herein only those facts relevant to
the pending motions. In these actions, Plaintiffs generally assert
claims pursuant to 28 U.S.C. § 1983 arising out of their arrests
by officers of the Millville Police Department. Plaintiffs in both
actions allege that Defendant Dixon, a Millville police officer,
used excessive force in the course of arresting Plaintiffs. *Capps
v. Dixon*, Nos. 19-12002, 20-1118, 2021 WL 2024998, at *4, 8 (D.N.J.
May 21, 2021), *reconsideration denied by* 2022 WL 123183, at *1

(D.N.J. Jan. 13, 2022). Plaintiffs in the *Capps* matter further assert that Defendant Orndorf, also a Millville police officer, used excessive force in the course of the arrest of Plaintiff Capps and failed to intervene in Defendant Dixon's use of force during the arrest. *Id.* at \*5.[1] In addition, Plaintiffs in both cases assert claims for supervisory liability against the Millville Chief of Police, Jody Farabella, and allege that "the Millville Police Department maintained a policy or custom of permitting officers to use excessive force without consequence" and further allege that Farabella "knew about Dixon's history of use of force complaints for years before Capps's arrest" but "ultimately failed to take sufficient corrective measures." *Id.* at \*6. Further, Plaintiffs assert claims against the City of Millville pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), based upon the City's alleged improper training and supervision of its police officers. *Id.* at \*2.

In the course of discovery, Plaintiffs requested fitness for duty reports for Defendants Dixon and Orndorf. Defendants produced redacted versions of the reports for the 2018 and 2015 evaluations of Defendants Dixon and Orndorf, respectively, but

---

[1] The District Court dismissed Plaintiffs' claim against Orndorf for failure to intervene in the arrest of Plaintiff Capps but did not dismiss Plaintiffs' claim regarding Orndorf's use of force during the arrest. *Capps*, 2021 WL 2024998, at \*5.

Plaintiffs contend that the reports must be produced in unredacted form. (*See* Letter from Louis Charles Shapiro, Esq. (hereinafter, "Pls.' Letter Br.") [D.I. 108-1 in Civil No. 19-12002, D.I. 92-1 in Civil No. 20-1118], Oct. 14, 2021, p. 4.)[2] Plaintiffs specifically note that the report concerning Defendant Dixon stated that Dixon "'was advised and understood that the contents of this evaluation would be provided to the Chief of Police.'" (*Id.* at p. 5)(quoting Certification of Louis Charles Shapiro, Esq. (hereinafter, "Shapiro Cert."), Oct. 14, 2021, Ex. F.)[3] Similarly,

---

[2] Plaintiffs note that the 2018 report for Defendant Dixon refers to an August 2012 evaluation and that Defendants are allegedly unable to locate the report of that prior evaluation. (Pls.' Letter Br. at pp. 1–2.) Plaintiffs state that they "reserve the right to request a spoliation instruction at trial and to seek whatever other additional relief may be available from the Court for the absence of that critical document." (*Id.* at p. 5.) In the "Conclusion" section of their briefs, Plaintiffs "suggest that the Court order the Defendants to make further and more strenuous efforts to locate that missing Dixon 2012 fitness for duty report[.]" (*Id.* at p. 10.) Plaintiffs, however, have not filed a formal motion seeking relief with respect to the 2012 report.

[3] In the briefs filed on the docket, Plaintiffs redacted quotations from the fitness for duty reports, including the above-quoted statement by the examiner that the officers understood that the contents of the evaluations would be provided to the Chief of Police. This statement by the examiner does not reveal any sensitive or confidential information about the officers, and the Court therefore finds no basis for redaction of this sentence in Plaintiffs' briefs. Furthermore, Plaintiffs' motions did not comply with Local Civil Rule 5.3(c), as only redacted briefs were filed on the docket, unredacted briefs and the Shapiro Certification and exhibits were not filed on the docket under temporary seal, and a motion to seal was not filed. The parties are directed to meet and confer to determine whether there is a basis

Plaintiffs note that the report concerning Defendant Orndorf stated that Orndorf "'was advised and understood that the contents of [the] evaluation would be provided to the referent and the Chief of Police.'" (*Id.* at p. 6)(quoting Shapiro Cert., Ex. H.) Plaintiffs argue that because Defendants Dixon and Orndorf participated in these psychological examinations with an understanding that the evaluations would be disclosed to the Chief of Police, they had no expectation of confidentiality in their communications to the examiner and, therefore, the psychotherapist-patient privilege does not shield the reports from disclosure. (*See id.* at pp. 8-9.)

In opposition to the motion, Defendants Farabella, Orndorf and Millville do not dispute generally the relevance of the fitness for duty reports to the claims in these cases, but they argue that only the examiner's conclusions regarding each officer's fitness for duty, and not the reports in their entirety, are relevant. (Letter from A. Michael Barker, Esq. (hereinafter, "Defs.' Opp. Br.") [D.I. 109 in Civil No. 19-12002, D.I. 93 in Civil No. 20-1118], Oct. 28, 2021, p. 2.) Defendants Farabella, Orndorf and Millville assert in this regard that "[a]ll that is

---

to seal any of the papers submitted in connection with the instant motions and shall comply with the procedure set forth in Local Civil Rule 5.3(c) regarding filing such papers on the docket.

relevant is whether or not the psychologist declared the officers 'fit for duty'" and that "[w]hen the standard for 'Monell' is 'deliberate indifference,' no Court would criticize a chief of police for relying on the conclusions reached by a licensed professional mental health provider." (*Id.* at pp. 2-3.) These defendants further argue that the remainder of each report is not discoverable because the reports contain information protected by the psychotherapist-patient privilege. (*Id.* at p. 3.) In support of their position, Defendants Farabella, Orndorf and Millville rely on the decision in *Williams v. Miles*, No. 18-12973, 2020 WL 3546808, at *1 (D.N.J. June 30, 2020), in which another court found that fitness for duty reports were not discoverable. (*Id.*) Defendants highlight the policy concerns discussed in *Williams*, where the court concluded that production of fitness for duty reports may disincentivize police officers from revealing sensitive information to an examiner, whereas shielding such reports from disclosure would encourage officers to speak freely with an examiner and thereby benefit the community. (*Id.*) Finally, Defendants Farabella, Orndorf and Millville acknowledge that "it is clear the Officers' understanding was that the sensitive psychological report would be revealed" to the Chief of Police, but they argue that "[s]imply because the report was provided to the Millville Chief of Police does not mean any other person is

entitled to any and all personal issues related to the police officer." (*Id.* at p. 4.) Defendant Dixon joined in the position taken by Defendants Farabella, Orndorf and Millville in opposition to Plaintiffs' motions. (Letter from Thomas B. Reynolds, Esq. [D.I. 112 in Civil Action No. 19-12002, D.I. 96 in Civil Action No. 20-1118], Nov. 1, 2021, p. 1.)

Federal Rule of Civil Procedure 26 sets forth the framework for the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). However, Rule 26 imposes limitations on the scope of discovery. A "party seeking to protect the confidentiality of such information may argue . . . that the information is protected by an evidentiary privilege. Any material covered by a properly asserted privilege would necessarily be protected from discovery[.]" *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). "[T]he party resisting discovery has the burden of clarifying, explaining and supporting its objections." *State Nat'l Ins. Co. v. Cty. of Camden*, No. 08-5128, 2011 WL 13079217, at *3 (D.N.J. Apr. 28, 2011) (internal quotations omitted).

The Court first addresses the relevance of the fitness for duty reports. Defendants "agree such examinations are potentially relevant to the 'Monell' claims against the City" to

show that the City required its officers to undergo a fitness for duty examination as part of its hiring process and that the officers were declared fit for duty by the examiner. (Defs.' Opp. Br. at p. 2.) As noted above, however, Defendants argue that the only relevant section of each report is the examiner's conclusion, because the Chief of Police would have relied only on the conclusion reached by the examiner and would not have "challenge[d] the conclusions of a licensed mental health professional." (*Id.* at pp. 2, 4.) Defendants note that other police departments in New Jersey receive only a "pass" or "fail" recommendation regarding an officer's fitness for duty, not the examiner's entire report, which Defendants argue "highlights just how irrelevant the details of the reports are." (*Id.* at p. 4.)

Under 42 U.S.C. § 1983, a municipality can be liable "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)(citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "'Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A

8

course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480). "Claims that a supervisor failed to train or supervise . . . are generally considered a subcategory of policy or practice liability." *Martin v. City of Reading*, 118 F. Supp. 3d 751, 773 (E.D. Pa. 2015)(internal quotations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989)("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

Here, Plaintiffs have alleged that Chief Farabella "knew about Dixon's history of use of force complaints for years" prior to Plaintiffs' arrests, and that Farabella "ultimately failed to take sufficient corrective measures[,]" which allegations the District Court has found are sufficient to state a claim for supervisory liability under § 1983. *See Capps*, 2021 WL 2024998, at *6, 8. Similarly, the District Court has concluded that Plaintiffs sufficiently stated *Monell* claims against the City of Millville in light of Plaintiffs' allegations that "Farabella either knew or should have known that Dixon received use of force complaints at

a rate far higher than other officers in the department, and that whatever measures he took to correct this issue [were] insufficient." *Id.* at *7, 8. Given the nature of these claims, evidence concerning whether Chief Farabella knew or was advised of the defendant officers' propensity for violence when making arrests is relevant discovery. Such evidence includes the psychological evaluations of the defendant officers prior to the arrests of Plaintiffs Capps and Joyce, which may show whether Farabella was on notice of these officers' alleged propensity for violence. *See, e.g.*, *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 551 (E.D. Wis. 2015) ("Documents indicating that the City allowed officers with certain psychological problems to remain on the street are arguably relevant to the plaintiffs' *Monell* claims and are therefore within the scope of discovery."); *Siegfried v. City of Easton*, 146 F.R.D. 98, 99-100 (E.D. Pa. 1992) (psychological records of defendant officer conducted when officer interviewed for employment were "highly relevant and may provide compelling evidence concerning the city's knowledge of [the defendant officer's] propensity toward violence"). In addition, relevant discovery also may include psychological records that post-date the incident at issue because they may demonstrate a pattern by the City of condoning excessive force by its officers. *See Beck*, 89 F.3d at 972 (where plaintiff argued that defendant officer

10

exhibited a pattern of violent and inappropriate behavior and presented evidence of excessive use of force, including civilian complaint of incident that occurred after plaintiff's incident, Third Circuit noted that such evidence "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force"); *see also Groark v. Timek*, 989 F. Supp. 2d 378, 397-98 (D.N.J. 2013)("Subsequent incidents . . . may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy."). Furthermore, post-incident evidence may be relevant insofar as it may contain specific admissions or information concerning the circumstances surrounding the arrests. *See Henry v. Hess*, No. 11-2707, 2012 WL 4856486, at *2 (S.D.N.Y. Oct. 12, 2012)(fitness for duty psychological records were discoverable because they contained information conveyed by officer concerning circumstances of alleged excessive force).

The Court finds that the fitness for duty reports at issue here are relevant to the claims in these cases. The 2015 report for Defendant Orndorf, which pre-dated the 2018 arrest of Plaintiff Capps by several years and was provided to the Chief of Police, is relevant in the *Capps* matter to whether Chief Farabella had notice of Orndorf's propensity for violence. The 2018 report for Defendant Dixon, which post-dated the 2018 arrests of

Plaintiffs Capps and Joyce, is relevant in both cases insofar as it may demonstrate the City's pattern of condoning excessive force by Millville police officers. Furthermore, in light of the temporal proximity of Dixon's fitness for duty evaluation to the incidents at issue here,[4] the Court also finds the report relevant to Plaintiffs' claims because it may contain factual information and admissions concerning the circumstances of Dixon's arrests of Plaintiffs.

Indeed, Defendants do not dispute generally the relevance of either report to the claims in these cases; they seek only to limit disclosure to the conclusions of the examiner rather than the reports in their entirety. The Court rejects Defendants' argument. Defendants admit that Chief Farabella received the fitness for duty reports, which shed light not only on the conclusions of the examiner regarding the officers' fitness for duty but also provided Farabella with the facts upon which the

---

[4] The exact date of Dixon's evaluation is unclear from the record. The fitness for duty report is dated August 6, 2018 and states that the evaluation of Dixon occurred on March 10, 2018. (Shapiro Cert., Ex. F.) Defense counsel has asserted that the evaluation occurred at some point after April 14, 2018, as set forth in a letter dated October 1, 2021.(*See* Pls.' Letter Br. at p. 4; Shapiro Cert., Ex. E at p. 2.) In light of Defendants' letter which asserts that the evaluation occurred after April 14, 2018, and given that the evaluation occurred prior to the issuance of the examiner's report on August 6, 2018, it is clear that the evaluation occurred within a few months of the arrests of Plaintiff Capps in February 2018 and Plaintiff Joyce in March 2018.

examiner's conclusions were based. As such, the reports in their entirety were available to the Chief of Police to inform any decision to allow Defendants Dixon and Orndorf to remain employed as Millville police officers. The Court therefore concludes that the reports in their entirety, and not just the examiner's conclusions, constitute relevant discovery.

The Court next addresses Defendants' assertion that the psychotherapist-patient privilege protects the requested material from disclosure. Evidentiary privileges are governed by Federal Rule of Evidence 501, which provides that "[t]he common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege" unless otherwise provided in "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." FED. R. EVID. 501. Rule 501 further provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id.* When a case involves both federal and state law claims in the same action, federal privilege law applies to all claims. *Pearson*, 211 F.3d at 66 ("[F]or the resolution of the present discovery dispute, which concerns material relevant to both federal and state claims, Rule 501 directs us to apply federal privilege law."). As Plaintiffs bring claims pursuant to both 42

U.S.C. § 1983 and state law in the instant cases, the Court will apply federal privilege law in deciding the privilege issue.

The United States Supreme Court recognized the federal psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), holding that "confidential communications between a licensed psychotherapist and her [or his] patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." While acknowledging the "fundamental maxim that the public . . . has a right to" every person's evidence, the Supreme Court in *Jaffee* found that "significant public and private interests support[ed] recognition of the privilege[.]" *Id.* at 9, 11 (internal quotations omitted). Specifically, the Supreme Court stated that the privilege serves the private interest of fostering effective psychiatric treatment, noting:

> Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Id.* at 10. The Supreme Court in *Jaffee* further found that the privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem" as "[t]he mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11.

Under *Jaffee*, "confidentiality is the foundation upon which the psychotherapist-patient privilege rests." *Barrett v. Vojtas*, 182 F.R.D. 177, 179 (W.D. Pa. 1998). The privilege attaches to communications between a therapist and patient in which a patient has a "reasonable expectation" that the communications will remain confidential. *James v. Harris Cty.*, 237 F.R.D. 606, 611-12 (S.D. Tex. 2006). By contrast, the privilege does not attach when a patient has no expectation of confidentiality in communications to a therapist, because the purpose of the privilege is to foster effective counseling and "[c]onfidentiality is the foundation for effective counseling[.]." *Barrett*, 182 F.R.D. at 181. Accordingly, in considering whether the psychotherapist-patient privilege applies to communications between a patient and a therapist, courts generally consider as a "determinative factor" whether the communication was made with a reasonable expectation of confidentiality. *James*, 237 F.R.D. at 611-12.

This Court previously addressed the application of the psychotherapist-patient privilege in *Ward v. Barnes*, No. 05-1850, 2007 WL 9782878, at *3 (D.N.J. Sept. 28, 2007), concluding that the privilege does not apply when the party asserting the privilege has no reasonable expectation of confidentiality regarding counseling sessions he received. In *Ward*, the defendant sought to quash subpoenas for records issued by the plaintiffs to the defendant's medical providers on the basis that such records were protected by the psychotherapist-patient privilege. *Ward*, 2007 WL 9782878, at *1. The defendant argued that he had an expectation of confidentiality with respect to records from a counseling session or evaluation from one provider because the provider's website stated that the therapy program was confidential. *Id.* The plaintiffs argued that the privilege did not apply because the records "were generated to satisfy a specific requirement of [the defendant's] employer in order for [the defendant] to keep his job." *Id.* The plaintiffs further argued that the defendant had no expectation of confidentiality in the records because the defendant testified at his deposition that he believed the information from the provider was communicated to his employer to monitor his progress. *Id.* This Court in *Ward* noted that the psychotherapist-patient privilege "does not protect psychological records from disclosure . . . when there is no reasonable

expectation of confidentiality." *Id.* at *2 (citing *Siegfried*, 146 F.R.D. at 101; *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1020, 1022-23 (N.D. Ill. 2000)). The Court further concluded that the defendant failed to demonstrate that the records were protected by the psychotherapist-patient privilege in light of the defendant's testimony that he believed the provider communicated with his employer about the defendant's counseling, as such testimony undermined the defendant's argument that he had a reasonable expectation of confidentiality regarding the counseling session. *Id.* at *3.

The psychotherapist-patient privilege has been addressed in the context of discovery of police fitness for duty reports, and courts that have considered the application of the privilege in this context have similarly concluded that where an officer has an expectation of confidentiality in a psychological examination, the privilege shields the psychological records from disclosure. For example, in *Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000), the plaintiff police officers alleged that they received disparate treatment on the basis of race and sought production of fitness for duty psychological records of a defendant police officer and four non-party officers, arguing that the psychological records would demonstrate disparate treatment received by plaintiffs and those other officers that were referred

for fitness for duty exams. *Caver*, 192 F.R.D. at 155-56. Noting that the defendant officer "was told and reassured that the psychological records and reports would be kept strictly confidential, and would not be disclosed to the City of Trenton personnel[,]" the court in *Caver* found that the defendant "clearly had an expectation of confidentiality" and concluded that the defendant's psychological records were protected by the psychotherapist-patient privilege. *Id.* at 162; *see also Barrios-Barrios v. Clipps*, No. 10-837, 2011 WL 4550205, at *3 (E.D. La. Sept. 29, 2011) (finding that defendant police officer's psychological report was protected from disclosure by the psychotherapist-patient privilege because "the evidence establishe[d] that the one-page psychologist's report . . . was intended to be confidential and was actually maintained as confidential by the Civil Service Department, with none of the information contained in it having been disclosed to the Police Department or to [the defendant] himself" and the defendant "had a reasonable expectation of confidentiality in the report"); *Green v. Taylor*, No. 03-1804, 2005 WL 8167545, at *2 (N.D. Ohio May 4, 2005)(plaintiff was not entitled to discovery of psychological evaluations, noting that "where a police officer undergoes a psychological evaluation following a fatal shooting, the psychotherapist-patient privilege is not waived if the only

information provided to the police is whether the officer passed or failed the exam" and plaintiff "provided no evidence that information from a psychological evaluation was shared with the police department in a manner sufficient to waive the privilege"); *Williams v. District of Columbia*, No. 96-0200, 1997 WL 224921, at *2 (D.D.C. Apr. 25, 1997)(where it was represented that psychiatrist reported back to police department, but did not disclose any confidential communications and rather gave a "Yes or No" recommendation regarding whether an officer should return to active duty, psychiatric records of officer were private and were protected by psychotherapist-patient privilege).

When an expectation of confidentiality is lacking, however, courts have concluded that the psychotherapist-patient privilege does not attach to fitness for duty reports. *See, e.g.*, *Ashford*, 304 F.R.D. at 552 (where plaintiffs asserted claims based upon alleged unlawful strip searches by Milwaukee police officers, court found it "doubtful that there would be any confidential communications between an officer and a psychologist or other professional who tests or examines an officer for the purpose of determining whether he is fit for duty[,]" noting that results of test would likely be "shared with the City, and therefore the officer will not expect his statements to the examiner to remain confidential"); *Barrett*, 182 F.R.D. at 178, 181 (where police

19

officer alleged to have used excessive force was ordered by city to attend counseling sessions with a psychiatrist and a psychologist, court found that conversations and notes taken during such counseling sessions were not protected by psychotherapist-patient privilege because "[a] police officer who is ordered to therapy, knowing that the therapist will report back to his or her superior, would have no expectation that his or her conversation was confidential"); *Siegfried*, 146 F.R.D. at 101 (in excessive force case, court compelled disclosure of psychological records of defendant police officer upon finding that the psychological evaluation of the officer was not confidential, noting that "when an applicant consults with this psychologist, he understands that the psychologist will be reporting back to the police department" and that "[c]onfidentiality between psychologist and patient is not expected in this situation").

In opposition to the present motion, Defendants rely on *Williams v. Miles,* No. 18-12973, 2020 WL 3546808, at *1 (D.N.J. June 30, 2020), an excessive force case in which a court found that the psychological records of a defendant police officer were protected from disclosure by the psychotherapist-patient privilege. (*See* Defs.' Opp. Br. at pp. 3-4.) Like the above-cited cases, the lynchpin of the *Williams* court's analysis was that the officer had an expectation of confidentiality in a fitness for

duty exam. Although in *Williams* there was actual disclosure of the officer's psychological records to the police department, the officer believed that the documents were to be kept confidential and that disclosure of the report was limited to only a pass/fail recommendation. *Williams*, 2020 WL 3546808, at *4. Thus, despite disclosure to the police department, the court in *Williams* found that the psychological records were protected by the psychotherapist-patient privilege because the defendant officer had a *bona fide* expectation of privacy based on the representation that "his evaluation . . . would remain confidential and would not be disclosed." *Id.*

In the cases presently before the Court, unlike the case in *Williams*, the defendant police officers did not have an expectation of confidentiality with respect to their fitness for duty evaluations. The examiner's reports here expressly indicated that the officers were "advised and understood" that the evaluations would be provided to the Chief of Police. (*See* Pls.' Letter Br. at pp. 5-6.) Indeed, Defendants acknowledge the officers' "understanding . . . that the sensitive psychological report would be revealed" to the Chief. (Defs.' Opp. Br. at p. 4.) Accordingly, because the reports were not generated with an expectation of confidentiality, the cases before the Court are aligned with the cases that have concluded that the

psychotherapist-patient    privilege    does    not    attach    to
communications between an officer and a therapist when the officer
had    no    reasonable    expectation    of    confidentiality    in    such
communications.

Defendants argue, without citation to any authority,
that because the reports were disclosed only to the Chief of Police
and were not generally disseminated, there was no waiver of the
psychotherapist-patient  privilege.  (Defs.' Opp. Br. at p. 4.)
However, the inquiry is not whether disclosure to the Chief of
Police effected a waiver of the privilege, because the privilege
did not attach to the communications in the first instance given
the officers' knowledge that the reports would be disclosed. This
Court rejects any argument that the privilege should attach because
the officers believed that the content of their evaluations would
only be disclosed to the Chief of Police, as the purpose of the
privilege  cannot  be  served  in  the  absence  of  a  complete
confidential relationship. Indeed, numerous courts have rejected
the same argument raised by Defendants here. *See, e.g.*, *Smith v.
City of Plano*, No. 01-7111, 2002 WL 1483902, at *2 (N.D. Ill. July
9, 2002)(where officer argued that he did not waive privilege
because he believed information would only be shown to Chief of
Police, court noted that "it is the very fact that he knew the
information  would  be  shown  to  the  Chief  that  breaks  the

22

privilege"); *Barrett*, 182 F.R.D. at 181 ("A police officer who is ordered to therapy, knowing that the therapist will report back to his or her superior, would have no expectation that his or her conversation was confidential."); *Siegfried*, 146 F.R.D. at 101 (when applicant understands that psychologist will be reporting back to police department, "[c]onfidentiality between psychologist and patient is not expected in this situation" and "[i]f a patient makes a communication expecting it to be disclosed to a third party who is not involved in the patient's treatment, the psychologist-patient privilege does not apply")(citation omitted).

The Court also rejects Defendants' argument that the policy interests articulated in *Williams* support a finding of non-disclosure of the fitness for duty reports in these cases. In *Williams*, the court cited "significant public policy concerns" that supported non-disclosure of the defendant officer's psychological records, including a "chilling effect on the evaluative system of police officers who may be suffering from a psychological condition" and the police department's "strong policy interest in maintaining the confidentiality of its evaluative process, and permitting its officers the opportunity to obtain unfettered assistance through free communication with healthcare providers, who in turn ensure officers are fit for duty." *Williams*, 2020 WL 3546808, at *4. These policy concerns,

however, rested on the police department's policy that the communications between the police officer and the therapist were provided in a confidential setting and that the police department would only receive a "pass" or "fail" recommendation. *See id.* In *Williams*, the court noted that its decision "should not be construed as prohibitive to disclosure of records in every case" and that "analyses relating to a confidential relationship must be examined on a case-specific basis." *Id.* at *5. Here, there was no confidential relationship between the police officers and the examiner given that the officers were "advised and understood" that their conversations would be disclosed to the Chief of Police. (*See* Pl.'s Letter Br. at pp. 5-6.) Defendants thus fail to demonstrate that the policy concerns set forth in *Williams* support non-disclosure of the psychological records under the circumstances in the present cases.

Consequently, the Court finds that the psychotherapist-patient privilege cannot shield from disclosure the defendant police officers' fitness for duty reports because these officers did not have the requisite expectation of confidentiality in their fitness for duty exams. In so ruling, the Court notes that fitness for duty reports do not fit squarely under the rubric of psychotherapist-patient privilege material. As the court in *Ashford* explained, "because the tests are being performed for some

24

reason other than treatment of the officer, such as to determine whether the officer is fit for duty, the tests are unlikely to depend [on] an 'atmosphere of trust and confidence' in which the officer 'makes a frank and complete disclosure of facts, emotions, memories, and fears'" and the officer may even "have an incentive to lie in order to produce a favorable result[.]" *Ashford*, 304 F.R.D. at 552 (quoting *Jaffee*, 518 U.S. at 10). Another court likewise concluded that requiring production of fitness for duty reports does not "detract from the purposes underlying the privilege as set forth in *Jaffee*" because such reports are "categorically different from a psychological evaluation for purposes of medical diagnosis and treatment." *Barmore v. City of Rockford*, No. 09-50236, 2012 WL 1660651, at *3 (N.D. Ill. May 11, 2012). The court in *Barmore* explained, "[i]n the latter, an officer is a patient desiring to get well" whereas "[i]n the former, he is an employee hoping to keep his job." *Id.* "[T]he motivations and expectations of the officer in providing information will vary with the nature of the particular evaluation." *Id.* Nonetheless, the Court need not determine at this time whether fitness for duty reports categorically do not qualify for protection by the psychotherapist-patient privilege. Even assuming the psychotherapist-privilege may attach to fitness for duty reports, Defendants here have failed to demonstrate that the defendant

officers had an expectation of confidentiality in the evaluations at issue. Accordingly, the Court shall grant Plaintiffs' motions to compel and require Defendants to produce the fitness for duty reports of Defendants Dixon and Orndorf in unredacted form.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **24th** day of **March 2022**,

**ORDERED** that Plaintiffs' motions [D.I. 108 in Civil No. 19-12002, D.I. 92 in Civil No. 20-1118] to compel shall be, and are hereby, **GRANTED**; and it is further

**ORDERED** that Defendants shall produce the fitness for duty reports in unredacted format within **ten (10) days** of the date of this Order; and it is further

**ORDERED** that the parties are directed to comply with Local Civil Rule 5.3 concerning sealing of material submitted in connection with Plaintiffs' motions; and it is further

**ORDERED** that by **April 19, 2022** Plaintiffs shall file on the docket all papers submitted in connection with the instant motions that have not already been filed on the docket, including unredacted briefs and the Shapiro Certification and exhibits thereto. Plaintiffs may file such documents under temporary seal, provided that a motion to seal is filed with respect to any

temporarily sealed material in accordance with Local Civil Rule 5.3(c).

                                                    s/ Ann Marie Donio
                                                    ANN MARIE DONIO
                                                    UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb